UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ANDREW BABINSKI                                      *
                                                     *
versus                                               *        No. ___3:20-cv-426_____
                                                     *
TODD QUEEN, in his personal and official            *
capacity as Dean of the College of Music and        *        JUDGE
Dramatic Arts of Louisiana State University,        *
KRISTIN SOSNOWSKY, in her personal and             *        MAGISTRATE
official capacities as Chair of the School of Theatre *
of Louisiana State University,SHANNON WALSH, *
JOHN FLETCHER, and ALAN SIKES                       *

## COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Plaintiff, ANDREW

BABINSKI, who respectfully avers as follows:

### PARTIES

**1.**

Petitioner, Andrew Babinski, ("Babinski") is a person of full age of majority and resident

of the Parish of East Baton Rouge, State of Louisiana. Babinski was a student in the Ph.D.

program at the Louisiana State University ("LSU") Department of Theatre, (the "Department"),

until he was prohibited from continuing in the program by defendants herein.

**2.**

Made defendant herein is Todd Queen, ("Dean Queen") in his personal and official

capacities, a person of full age of majority and, upon information and belief, a resident of the

Parish of East Baton Rouge, State of Louisiana. Dean Queen is the Dean of the LSU College of

Music and Dramatic Arts, and is responsible for Babinski's damages, as alleged more fully herein.

**3.**

Made defendant herein is Kristin Sosnowsky, ("Professor Sosnowsky") in her personal and official capacities, a person of full age of majority and, upon information and belief, a resident of the Parish of East Baton Rouge, State of Louisiana. Professor Sosnowsky is a member of the faculty in the Department, the Chair of the LSU School of Theatre, and the Executive Associate Dean of the LSU College of Music and Dramatic Arts and is responsible for Babinski's damages, as alleged more fully herein.

**4.**

Made defendant herein is Shannon Walsh, ("Professor Walsh") in her personal capacity, a person of full age of majority and, upon information and belief, a resident of the Parish of East Baton Rouge, State of Louisiana. Professor Walsh is a member of the Ph.D. faculty in the Department and is responsible for Babinski's damages, as alleged more fully herein.

**5.**

Made defendant herein is John Fletcher, ("Professor Fletcher") in his personal capacity, a person of full age of majority and, upon information and belief, a resident of the Parish of East Baton Rouge, State of Louisiana. Professor Fletcher is a member of the Ph.D. faculty in the Department and is responsible for Babinski's damages, as alleged more fully herein.

**6.**

Made defendant herein is Alan Sikes, ("Professor Sikes") in his personal capacity, a person of full age of majority and, upon information and belief, a resident of the Parish of East Baton Rouge, State of Louisiana. Professor Sikes is a member of the Ph.D. faculty in the Department and is responsible for Babinski's damages, as alleged more fully herein.

### JURISDICTION

**7.**

This Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. §1331 because the claims alleged herein arise under the constitution and laws of the United States.

**8.**

This Court has personal jurisdiction over all defendants as all are domiciled within the State of Louisiana or because the defendants' employment and discharge of duties within this state make them subject to the jurisdiction of this Court.

### VENUE

**9.**

Venue is proper within this district pursuant to 28 U.S.C. §1391(b)(1) and (2) because at least one defendant resides within the territorial limits of this judicial district and because all of the events giving rise to the claims asserted herein occurred within this judicial district.

FACTS

**10.**

Babinski enrolled in the Department's Theatre Ph.D. program (the "Program") in the fall of 2017. Babinski wanted to earn a Ph.D. so he could teach lecture courses in a university setting, to develop his academic writing skills, and to learn more about theatre history, analysis, and theory.

**11.**

Babinski specifically avoided applying to schools with a primary focus on activist or social justice themes in their Ph.D. curriculum. Because the Department advertised that the Program's formal specialization did not include a social justice element, Babinski applied to the Program and was accepted.

**12.**

Babinski proceeded through the Program as a model student. Babinski's cumulative grade point average after three semesters was 3.942. Moreover, Professor Sosnowsky appointed Babinski as a graduate assistant starting with Babinski's enrollment in the Program, and Babinski successfully taught three undergraduate level courses, often receiving student ratings higher than the Department's average. Babinski was respected enough that Professor Fletcher appointed Babinski as his teaching assistant.

**13.**

But as Babinski proceeded through the Program, he found that the advertisements and inducements the Department made to persuade him to enroll in the Program were false. For

example, one course Babinski wanted to take, THTR 7913, *Seminar in American Drama 18th Century to the Present*, was not offered at all even though the Department specifically advertised this course as fulfilling a requirement for graduation. Also, the Department advised Babinski that this class was no longer offered only after he asked about it during his fourth semester.

**14.**

Babinski likewise found some of the courses that were offered did not match what the Department had advertised to him and to the public, occasionally being wildly different from what the Department advertised. For example, THTR 7900, *Introduction to Graduate Studies*, is a required course and is advertised by the Department as "research and bibliographic skills for students of theatre history, dramatic literature, theory and criticism." However, the syllabus for the course, and the course itself, concerned "how to apply for grants/fellowships, the inner workings of running a theatre company, and assembling materials to apply for an academic position."

**15.**

Babinski also found that much of the Program's coursework was devoted to social justice and activism themes rather than a significant focus on academic writing and scholarship. The Department led Babinski to believe that the Program's specialization was "Theatre History, Dramatic Literature, and Dramatic Theory and Criticism." In fact, after the Department had induced Babinski to enroll in the Program and after Babinski had become fully immersed in the Program, Professor Walsh advised Babinski that the Program's advertised specialization was incorrect.

**16.**

In the spring semester of 2019, Babinski enrolled in THTR 7923, "Gender, Sexuality, and Performance," taught by Professor Walsh. The Department advertised this course as an academic discussion about gender and sexuality in performance, but in practice it was a liberal indoctrination course where opposing opinions and critical discussion were often met with hostility from certain students and Professor Walsh, herself.

**17.**

Babinski attempted to participate in course discussions in good faith by sharing his sincerely held views in class, debating the authors' ethics in the assigned readings and sometimes questioning their conclusions. Babinski's classmates' responses grew increasingly hostile and abusive, and Professor Walsh condoned and actively participated in the mistreatment.

**18.**

Shortly before spring 2019 midterm exams, Babinski met with Professor Walsh to discuss his concerns about his treatment in the course and his final paper topic. Professor Walsh dismissed Babinski's concerns and escalated the pattern of mistreatment, even telling Babinski that he deserved the harm he'd experienced in class.

**19.**

Near the end of the course, Professor Walsh encouraged the class to mislead their future employers. For example, Professor Walsh taught the class that, if they wanted to teach controversial social issues, they should misname those courses in a way that leads their employers to incorrectly believe the course concerns traditional topics. Babinski then realized

that the Department's representations and inducements made to him were similarly intended to mislead him and the public as to the true focus of the Program.

**20.**

Feeling he was not being heard by Professor Walsh, and fearing retaliation from the remainder of the Program faculty as well if he brought this dispute to them, Babinski decided to use the course's final paper to reach Professor Walsh. Babinski used "performative writing" to express how he felt discrimination and mistreatment when he expressed his views inside and outside of class.

**21.**

"Performative writing" is a style whereby the writer is trying to perform a concept or idea through language, manner, and form, in addition to its content. It is most often done by liberal, feminist, anti-racist scholars as a means of trying to use words to create a sensation of the very experience they are describing. As a performance makes you "feel something" in an effort to make you understand another person's life, this form of writing seeks to do the same—not through only describing it, but in the process of actually sensorially experiencing something.

**22.**

Babinski learned about performative writing from the teachings of Professor Walsh and others in the Department. Babinski is an experienced, enthusiastic creative writer and an accomplished professional actor who specializes in creating larger-than-life, energetic caricatures. Babinski wrote his performative paper with tremendous passion, creativity, and over-the-top performative style, and most theatre academics would quickly recognize Babinski's paper

as performative writing. In fact, Babinski clearly and explicitly stated multiple times in his paper that his writing was performative and exaggerated. When Professor Walsh presented Babinski's paper to authorities, though, not only did she not explain performative writing to them, she did not even mention it, instead presenting the paper as completely sincere and unexaggerated.

**23.**

Babinski's performative paper included strong language, expletives, and harsh criticism of various faculty members and peers but contained no threats to anyone, including himself. The performative paper likewise did not include any indication that Babinski would disrupt the Program or the Department's academic activities in any way. The paper did request that Professor Walsh share the paper with Professors Fletcher and Sikes, but no one else, and requested that the three of them meet with Babinski to discuss his concerns about the Program expressed in the performative paper.

**24.**

Upon receiving Babinski's performative paper, Professor Walsh forwarded it to Professor Sosnowsky. Professor Sosnowsky then referred the paper to the LSU Police Department and to the LSU Office of Student Advocacy and Accountability for disciplinary action against Babinski.

**25.**

The LSU Police Department twice found that Babinski's performative paper presented no actionable security issues to anyone. The Office of Student Advocacy and Accountability found no violation of any LSU policies and even refused to issue a "no contact directive" against Babinski toward the faculty members and students mentioned in his paper.

**26.**

Because of his performative paper, Professor Walsh caused Babinski to be placed on academic probation. Because of his performative paper, Professor Sosnowsky refused to permit Babinski to remain a graduate assistant. Because of Professors Walsh's and Sosnowsky's actions, Babinski was denied his graduate assistantship stipend, his tuition waiver, and his non-resident fee waiver. Professor Sosnowsky also prohibited Babinski from using the Department's facilities for a project, even though she had previously given Babinski permission.

**27.**

In her conversations with Professor Sosnowsky and with the Office of Student Advocacy and Accountability, Professor Walsh made several false statements about Babinski, including that he was mentally unstable, that he was abusive to other students, and that he'd threatened other students and faculty in his paper. Professor Walsh also described incidents concerning Babinski that never happened and denied other events that did, all in an attempt to disparage Babinski's character and to support her unreasonable and false claim that Babinski threatened a substantial disruption to the educational environment.

**28.**

Professors Walsh, Sosnowsky, and Fletcher likewise withheld certain mitigating information in their communications with administrators, Dean Queen, other faculty members, and the Office of Student Advocacy and Accountability in an effort to harm Babinski or to diminish his reputation and to support their false claims that Babinski was unstable and incapable

of continuing in the Program. Professors Sosnowsky and Walsh also shared Babinski's paper with others without permission.

**29.**

Babinski attempted over the summer to communicate with Professors Walsh, Fletcher, and Sikes, but they refused to respond. Shortly before Babinski would return for the fall 2019 semester, and after learning that they lacked the grounds to formally expel Babinski, Professors Walsh, Fletcher, and Sikes collectively decided that they would refuse to teach Babinski any more courses in the Program because of his paper and would refuse to administer his general examinations. Professors Walsh, Fletcher, and Sikes make up three-fourths of the Program's faculty.

**30.**

A week before the beginning of the fall 2019 semester, Dean Queen advised Babinski that, because of Professors Walsh's, Fletcher's, and Sikes' refusal to teach him, there was no way for Babinski to continue in the Program. Dean Queen also misled Babinski as to various university procedures in furtherance of the determination that Babinski could not continue in the Program, even though other students were correctly advised of these procedures and allowed to use them when issues with faculty arose.

**31.**

Even though Dean Queen advised Babinski there was no way for him to proceed, Babinski continued in the Program for the full fall 2019 semester. Babinski took one course in the Program and three additional courses for his required minor concentration, completing all

four courses without causing disruption or other incident. Throughout the semester, Babinski attempted to quell Professors Walsh's, Fletcher's, and Sikes' concerns and resolve their refusal to teach him. The faculty refused to reconsider their positions even after Babinski demonstrated that he was not a disruption to the school environment and was stable and capable enough to complete a higher-than-average semester courseload.

**32.**

At the end of that fall 2019 semester, Babinski had only three courses remaining in the Program before achieving the "milestone" of completing his coursework, a benchmark that leads Ph.D. students to certain professional benefits and opportunities. Had the Defendants permitted Babinski to complete his coursework, he would have then sat for his general exams, successful completion of which would result in Babinski becoming a Ph.D. "candidate" and constitutes another "milestone" that entitles Ph.D. students to even greater benefits and opportunities. Professors Walsh, Fletcher, and Sikes, and Dean Queen prevented Babinski from reaching these milestones and therefore deprived him of these professional benefits and opportunities. Facing continued pressure from Defendants, Babinski transferred to the department of philosophy, where he is currently seeking a second master's degree.

COUNT 1
VIOLATION OF FIRST AMENDMENT RIGHT TO FREEDOM OF SPEECH
42 U.S.C. § 1983

**33.**

Babinski incorporates by reference paragraphs 1 through 32.

**34.**

Babinski's expressed views, in and out of class and in his performative paper, constitute protected speech under the Free Speech Clause of the First Amendment to the United States Constitution.

**35.**

Professors Walsh's, Sikes', and Fletcher's decision to refuse to teach Babinski or administer general exams, and Dean Queen's refusal to permit Babinski to continue in the Program, constitute a *de facto* expulsion from the Program resulting from Babinski's protected speech.

**36.**

Professors Walsh, Sikes, and Fletcher, and Dean Queen are therefore liable to Babinski under 42 U.S.C. § 1983 for violating, under color of state law, Babinski's right to free speech when Babinski was *de facto* expelled from the Program because of his performative paper and his Program participation in and out of class.

COUNT 2
**VIOLATION OF FIRST AMENDMENT RIGHT TO FREEDOM FROM RETALIATION**
**42 U.S.C. § 1983**

**37.**

Babinski incorporates by reference paragraphs 1 through 36.

**38.**

Babinski's expressed views, in and out of class and in his performative paper, constitute protected speech under the Free Speech Clause of the First Amendment to the United States Constitution, and Babinski is entitled to freedom from retaliation for his protected speech.

**39.**

Professors Walsh's, Sikes', and Fletcher's decision to refuse to teach Babinski or administer general exams, Dean Queen's refusal to permit Babinski to continue in the Program, Professor Sosnowsky's refusal to allow Babinski to remain a graduate assistant, Professor Sosnowsky's revoking of permission for Babinski to use Department facilities and resources, and Babinski's academic probation, all constitute retaliation against Babinski resulting from Babinski's protected speech.

**40.**

Professors Walsh, Sikes, Fletcher, and Sosnowsky, and Dean Queen are therefore liable to Babinski under 42 U.S.C. § 1983 for violating, under color of state law, Babinski's right to be free from retaliation for his protected speech when the acts described above were taken against Babinski because of his performative paper and his Program participation in and out of class.

**COUNT 3**
**VIOLATION OF FOURTEENTH AMENDMENT RIGHT TO PROCEDURAL DUE PROCESS**
**42 U.S.C. § 1983**

**41.**

Babinski incorporates by reference paragraphs 1 through 40.

**42.**

As a student at a public postsecondary institution, Babinski is entitled to procedural due process prior to being deprived of life, liberty, or property in accordance with the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

**43.**

The right to maintain enrollment and continue through an academic program toward graduation is a vested property right for purposes of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

**44.**

Professors Walsh's, Sikes', and Fletcher's decision to refuse to teach Babinski or administer general exams, and Dean Queen's refusal to permit Babinski to continue in the Program, amounted to a *de facto* expulsion, and were effected without sufficient notice to Babinski or an opportunity for Babinski to be heard.

**45.**

Professors Walsh, Sikes, and Fletcher, and Dean Queen are therefore liable to Babinski under 42 U.S.C. § 1983 for violating, under color of state law, Babinski's right to procedural due process when Babinski was *de facto* expelled from the Program because of his performative paper and his Program participation in and out of class.

COUNT 4
VIOLATION OF FOURTEENTH AMENDMENT RIGHT TO SUBSTANTIVE DUE PROCESS
42 U.S.C. § 1983

**46.**

Babinski incorporates by reference paragraphs 1 through 45.

**47.**

As a student at a public postsecondary institution, Babinski is entitled to protection of his right to property free from undue government interference in accordance with the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

**48.**

The right to maintain enrollment and continue through an academic program toward graduation is a substantive right for purposes of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

**49.**

Professors Walsh's, Sikes', and Fletcher's decision to refuse to teach Babinski or administer general exams, and Dean Queen's refusal to permit Babinski to continue in the Program, amounted to a *de facto* expulsion and deprivation of Babinski's substantive rights without justification.

**50.**

Professors Walsh, Sikes, and Fletcher, and Dean Queen are therefore liable to Babinski under 42 U.S.C. § 1983 for violating, under color of state law, Babinski's right to substantive due

process when Babinski was *de facto* expelled from the Program because of his performative paper and his Program participation in and out of class.

**COUNT 5**
**VIOLATION OF FOURTEENTH AMENDMENT RIGHT TO EQUAL PROTECTION**
**42 U.S.C. § 1983**

**51.**

Babinski incorporates by reference paragraphs 1 through 50.

**52.**

As a student at a public postsecondary institution, Babinski is entitled to equal protection under the law accordance with the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

**53.**

Professors Walsh's, Sikes', Fletcher's, and Sosnowsky's and Dean Queen's actions against Babinski differ considerably from their treatment of other, similarly situated students without sufficient justification, making Babinski a "class of one" who has suffered discrimination.

**54.**

Professors Walsh, Sikes, Fletcher, and Sosnowsky and Dean Queen are therefore liable to Babinski under 42 U.S.C. § 1983 for violating, under color of state law, Babinski's right to equal protection when punitive actions were taken against Babinski and not against other students similarly situated and when Babinski was not permitted to utilize various university policies that were available to other students.

16

**COUNT 6**
**CONSPIRACY TO VIOLATE CIVIL RIGHTS**
**42 U.S.C. § 1983**

**55.**

Babinski incorporates by reference paragraphs 1 through 54.

**56.**

Professors Walsh, Sikes, Fletcher, and Sosnowsky and Dean Queen, in various combinations and through correspondence and other overt acts, conspired to violate Babinski's civil rights, including but not limited to those rights described above.

**57.**

Professors Walsh, Sikes, Fletcher, and Sosnowsky and Dean Queen are therefore liable to Babinski under 42 U.S.C. § 1983 for engaging in a conspiracy to violate, under color of state law, Babinski's civil rights including, but not limited to, Babinski's rights to freedom of speech, due process, and equal protection.

**DAMAGES**

**58.**

As a direct result of the Defendants' actions described above, Babinski has suffered damage in the following respects:

a.  Economic damages,
b.  Tuition and fees,
c.  Loss of earning capacity,
d.  Mental anguish and emotional damage,
e.  Damage to reputation,
f.  Attorney's fees and
g.  Other measures and elements of damages that may be proven at trial.

## DEMAND FOR PERMANENT INJUNCTION

**59.**

Babinski incorporates by reference paragraphs 1 through 57.

**60.**

Babinski further demands this Court enter a permanent injunction against Professor Sosnowsky and Dean Queen, in their official capacities, mandating Babinski's reinstatement to the Program and mandating that all barriers to Babinski's continuation in the Program toward receiving the degree of Doctor of Philosophy in Theatre (Ph.D.) be eliminated.

**61.**

Babinski further demands this Court enter a permanent injunction against Professors Walsh, Fletcher, Sikes, and Sosnowsky, and Dean Queen, enjoining them from further disseminating information about this matter, including Babinski's performative paper, and enjoining them from further disparaging Babinski to other persons.

**62.**

Babinski's *de facto* expulsion from the Program because of his protected speech, and without due process of law, constitutes a continuing violation of Babinski's constitutional rights by officials acting under color of state law.

**63.**

Continued dissemination of information about this matter, including Babinski's performative paper and false information about his mental state, academic progress, and conduct in class and with other students, will continue to cause harm to Babinski in his ability to secure or continue in professional opportunities associated with his work in the Program and elsewhere.

**64.**

In addition to the damages demanded above, this Court can vindicate Babinski's constitutional and personal rights by requiring these officials to cease their continuing violation of Babinski's rights and return him to the Program in good standing, providing Babinski a clear and unobstructed path to obtaining the Doctor of Philosophy in Theatre (Ph.D.) degree as long as Babinski complies with the generally applicable Program requirements for all students. This Court can also vindicate Babinski's rights by enjoining the defendants from interfering with Babinski's academic and professional progress through their dissemination of false and misleading information about Babinski and further publication of his performative paper.

**WHEREFORE**, premises considered, Petitioner, ANDREW BABINSKI, prays for judgment in his favor and against Defendants, TODD QUEEN, in his personal and official capacity as Dean of the College of Music and Dramatic Arts of Louisiana State University, KRISTIN SOSNOWSKY, in her personal and official capacities as Chair of the LSU School of Theatre, SHANNON WALSH, JOHN FLETCHER, and ALAN SIKES**,** in such amounts as are reasonable within the premises, for the injunctive relief prayed for and for all other equitable

relief, and, in addition, for whatever penalties, attorney's fees, and costs as allowed by law, together with judicial interest thereon from date of judicial demand until paid.

Respectfully Submitted:

EVAN J. BERGERON (#33725)
**The Law Office of Evan J. Bergeron**
1700 Josephine Street
New Orleans, LA 70113
Telephone: 504-841-9395
evan@evanjbergeron.law
*Counsel for Plaintiff, Andrew Babinski*