**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| ANDREW BABINSKI | * | |
| | * | |
| versus | * | No. 3:20-cv-426-SDD-EWD |
| | * | |
| TODD QUEEN, et al. | * | |

**STATUS REPORT**

A.    **JURISDICTION**

**Plaintiff:**

This Court's jurisdiction over the subject matter of this cause is based on 28 U.S.C. § 1331

(federal question) as the claims alleged herein arise under 42 U.S.C. § 1983.

This Court's jurisdiction over defendants' persons is general in nature, as all defendants

reside and work in the State of Louisiana.

**Defendants – LSU Employees[1]:**

1. **Sovereign Immunity**

 "Federal courts are courts of limited jurisdiction," and "possess only that power authorized

by the Constitution and statute." *Kokkonen v. Guardina Life Ins. Co of Am.*, 511 U.S. 375, 377

(1994) (internal citations omitted). Under Fed. R. Civ. P., Rule 12(b)(1), "[a] case is properly

dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional

power to adjudicate the case." *Home Builders Ass'n of Mississippi, Inc. v. City of Madison*, 143 F.

3d 1006, 1008 (5th Cir. 1998) (internal citations omitted). All of Petitioner's claims are against state

employees and are therefore barred by sovereign immunity. Sovereign immunity operates as "a

---

[1] Defendants Todd Queen, Kristin Sosnowsky, Shannon Walsh, John Fletcher, and Alan Sikes, in their individual and official capacities, (collectively "LSU Employees"):

jurisdictional bar, depriving federal courts of the power to adjudicate suits against a state." *Union Pacific Railroad Co. v. La. Public Service Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011). A suit "against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Sovereign immunity extends to state officials sued in official capacities because such suits are actually against the state. *New Orleans Towing Ass'n, Inc. v. Foster*, 248 F.3d 1143 (5th Cir. 2001).

State employees are not 'persons' subject to liability and cannot be sued for monetary damages under 42 U.S.C. §1983, *Perez v. Region 20 Education Service Center*, 307 F.3d 318, 326 (5th Cir. 2002). Longstanding jurisprudence on the applicability of sovereign immunity to state officials makes the 42 U.S.C. §1983 claim clearly unfounded entitling the defendants, named in their official capacities to dismissal of the 42 U.S.C. §1983 claims.

All claims for monetary damages against the defendants in their official capacities must be dismissed with prejudice at Petitioner's cost.

## 2.  Qualified Immunity

Qualified immunity protects public employees and officials from individual capacity suits under 42 U.S.C. §1983 for performance of "discretionary duties" when their actions are reasonable regarding the rights allegedly violated. *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010). "Several federal courts have unwaveringly determined that Louisiana's public universities, including LSU, are to be treated as arms of the State of Louisiana." *Jarvis v. Louisiana State Univ. Health Science Ctr.*, 2007 WL 2993862, p. 3 (E.D. La. 2007).  Further, in 2019, the United States Court of Appeal, Fifth Circuit, held"[p]ublic university professors are public employees." *Buchanan v. Alexander*, 919 F. 3d 847, (5th Cir. 2019), writ denied, 140 S.Ct. 432; 205 L.Ed.2d 264 (2019). Since Petitioner

recognizes the individual defendants are LSU employees, damage claims against these officials
must be dismissed.

The qualified immunity inquiry comprises two questions: (1) "whether the defendant
violated the plaintiff's constitutional rights" and (2) whether that right was clearly established.
Courts have discretion to skip the first inquiry and resolve a case solely on clearly established
grounds."[2] A "clearly established" law must so clearly and unambiguously prohibit an official's
conduct that "every reasonable official would have understood that what he is doing violates that
right" and existing precedent placed the question beyond debate. *Ashcroft v. Al-Kidd,* 563 U.S.
731, 741 (2011).

Petitioner failed to allege any actions or inactions of the Defendants other than actions
taken in their official capacities. In the event this Honorable Court determines sufficient facts were
pled against the Defendants in their individual capacities, the Defendants are entitled to qualified
immunity.

Accordingly, the Defendants their individual capacities are entitled to dismissal of
Petitioner's claims at Petitioner's cost for failure to state a claim upon which relief can be granted.

B.    **BRIEF EXPLANATION OF THE CASE**

1.    Plaintiff's claims:

Plaintiff, Andrew Babinski, ("Babinski") was a student in the Ph.D. program (the
"program") at the LSU Department of Theatre (the "department"). Babinski boasted an excellent
academic record after three semesters in the program, with a cumulative GPA of 3.942 and a
graduate assistantship where he regularly received high marks. Babinski also enjoyed a cordial

---

[2] *Sims v. City of Madisonville*, 894 F.3d 632, 638 (5th Cir. 2018) (citing *Pearson v. Callahan*, 555 U.S. 223, 240
(2009)). *See also Buchanan v. Alexander*, 919 F. 3d 847, (5th Cir. 2019), writ denied, 140 S.Ct. 432; 205 L.Ed.2d 264
(2019).

and positive working relationship with four of the Defendants in this case, Professors Kristin Sosnowsky, ("Professor Sosnowsky"), Professor John Fletcher, ("Professor Fletcher"), Professor Alan Sikes, ("Professor Sikes"), and Professor Shannon Walsh ("Professor Walsh"), prior to the events that led to this suit.

Babinski also considers himself to be an academic with strong views about the importance of ethics (Professors Fletcher, Sikes, and Walsh knew and understood this to be his research focus). While enrolled in his fourth semester of the program, Babinski took issue with Professor Walsh's instruction in her "Gender, Sexuality, and Performance" course. Babinski believed this course and Professor Walsh were more concerned with political indoctrination rather than fostering academic thought. When Babinski would attempt to challenge what he saw as unethical scholarly practices in the assigned readings and discussions in class or debate the merits of others' absolute conclusions on race, gender, and sexuality, he was met with hostility and abuse from Professor Walsh and his classmates.

Feeling discouraged and unable to be heard, Babinski decided to use a literary device he learned from Professor Walsh and other defendants to try and reach Professor Walsh in his final paper for the course. Babinski submitted a 150-page paper in the style of satirical, *performative writing*, a mechanism sometimes used in theatre scholarship where the author tries to perform a concept or idea through language, manner, and form in addition to content, seeking to create in the reader the sensation the author is describing. The performative paper was satirical, over-the-top, and used strong language, expletives, and harsh criticism of some defendants to make Babinski's points, but it did not threaten anyone either directly or indirectly. The performative paper was also submitted only to Professor Walsh, with a request that she share it only with Professors Fletcher and Sikes.

Instead, Professors Walsh and Sosnowsky referred Babinski's performative paper to the LSU Police Department and the LSU Office of Student Advocacy and Accountability for disciplinary action.

4

Neither entity found the performative paper to represent a security threat to anyone nor grounds for academic discipline.

Nevertheless, the defendants retaliated against Babinski for his performative paper. Even though they lacked the grounds to expel Babinski from the program, Professors Walsh, Fletcher, and Sikes (who make up three-fourths of the program's faculty) decided that they would refuse to teach Babinski and would refuse to administer his general examinations. Professor Walsh caused Babinski to be placed on academic probation. Professor Sosnowsky refused to allow Babinski to continue as a graduate assistant. Both Professors Walsh and Sosnowsky impeded Babinski's ability to receive an assistantship in another department, keeping him from substantial financial benefits. Finally, Dean Todd Queen, ("Dean Queen") advised Babinski that because of the decisions of the other defendants, there was no way for Babinski to continue in the program (a statement Babinski would later learn was false). Babinski was, *de facto*, expelled for his satirical, performative paper.

As a result, Babinski brought this suit for damages, injunctive relief, and attorney's fees. Babinski's First Amendment rights to freedom of speech and freedom from retaliation for speech and his Fourteenth Amendment rights to procedural and substantive due process and equal protection under the law have all been violated by the defendants acting individually and in a conspiracy. Babinski is seeking economic damages for the additional debts he incurred in pursuing his education and the future loss of earning capacity occasioned by his inability to receive a Ph.D., and general damages for the damage to his reputation and the mental anguish occasioned by the defendants. Babinski is also seeking a permanent injunction mandating reinstatement to the program and removing all barriers to completion, along with an injunction preventing defendants from further disseminating information about this matter, including Babinski's performative paper, and enjoining them from further disparaging Babinski to other persons in the event Babinski seeks to transfer to another Ph.D. program elsewhere.

2.      Defendants' claims:

Defendants deny any violation of Petitioner's First Amendment Right to Freedom of

Speech, First Amendment Right to Freedom from Retaliation, Fourteenth Amendment Right to

Procedural Due Process, Fourteenth Amendment Right to Substantive Due Process, Fourteenth

Amendment Right to Equal Protection, Conspiracy to Violate Civil Rights (Doc. 1, paras. 33-57)

and any other violation alleged in the Complaint.

### a.      Qualified Immunity Bars Claims

Qualified immunity protects public employees and officials from individual capacity suits

under 42 U.S.C. §1983 for performance of "discretionary duties" when their actions are reasonable

regarding the rights allegedly violated. *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010). "Several

federal courts have unwaveringly determined that Louisiana's public universities, including LSU,

are to be treated as arms of the State of Louisiana." *Jarvis v. Louisiana State Univ. Health Science

Ctr.*, 2007 WL 2993862, p. 3 (E.D. La. 2007). Further, in 2019, the United States Court of Appeal,

Fifth Circuit, held"[p]ublic university professors are public employees." *Buchanan v. Alexander*,

919 F. 3d 847, (5th Cir. 2019), writ denied, 140 S.Ct. 432; 205 L.Ed.2d 264 (2019). Since Petitioner

recognizes the individual defendants are LSU employees, damage claims against these officials

must be dismissed.

The qualified immunity inquiry comprises two questions: (1) "whether the defendant

violated the plaintiff's constitutional rights" and (2) whether that right was clearly established.

Courts have discretion to skip the first inquiry and resolve a case solely on clearly established

grounds."[3] A "clearly established" law must so clearly and unambiguously prohibit an official's

---

[3] *Sims v. City of Madisonville*, 894 F.3d 632, 638 (5th Cir. 2018) (citing *Pearson v. Callahan*, 555 U.S. 223, 240
   (2009)). *See* also *Buchanan v. Alexander*, 919 F. 3d 847, (5th Cir. 2019), writ denied, 140 S.Ct. 432; 205 L.Ed.2d
   264 (2019).

conduct that "every reasonable official would have understood that what he is doing violates that right" and existing precedent placed the question beyond debate. *Ashcroft v. Al-Kidd,* 563 U.S. 731, 741 (2011).

Petitioner failed to allege any actions or inactions of the Defendants other than actions taken in their official capacities. In the event this Honorable Court determines sufficient facts were pled against the Defendants in their individual capacities, the Defendants are entitled to qualified immunity.

Accordingly, the Defendants in their individual capacities are entitled to dismissal of Petitioner's claims at Petitioner's cost for failure to state a claim upon which relief can be granted.

C.    **PENDING MOTIONS**

None at this time.

D.    **ISSUES**

Plaintiff:

1.    Whether Babinski's satirical, performative paper and expressed views constitute protected speech under the First Amendment – *contested*

2.    Whether defendants' *de facto* expulsion of Babinski constitutes improper discipline for Babinski's speech – *contested*

3.    Whether defendants' *de facto* expulsion of Babinski constitutes improper retaliation against Babinski for his speech – *contested*

4.    Whether Babinski possessed a vested property right to maintain enrollment and continue through an academic program – *contested*

5.      Whether Babinski constitutes a "class of one" in that his treatment by defendants differed from others similarly situated – *contested*

6.      Whether defendants' actions in concert constitute a conspiracy to violate Babinski's constitutional rights – *contested*

Defendants:

1.      Whether Petitioner stated any claims upon which relief can be granted against any Defendant - *contested*

2.      Whether Petitioner's claims are barred by sovereign immunity - *contested*

3.      Whether Petitioner's claims are barred by qualified immunity - *contested*

4.      Whether Petitioner is entitled to any of the relief sought - *contested*

## E.    DAMAGES

1.      Plaintiff's calculation of damages:

Mr. Babinski's participation in and completion of the Ph.D. program at LSU was his best chance to pursue a fulfilling career in post-secondary theatre education. Defendants told Babinski repeatedly that jobs in theatre academia were scarce and highly competitive, but that his forthcoming Ph.D., coupled with the MFA degree he'd already received, would position him far ahead of his peers. In contrast, Babinski's attempting to secure a faculty position with his MFA alone was improbable.

For these reasons, Babinski's damages in this case are substantial. Aside from lost out-of-pocket expenses pursuing a degree he was prevented from receiving, the defendants' acts in improperly preventing Babinski from continuing to pursue his Ph.D. degree likely forecloses him

entirely from this profession. The faculty's actions have caused Babinski to likely lose $47,000.00 per year for the 20-year remainder of his working life, which represents the difference between the national average salary of a postsecondary theatre professor and Babinski's salary prior to beginning the Ph.D. program at LSU.

Economic damages (loss of future wages and earning capacity) $47,000.00 multiplied by 20 years remaining worklife = $940,000.00;

Out-of-pocket tuition, fees, books, and living expenses caused by expulsion = $25,680.00;

Mental anguish, emotional distress, and damage to reputation = $100,000.00;

Attorney's fees (estimate) = $50,000.00

**TOTAL = $1,115,680.00.**

Alternatively, Babinski is demanding a permanent injunction that would restore him to the Theatre Ph.D. program and remove all barriers toward his receiving the degree of Doctor of Philosophy in Theatre. If such injunction is granted, the economic damages calculation above would likely decrease, but Babinski maintains his entitlement to out-of-pocket tuition, fees, books, and living expenses, mental anguish/emotional distress/damage to reputation, and attorney's fees.

2.      Defendants' calculation of offset and/or plaintiff's damages:

Defendants dispute Petitioner is entitled to monetary damages.  If monetary damages are awarded, monetary damages should be reduced by the amount caused by Petitioner.

**F.     SERVICE**

All defendants have been served. There are no service issues at this time.

**G.     DISCOVERY**

1. Initial disclosures.

    A. Initial disclosures under FRCP 26(a)(1) have not been completed.

B. No party objects to initial disclosures.

2. Discovery in progress.

By plaintiff: Babinski issued several public records requests to LSU prior to seeking representation and filing suit and received records. No other discovery has been conducted or is in progress.

By defendants: No discovery has been taken or is in progress.

3. Protective orders or limitations on discovery.

Petitioner and LSU Employees agree Petitioner's academic records should be subject to a protective order.

4. Discovery from experts and listing of potential experts:

By plaintiff: Babinski may offer the following expert testimony:

- Economist – calculation of damages

- Vocational counselor – calculation of damages

- Theatre writing and scholarship – nature of Babinski's paper

By defendants: None anticipated at this time.

## H.    PROPOSED SCHEDULING ORDER

1. Initial disclosures. In accordance with FRCP 26 or 90 days after disposition of any motions filed in response to Petitioner's Complaint.

2. Joinder of parties and amendment of pleadings: **January 29, 2021** or 30 days after disposition of any motions filed in response to Petitioner's Complaint.

3. Filing discovery motions and completing all discovery except experts: **September 30, 2021.**

4. Disclosures of identities and resumés of experts:

Plaintiff: **July 30, 2021.**

Defendants: **August 31, 2021.**

5. Exchange of expert reports:

Plaintiff: **October 29, 2021.**

Defendants: **November 30, 2021.**

6. Completion of discovery from experts: **December 31, 2021.**

7. Filing dispositive motions and Daubert motions: **January 31, 2022.**

I.    TRIAL

1. A demand for jury trial has NOT been made.

2. Trial is estimated to last three (3) days.

J.    OTHER MATTERS

None at this time. The parties request the Court cancel the scheduling conference and enter a scheduling order based on the deadlines outlined in this report.

K.    SETTLEMENT

1. Settlement efforts. The parties have not yet discussed settlement. Plaintiff sent a pre-litigation demand to which defendants did not respond.

2. Settlement conference. The parties request a settlement conference with the Court after disposition of dispositive motions or before based on the progress of the litigation.

L.    CONSENT TO JURISDICTION BY A MAGISTRATE JUDGE

Neither plaintiff nor defendants consent to jurisdiction by a Magistrate Judge at this time.

Report dated **December 3, 2020.**

Respectfully Submitted:

_____
EVAN J. BERGERON (#33725)
**The Law Office of Evan J. Bergeron**
1700 Josephine Street
New Orleans, LA 70113
Telephone: 504-841-9395
evan@evanjbergeron.law
*Counsel for Plaintiff, Andrew Babinski*