UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ANDREW BABINSKI** | **NO.: 3:20-cv-426-SDD-EWD** |
| **VERSUS** | **JUDGE: SHELLY DICK** |
| **TODD QUEEN, ET AL.** | **MAGISTRATE: ERIN WILDER-DOOMES** |

**REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS COMPLAINT PURSUANT TO RULE 12**

The remaining Defendants, Kristin Sosnowsky, Shannon Walsh, John Fletcher and Alan Sikes, submit this Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss Complaint Pursuant to Rule 12 (Doc. 18).

### I. Plaintiff's Complaint Fails to Comply with the Federal Rules of Pleading

Plaintiff's Opposition begins by asking the Court for leave to amend the Complaint to the extent it is inconsistent with the Opposition.[1] The Opposition includes numerous factual allegations and claims for relief which are not in the Complaint. Plaintiff also incorrectly asserts qualified immunity cannot be raised in a motion to dismiss and requests an opportunity to conduct discovery to establish facts to support the legal conclusions in the Complaint. Defendants object to Plaintiff's reliance on facts in the Opposition which were not pled in the Complaint. Motions to Dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure are decided on the face of the Complaint. Further, Rule 12(b) motions are pre-pleading motions, required to be filed prior to discovery, to defeat claims barred by sovereign and qualified immunity.

---

[1] Doc. 22, p. 2.

## II.   The Eleventh Amendment Bars Plaintiff's Suit Against Defendants

While Plaintiff claims his Complaint contains allegations against the Defendants in their personal capacities[2], every allegation in the Complaint concerns actions taken in the Defendants' official capacities. Accordingly, all damages claims against the Defendants are barred by sovereign immunity.

Plaintiff's conclusion paragraphs 59-64 of the Complaint seek prospective relief and are not barred by Eleventh Amendment sovereign immunity is erroneous.[3] In *Pennhurst State School & Hosp. v. Halderman*, the United States Supreme Court declared:

> The Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest. Thus, the general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter.[4]

Plaintiff argues the exception to this general rule, established in *Ex Parte Young,* strips Defendants of their official capacities.[5] For the *Ex Parte Young* doctrine to apply, three criteria must be satisfied: (1) a plaintiff must name individual state officials as defendants in their official capacities; (2) the plaintiff must allege an ongoing violation of federal law; and (3) the relief sought must be properly characterized as prospective.[6] A plaintiff is required to show the allegedly unconstitutional action was not a "one-time, past event" but an ongoing violation.[7]

Plaintiff "demands this Court enter a permanent injunction against Professor Sosnowsky…mandating [his] reinstatement to the Program."[8] Because such a mandatory

---

[2] Doc. 22, p. 4.
[3] Doc. 22, p. 4.
[4] 465 U.S. 89, 100-01, 104 S. Ct. 900, 79 L.Ed.2d 67 (1984), superseded on other grounds, internal citations and quotations omitted.
[5] Doc. 22, pp. 2-3, citing *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed.2d 714 (1908).
[6] *Green Valley Special Util. Dist. v. City of Schertz, Texas*, 969 F.3d 460, 471 (5th Cir.2020).
[7] *Cantu Servs., Inc. v. Roberie*, 535 Fed.Appx. 342, 345 (5th Cir.2013).
[8] Doc.1, para. 60.

injunction would operate against the State by requiring LSU to reinstate Plaintiff, it is barred by sovereign immunity. Further, Plaintiff failed to allege an ongoing violation of federal law by Sosnowsky. Rather, Plaintiff specifically claims the alleged *de facto* expulsion resulted from the actions of the other Defendants.[9] Accordingly, the *Ex Parte Young* doctrine does not apply.

Plaintiff "further demands this Court enter a permanent injunction against Professors Walsh, Fletcher, Sikes, and Sosnowsky…enjoining them from further disseminating information about this matter, including Babinski's performative paper, and enjoining them from further disparaging Babinski to other persons".[10] Plaintiff specifically alleges "Professor Walsh forwarded [his paper] to Professor Sosnowsky" who then "referred the paper to the LSU Police Department and the LSU Office of Student Advocacy and Accountability…"[11] Additionally, Plaintiff alleges Professor Walsh made statements to Professor Sosnowsky and to the Office of Student Advocacy and Accountability regarding her impression of Plaintiff and his paper.[12] Neither of these claims allege actions on the part of Professors Fletcher or Sikes, and therefore Plaintiff is not entitled to the relief sought against them. Further, as to Professors Walsh and Sosnowsky, because these claims do not allege ongoing violations but rather a "one-time, past event," the *Ex Parte Young* doctrine does not apply.

### III. Plaintiff has not stated a claim under the First Amendment

Plaintiff asserts, "[i]n the absence of any contrary pronouncements by the U.S. Supreme Court or the Fifth Circuit, *Tinker/Burnside* provide the standard by which Plaintiff's claims must be evaluated,"[13] while simultaneously conceding Defendants' Memorandum cites three Supreme

---

[9] Doc. 1, paras. 35 and 36.
[10] Doc. 1, para. 61. While not stated in the Complaint, Plaintiff concedes the allegations set forth in paragraph 61 of the Complaint are made against the Defendants in their official capacities. Doc. 22, Opposition, p. 4.
[11] Doc. 1, para. 24.
[12] Doc. 1, para. 25.
[13] Doc. 22, pp. 7-8, citing *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969) and *Burnside v. Byars*, 363 F. 2d 744 (5th Cir. 1966).

Court cases post-*Tinker*, none of which employed the *Tinker/Burnside* analysis.[14] While Plaintiff attempts to distinguish *Bethel School Dist. No. 403 v. Fraser,* decided in 1986, *Hazelwood School Dist. v. Kuhlmeier,* decided in 1988, and *Morse v. Frederick,* decided in 2007, these cases simply demonstrate the U.S. Supreme Court's intent to limit the application and more narrowly tailor the standards enunciated in *Tinker/Burnside*, both decided in the 1960s.[15]

Further, Plaintiff's suit is analogous to *Collins v. Putt*, in which a college student alleged a professor violated the First Amendment by removing a blog post written for a class assignment.[16] For the reasons addressed in Defendants' Memorandum, the Second Circuit Court of Appeals upheld the district court's dismissal of the student's complaint.[17] Applying the *Hazelwood* standard, the Second Circuit held the student's speech made "specifically in response to a class assignment, under the supervision of a college faculty member," which failed to conform to the assignment, was not protected speech.[18] Significantly, on March 1, 2021, the U.S. Supreme Court denied the student's petition for writ of certiorari.[19] *Collins* is consistent with *Hazelwood*.[20]

Additionally, Plaintiff's reliance on *Healy v. James* and *Papish v. Bd. of Curators of Univ. of Missouri* is misplaced.[21] In *Healy*, the U.S. Supreme Court addressed whether a state college's failure to officially recognize a local chapter of a student organization violated the students' rights

---

[14] Doc. 22, p. 6.
[15] *Bethel School Dist. No. 403 v. Fraser,* 478 U.S. 675; 106 S.Ct. 3159, 3160; 92 L.Ed.2d 549 (1986); *Hazelwood School Dist. v. Kuhlmeier* 484 U.S. 260; 108 S.Ct. 562, 564; 98 L.Ed.2d 592 (1988); and *Morse v. Frederick*, 551 U.S. 393, 394–95; 127 S.Ct. 2618, 2620–21; 168 L.Ed.2d 290 (2007).
[16] *Collins v. Putt,* 979 F.3d 128 (2d Cir.2020), *cert. denied,* 20-920, 2021 WL 769716; --- S.Ct. ---- (2021).
[17] Doc. 18-1, pp. 7-8 citing *Collins v. Putt,* 979 F.3d at 137.
[18] *Collins,* 979 F.3d at 134 and 136.
[19] *Collins v. Putt,* 20-920, 2021 WL 769716, at *1; --- S.Ct. ---- (2021).
[20] *Hazelwood School Dist. v. Kuhlmeier* 484 U.S. 260; 108 S.Ct. 562, 564; 98 L.Ed.2d 592 (1988).
[21] Doc. 22, p. 6, citing Healy v. *James*, 408 U.S. 169, 180; 92 S.Ct. 2338, 2340; 33 L.Ed.2d 266 (1972) and *Papish v. Bd. of Curators of Univ. of Missouri*, 410 U.S. 667, 670; 93 S.Ct. 1197, 1197–98; 35 L.Ed.2d 618 (1973).

to freedom of association, not freedom of speech.[22] *Papish* addressed a student's distribution of a newspaper owned by an independent company, not speech in the context of a course assignment.[23]

Further, contrary to Plaintiff's assertions, his placement on academic probation, ineligibility to remain a graduate assistant, and loss of his graduate assistant stipend, tuition waiver, and non-resident fee waiver[24] are results of the failing grade he received for the paper which was turned in late, incomplete, and failed to comply with the course assignment.[25] Plaintiff's loss of benefits was clearly not the result of any arbitrary act by any Defendant.

**IV.   Continuing in a Graduate Program is not a Vested Property Right or Protected Liberty Interest**

Plaintiff asserts he has a protected property interest in the right to "maintain enrollment and continue through an academic program toward graduation."[26] In an attempt to overcome the numerous cases to the contrary cited in Defendants' Memorandum, Plaintiff asserts his enrollment at LSU constitutes a contract.[27] In support, Plaintiff relies on Louisiana Civil Code articles governing contract formation and conditional obligations.[28] However, Plaintiff fails to cite any case law case supporting his allegation that the right to maintain enrollment in a particular program constitutes a vested contractual property interest.

Notably, the Fifth Circuit foreclosed this issue long ago, holding, "[e]ducation-particularly post-graduate or professional education-is not a right afforded either explicit or implicit protection under the Constitution."[29] In *Barnes v. Symeonides*, a law school student alleged deprivation of a

---

[22] *Healy v. James*, 408 U.S. 169, 181; 92 S.Ct. 2338, 2346; 33 L.Ed.2d 266 (1972).
[23] *Papish v. Bd. of Curators of Univ. of Missouri*, 410 U.S. 667, 667–68; 93 S.Ct. 1197, 1197–98; 35 L.Ed.2d 618 (1973).
[24] Doc. 22, p.11 and Doc. 1, para. 26.
[25] Doc. 22, p.11.
[26] Doc. 1, paras. 42 and 43.
[27] Doc. 22, p. 14.
[28] Doc. 22, pp. 14-15.
[29] *Barnes v. Symeonides*, 44 F.3d 1005, 1995 WL 10518 at p. 2 (5th Cir. 1995). *See* also *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1; 93 S.Ct. 1278, 1297; 36 L.Ed.2d 16 (1973) (education, of course, is not among the rights afforded explicit protection under our Federal Constitution).

vested property interest in continued admission in law school.[30] Similar to Plaintiff's claims, the student in *Barnes* also characterized continued enrollment as a liberty interest.[31] The Fifth Circuit acknowledged property interests are created by state statutes, but held it was unable to identify any statutory authority supporting the student's alleged property or liberty interests.[32] Plaintiff attempts to distinguish *Barnes* based solely on the student's nonpayment of tuition in that matter;[33] however, the Fifth Circuit expressly stated, "an interest in returning to law school…does not constitute an interest subject to the protections of the Due Process Clause."[34] Further, the Court held:

> There is not a violation of due process every time a university ... [departs from or] violates its own rules. [U]nless the conduct trespasses on federal constitutional safeguards, there is no constitutional deprivation. Barnes has not demonstrated that the defendants' conduct affected a constitutional right.[35]

Plaintiff erroneously relies on *Bd. of Curators of Univ. of Missouri v. Horowitz* for the proposition that Courts assume a vested property interest in the education context.[36] In *Horowitz*, the U.S. Supreme Court stated, "[t]o be entitled to the procedural protections of the Fourteenth Amendment, <u>respondent must</u> in a case such as this <u>demonstrate that her dismissal</u> from the school <u>deprived her of either a 'liberty' or a 'property' interest.</u>[37] The U.S. Supreme Court further explained, there was no need to decide whether deprivation of a property or liberty interest occurred when adequate due process was afforded.[38]

---

[30] 44 F.3d 1005, 1995 WL 10518 (5th Cir.1995).
[31] Doc. 22, pp. 17-18. *Barnes v. Symeonides*, 44 F.3d 1005, 1995 WL 10518 at p. 2 (5th Cir.1995).
[32] *Barnes,* 1995 WL 10518 at p. 3.
[33] Doc. 22, p. 16.
[34] *Barnes,* 1995 WL 10518 at p. 3.
[35] *Id.*.
[36] 435 U.S. 78; 98 S.Ct. 948; 55 L.Ed.2d 124 (1978).
[37] *Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78; 98 S.Ct. 948, 951; 55 L.Ed.2d 124 (1978). Emphasis added.
[38] *Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78; 98 S.Ct. 948, 952; 55 L.Ed.2d 124 (1978).

Further, Plaintiff's claim he was not afforded the "informal give and take," which he is entitled is unsupported by any factual allegation in the Complaint.[39] Plaintiff's Complaint is devoid of any claim he was not afforded an opportunity to appeal or address the failing grade in accordance with the university's policies and procedures.

Finally, Plaintiff argues for the first time in his Opposition, he has a protected liberty interest in his "good name, reputation, honor, and integrity" entitling him to due process.[40] Specifically, Plaintiff alleges an unspecified Defendant discussed his academic progress and performative paper with another person, and concludes the alleged communications automatically constitute continued injury to his reputation and his liberty interests.[41] Such statement is clearly insufficient to state a cause of action upon which relief may be granted.

## V. Plaintiff Failed to Plead Facts to Show he was a Class of One and Should not be Permitted to Amend His Petition to do so

Plaintiff points to paragraph 18 of the Complaint to support the sufficiency of the alleged equal protection violation based on disparate treatment of a class of one. He also relies on paragraph 30 of the Complaint, wherein he alleged "he was misled and not given opportunities to continue in the Ph.D. program even though other LSU students were given these opportunities."[42] Plaintiff actually alleged "Dean Queen … misled Babinski as to various university procedures in furtherance of the determination that Babinski could not continue in the Program…"[43] Todd Queen was dismissed from this suit on January 7, 2021.[44]

Plaintiff's reliance on *Village of Willowbrook v. Olech* is also misplaced, as the complaint therein included far more detail regarding the alleged disparate treatment than set forth in

---

[39] Doc. 22, pg. 15.
[40] Doc. 22, p. 17.
[41] Doc. 22, p. 17-18.
[42] Doc. 22, p. 18.
[43] Doc. 1, para. 30.
[44] Doc. 14.

Plaintiff's Complaint.⁴⁵ Specifically, the complaint in *Willowbrook* alleged the defendant intentionally demanded a 33–foot easement as a condition of connecting the plaintiff's property to the municipal water supply where the defendant required only a 15–foot easement from other similarly situated property owners.⁴⁶ Plaintiffs' Complaint lacks such specificity and Defendants object to the additional factual assertions improperly contained in Plaintiff's Opposition which cannot be relied upon to overcome deficiencies in the Complaint. Further, Plaintiff's claim that certain allegations in the Opposition were not made in the Complaint to protect the identity of certain persons is nonsensical as these new factual allegations still do not reveal the identity of any individuals.⁴⁷

## VI.  The Complaint does not State Facts Giving Rise to a Claim for Conspiracy

Plaintiff relies on paragraphs 29-30 of the Complaint for the proposition the Complaint alleges Defendants Walsh, Feltcher, and Sikes refused to "serve on [his] dissertation committee" and "Defendant Sosnowsky participated and condoned" actions alleged on the part of Defendants Walsh, Fletcher, and Sikes. However, both of these allegations are wholly absent from the Complaint.⁴⁸ Additionally, Plaintiff's Opposition contains a list of five ways he alleges Defendants conspired against him, which is also noticeably absent from his Complaint.⁴⁹ The inclusion of additional factual allegations in Plaintiff's Opposition is improper and demonstrates the allegations in the Complaint are insufficient to state a claim for which relief may be granted.

---

⁴⁵ 528 U.S. 562. Notably, two of the three cases cited by Plaintiff, *Sioux City Bridge Co. v. Dakota Cty.*, *Neb.*, 260 U.S. 441 (1923) and Allegheny *Pittsburg Coal Co. v. Comm'n of Webster Cty.*, 488 U.S. 336 (1989), involve disparate property tax assessments, and were not before the Court on a Motion to Dismiss but rather on appeal after a final judgment on the merits was rendered by the lower court.
⁴⁶ *Willowbrook,* 528 U.S. at 565.
⁴⁷ Doc. 22, pp. 18-19.
⁴⁸ Doc. 22, p. 19.
⁴⁹ Doc. 22, pp. 19-20.

**VII.     Alternatively, Plaintiff's Claims are Barred by Qualified Immunity**

Plaintiff failed to establish his constitutional rights were violated or clearly established. Accordingly, Plaintiff failed to demonstrate his claims against the Defendants in their personal capacities, are not barred by qualified immunity. Throughout the Opposition, Plaintiff repeatedly, yet incorrectly, asserts Defendants are unable to raise qualified immunity through a motion to dismiss, but rather must raise the same as an affirmative defense.[50] In support of this proposition, Plaintiff relies upon this Court's recent decision in *McNeal v. Louisiana Dep't of Pub. Safety & Corr.*, in which this Court evaluated claims of lack of standing and prescription raised in a motion to dismiss.[51] *McNeal* does not stand for the proposition that qualified immunity cannot be raised in a Motion to Dismiss.[52] This Court found not only that the plaintiff lacked standing to pursue his claims,[53] but also that "[a] statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred..."[54]

Further, the U.S. Supreme Court held, "[q]ualified immunity is an immunity from suit rather than a mere defense to liability."[55] Accordingly, "[o]ne of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive."[56] In *Backe v. LeBlanc*, the Fifth Circuit held although the lower court found it was premature to address assertions of qualified immunity before discovery had taken place, "that

---

[50] Doc. 22, pp. 1, 2, 5, 9, 13, and 24.
[51] CV 20-312-JWD-EWD, 2021 WL 359737 (M.D. La. 2021).
[52] Plaintiff's reliance on *Siegert v. Gilley*, 500 U.S. 226, 231; 111 S.Ct. 1789, 1793; 114 L.Ed.2d 277 (1991), is also misplaced as *Siegert* analyzed a qualified immunity defense upon a motion for summary judgment. Further, the Supreme Court upheld the lower court's dismissal of the plaintiff's suit because the plaintiff was unable to overcome the defendant's qualified immunity defense.
[53] *Id* at. P. 9.
[54] *Id.* at pp. 11-12.
[55] *Pearson v. Callahan,* 555 U.S. 223, 237, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009), internal quotations omitted.
[56] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir.2012). *citing Helton v. Clements,* 787 F.2d 1016, 1017 (5th Cir.1986).

is *precisely* the point of qualified immunity: to protect public officials from expensive, intrusive discovery until and unless the requisite showing overcoming immunity is made."[57]

## VIII. Conclusion

Plaintiff requests leave of court to amend his Complaint at least seven times in the Opposition. Further, Plaintiff requests this Court permit him an opportunity to conduct discovery to establish facts to support the legal conclusions in the Complaint. Defendants urge this Court to deny Plaintiff's requests for leave to re-write his Complaint, and refuse his requests for discovery. The Court should grant Defendants' Motion to Dismiss Complaint Pursuant to Rule 12, with prejudice at Plaintiff's cost, for the reasons set forth in the Memorandum in Support thereof and in this Reply Memorandum.

By Attorneys:

**CERTIFICATE OF SERVICE**

I hereby certify that on March 16, 2021, a copy of the forgoing Reply Memorandum in Support of Defendants' Motion to Dismiss Complaint Pursuant to Rule 12 was filed electronically with the Clerk of Court using the CM/ECF system.

All counsel will be served through the CM/ECF system. There are no non-CM/EC participants

/s/ Sheri M. Morris
Sheri M. Morris

/s/Sheri M. Morris
Sheri M. Morris, LA Bar No. 20937
Christina B. Peck, LA Bar No. 14302
Katelin Varnado, LA Bar No. 35498
Special Assistants Attorney General
DAIGLE, FISSE & KESSENICH, PLC
8480 Bluebonnet Blvd., Suite F
Baton Rouge, LA  70810
Phone: (225) 421-1800   Fax: (225) 421-1792
Email: SMorris@DaigleFisse.com
       CPeck@DaigleFisse.com
       KVarnado@DaigleFisse.com

---

[57] *Id.* at 648.