## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

ANDREW BABINSKI                                    CIVIL ACTION

VERSUS                                             20-426-SDD-EWD

TODD QUEEN, ET AL.

## <u>RULING</u>

This matter is before the Court on the *Motion to Dismiss*[1] filed by defendants, Kristin Sosnowsky ("Sosnowsky"), Shannon Walsh ("Walsh"), John Fletcher ("Fletcher"), and Alan Sikes ("Sikes") (collectively "Defendants").[2] Plaintiff Andrew Babinski ("Babinski") filed an *Opposition*,[3] to which Defendants filed a *Reply*.[4] For the following reasons, Defendants' *Motion* shall be granted in part and denied in part.

## I.    BACKGROUND

This is a free speech case. Babinski was a student in the Louisiana State University School of Theatre Ph.D. program ("the Program").[5] Sosnowsky is alleged to be the Chair of the LSU School of Theatre as well as a faculty member.[6] She is sued in her official and individual capacities.[7] Walsh, Fletcher, and Sikes are alleged to be faculty members of the School of Theater, and they are sued only in their individual capacities.[8]

---

[1] Rec. Doc. No. 18.
[2] Babinski dismissed his claims against Todd Queen. Rec. Doc. No. 13.
[3] Rec. Doc. No. 22.
[4] Rec. Doc. No. 23.
[5] Rec. Doc. No. 1, p. 1.
[6] *Id.* at 2.
[7] *Id.*
[8] *Id.* at 2–3.

Babinski enrolled in the Program in 2017, and Sosnowsky appointed him as a graduate assistant.[9] The *Complaint* is unclear, but at some point, Fletcher appointed Babinski as his teaching assistant.[10] Babinski chose the Program specifically because, unlike others, it did not have a primary focus on "activist or social justice themes."[11] Babinski alleges that this was a misrepresentation, and, in fact, several aspects of the Program were not as advertised.[12]

In the spring semester of 2019, Babinski enrolled in Walsh's course "Gender, Sexuality, and Performance."[13] Babinski avers that the Program advertised the course as an "academic discussion about gender and sexuality in performance," but in reality it was a "liberal indoctrination course where opposing opinions and critical discussion were often met with hostility from certain students and Professor Walsh, herself."[14] Babinski voiced unpopular opinions in class, and he alleges that Walsh and his classmates rewarded him with abuse and mistreatment.[15] Babinski attempted to discuss his concerns around midterms with Walsh, but Walsh allegedly dismissed his "concerns and escalated the pattern of mistreatment, even telling Babinski that he deserved the harm he'd experienced in class."[16]

Babinski used the course's final paper to express his concerns about the "Gender, Sexuality, and Performance" course and the Program as a whole.[17] He alleges he used

---

[9] *Id.* at 4.
[10] *Id.*
[11] *Id.*
[12] For example, the content of some courses did not match their descriptions, while other courses were not taught at all. *Id.* at 4–6.
[13] *Id.* at 6.
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.* at 7.

"performative writing" to express that he felt mistreated and discriminated against when he expressed his views inside and outside of class.[18] Babinski allegedly learned about performative writing from Walsh and others on the faculty.[19] According to Babinski, performative writing is:

> [A] style whereby the writer is trying to perform a concept or idea through language, manner, and form, in addition to its content. It is most often done by liberal, feminist, anti-racist scholars as a means of trying to use words to create a sensation of the very experience they are describing. As a performance makes you "feel something" in an effort to make you understand another person's life, this form of writing seeks to do the same— not through only describing it, but in the process of actually sensorially experiencing something.[20]

Babinski's final paper allegedly included expletives and harsh criticism of faculty members and peers—but no threats.[21] It purportedly included the disclaimer that "his writing was performative and exaggerated."[22] In the paper, Babinski asked that Walsh share the paper with Fletcher and Sikes and requested that the three of them meet to discuss Babinski's concerns about the Program.[23] Walsh took it a step further.

Walsh forwarded the paper to Sosnowsky who then forwarded it to the LSU Police Department and the LSU Office of Student Advocacy and Accountability.[24] The LSU Police Department allegedly found that the paper presented no actionable security issues, and the Office of Student Advocacy and Accountability allegedly found no violation of LSU policies and refused to issue a "no contact directive."[25] Babinski alleges that the Program faculty took his discipline into their own hands.

---

[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.* at 8.
[22] *Id.*
[23] *Id.*
[24] *Id.* at 8.
[25] *Id.*

Walsh allegedly "caused Babinski to be placed on academic probation," presumably by failing him for the course, and Sosnowsky revoked his graduate assistantship.[26] As a result, Babinski lost his graduate assistantship stipend, his tuition waiver, and his non-resident fee waiver.[27] Babinski alleges that Sosnowsky also prevented Babinski from using the Program's facilities for a project.[28] Babinski alleges that Defendants made numerous false claims about him to the Office of Student Advocacy and Accountability and withheld mitigating information.[29] Babinski allegedly sought to make amends over the summer.

According to Babinski, his entreaties to Defendants over the summer were met with silence.[30] Defendants allegedly "collectively" decided that they would refuse to teach, and administer exams to, Babinski.[31] Since Defendants make up three-fourths of the Program's faculty, Babinski would have had extreme difficulty fulfilling the prerequisites to obtain his Ph.D.[32] Todd Queen, the then-dean of the LSU College of Music and Dramatic Arts, advised Babinski that given the Defendants' refusals to teach him, Babinski could not continue in the Program.[33] Queen also allegedly misled Babinski as to various university procedures that Babinski could have utilized which may have allowed him to maintain enrollment.[34]

---

[26] *Id.* at 9.
[27] *Id.*
[28] *Id.*
[29] *Id.* at 9–10.
[30] *Id.* at 10.
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.*

Babinski continued in the Program through the fall 2019 semester.[35] He took one course within the Program and three additional courses for his minor concentration.[36] He allegedly completed the courses without incident.[37] Meanwhile, Babinski attempted to resolve the situation with Defendants, but they refused to reconsider their positions.[38] At the end of the fall 2019 semester, Babinski had only three courses remaining in the Program before achieving the "milestone" of completing his coursework which would have led him to "certain professional benefits and opportunities."[39] Babinski transferred to the department of philosophy and sued Defendants.[40]

Babinski brings six constitutional claims using 42 U.S.C. § 1983 as the procedural vehicle. First, Babinski contends that his speech in and outside of class and in his paper constitutes protected speech.[41] He argues that Defendants' "decision to refuse to teach Babinski or administer general exams, and Dean Queen's refusal to permit Babinski to continue in the Program, constitute a *de facto* expulsion from the Program resulting from Babinski's protected speech."[42] Second, and similarly, Babinski argues that Defendants' actions after he submitted his paper violated his right to be free from retaliation for his protected speech.[43] Third, Babinski asserts that he was denied procedural due process prior to his expulsion in violation of the Fourteenth Amendment.[44] Fourth, he asserts an analogous substantive due process claim.[45] Fifth, Babinski asserts a class of one equal

---

[35] *Id.*
[36] *Id.* at 10–11.
[37] *Id.* at 10–11.
[38] *Id.* at 11.
[39] *Id.*
[40] *Id.*
[41] *Id.* at 12.
[42] *Id.*
[43] *Id.* at 13.
[44] *Id.* at 14.
[45] *Id.* at 15–16.

protection claim, arguing that the Defendants' actions toward Babinski differed considerably from their treatment of other, similarly situated students without sufficient justification.[46] Sixth, Babinski alleges that Defendants conspired to violate his civil rights.[47]

Babinski seeks damages as well as injunctive relief. As to the requested injunctive relief, Babinski asks the Court to issue a permanent injunction mandating that Sosnowsky reinstate Babinski in the Program and remove all impediments to his completion thereof.[48] He also asks the Court to enjoin Defendants from disseminating further information about this matter, including his paper, and from further disparaging Babinski to other persons.[49]

## II.    LAW AND ANALYSIS

The Court will proceed in three steps. First, the Court will determine whether the Eleventh Amendment bars Babinski's claims. Then the Court will consider the substance of Babinski's claims. Finally, the Court will consider Defendants' assertion of qualified immunity.

### A.  Sovereign Immunity

Defendants assert that Babinski's claims are barred by the Eleventh Amendment which "bars suits in federal court by citizens of a state against their own state or a state agency or department."[50] Plaintiff counters that *Ex parte Young* applies to the claims against Sosnowsky in her official capacity.[51]

Under the Eleventh Amendment, federal courts lack jurisdiction over a state official sued in her official capacity unless the state has waived its sovereign immunity or

---

[46] *Id.* at 16.
[47] *Id.* at 17.
[48] *Id.* at 18.
[49] *Id.*
[50] Rec. Doc. No. 18-1, p. 4 (quoting *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 185 (5th Cir. 1986).
[51] Rec. Doc. No. 22, p. 3–4.

Congress has clearly abrogated it.[52] Section 1983 does not abrogate state sovereign immunity.[53] However, under *Ex parte Young*, suits by private citizens against state officers in their official capacities are not categorically barred.[54] "There are three basic elements of an *Ex parte Young* lawsuit. The suit must: (1) be brought against state officers who are acting in their official capacities; (2) seek prospective relief to redress ongoing conduct; and (3) allege a violation of federal, not state, law."[55]

As to Babinski's requested relief of reinstatement, the first and third requirements are clearly met. Sosnowsky is alleged to be a state actor, and she is sued in her official capacity. All of Plaintiff's causes of action are based on violations of federal law. Resolution of the second requirement warrants further analysis.

As to prospective relief:

> As long as the claim seeks prospective relief for ongoing harm, the fact that a current violation can be traced to a past action does not bar relief under *Ex parte Young*. Plaintiffs must allege that the defendant is violating federal law, not simply that the defendant has done so at some point in the past. Once they meet that requirement, however, the complaint's straightforward, present-tense allegations are sufficient to demonstrate the ongoing nature of the alleged un[lawful] conduct.[56]

Babinski suffers from the Defendants' ongoing conduct—the barriers they have erected to his completion of the Program. As such, despite the fact that his allegedly unconstitutional *de facto* expulsion occurred in the past, under *Ex parte Young*, he can seek redress for the continued conduct which allegedly bars him from the Program.

---

[52] *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 393–94 (5th Cir. 2015).
[53] *Id*. at 394.
[54] *Id*.
[55] *Williams On Behalf of J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020).
[56] *Id*. at 378. (cleaned up).

This result is consistent with the Fifth Circuit's *Ex parte Young* jurisprudence in the employment context. In *Nelson v. Univ. of Tex. at Dallas*, the Fifth Circuit held that "a request for reinstatement is sufficient to bring a case within the *Ex parte Young* exception to Eleventh Amendment immunity, as it is a claim for prospective relief designed to end a continuing violation of federal law."[57] Although the *Nelson* court addressed this issue in the employment context, the court's reasoning applies when a plaintiff seeks reinstatement to an educational program. Therefore, Babinski's requested relief of reinstatement into the Program and removal of "all barriers" to his continuation in the Program is cognizable under *Ex parte Young*.

Defendants also argue that, although they are each named in their individual capacities, Babinski has sued them for actions taken in their official capacities. Therefore, Defendants assert, they are entitled to sovereign immunity as state actors for those actions. Relatedly, Defendants contend that they are not "persons" within the meaning of § 1983. Babinski counters that the Supreme Court has dismissed both arguments.

In *Scheuer v. Rhodes*,[58] the Supreme Court explained that, "[w]hile it is clear that the doctrine of *Ex parte Young* is of no aid to a plaintiff seeking damages from the public treasury, damages against individual defendants are a permissible remedy in some circumstances notwithstanding the fact that they hold public office."[59] The Court elaborated, quoting *Ex parte Young*:

> *Ex parte Young* teaches that when a state officer acts under a state law in a manner violative of the Federal Constitution, he *comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct.* The State has no power to impart

---

[57] 535 F.3d 318, 324 (5th Cir. 2008).
[58] 416 U.S. 232 (1974).
[59] *Id.* at 237. (cleaned up).

to him any immunity from responsibility to the supreme authority of the United States.[60]

Babinski alleges that Defendants violated his federal constitutional rights. Thus, Defendants are "stripped of [their] official or representative character" and subjected to individual liability.

As to Defendants' argument that they are not "persons" within the meaning of § 1983, the Supreme Court held in *Hafer v. Melo*[61] that "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts."[62] Defendants' argument is ill-conceived. Accordingly, Defendants' assertion of sovereign immunity in their individual capacities fails.

Babinski prays that the Court enjoin Defendants from further disseminating information about this matter, including Babinski's paper, and from disparaging Babinski. Defendants point out that Babinski does not allege that Fletcher or Sikes disseminated information about Babinski or his paper or that they disparaged him. Thus, the Court finds that enjoining them to refrain from doing something that they are not alleged to have done would be inappropriate as there is no concrete issue before the Court. As to Walsh, because she is sued only in her individual capacity, this could be cognizable relief if Babinski is able to show that Walsh's complained-of actions violate some right, constitutional or otherwise, of Babinski. The same analysis applies to Sosnowsky in her individual capacity, but the result may differ as to the suit against her in her official

---

[60] *Id.* (emphasis added) (internal citations omitted).
[61] 502 U.S. 21 (1991).
[62] *Id.* at 30.

capacity, depending on the application of *Ex parte Young*. The Court will grant Babinski leave to amend the *Complaint*, so issues related to potential relief need not be resolved at this very early stage in this litigation.

In sum, the Eleventh Amendment does not bar Babinski from seeking injunctive relief as to Sosnowsky and money damages from each of the Defendants in their individual capacities. Defendants' *Motion* is denied on this point.

### B.  Rule 12(b)(6) Motion to Dismiss

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[63] The Court may consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"[64] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[65]

In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[66] A complaint is also insufficient if it merely "tenders 'naked

---

[63] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

[64] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equitieis, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)).

[65] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

[66] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and brackets omitted) [hereinafter *Twombly*].

assertion[s]' devoid of 'further factual enhancement.'"[67] However, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged."[68] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[69] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[70] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[71]

### C.  Section 1983 Generally

The Civil Rights Act of 1964, 42 U.S.C. § 1983, creates a private right of action for redressing the violation of federal law by those acting under color of state law.[72] It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....[73]

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"[74]

---

[67] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted) [hereinafter *Iqbal*].

[68] *Id.*

[69] *Id.*

[70] *Taha v. William Marsh Rice Univ.*, 2012 WL 1576099, at *2 (S.D. Tex. 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

[71] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

[72] *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984); *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 19 (1981).

[73] 42 U.S.C. § 1983 (1996).

[74] *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, (1979)); *accord Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Jackson v. City of Atlanta, Tex.*, 73 F.3d 60, 63 (5th Cir. 1996), *cert. denied*, 519 U.S. 818 (1996); *Young v. City of Killeen*, *Tex.*, 775 F.2d 1349, 1352 (5th Cir. 1985).

To prevail on a § 1983 claim, a plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.[75] A § 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.[76]

### D. First Amendment Claims[77]

Babinski asserts that Defendants violated his First Amendment rights when they *de facto* expelled him from the Program because of his paper.[78] He asserts that the paper was protected speech under applicable precedent. But the parties disagree as to what constitutional standard applies to Babinski's paper. The Court is placed in the difficult and unenviable position of analyzing Babinski's First Amendment rights as to his paper while the paper itself is not before the Court.

Babinski urges the Court to analyze his paper under *Tinker v. Des Moines Independent Community School District*.[79] The Supreme Court in *Tinker* stated that students in public schools do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate."[80] They cannot be punished for expressing their personal views on school premises whether "in the cafeteria, or on the playing field, or on

---

[75] *See Blessing v. Freestone,* 520 U.S. 329, 340 (1997); *Daniels v. Williams,* 474 U.S. 327, 330 (1986); *Augustine v. Doe*, 740 F.2d 322, 324–25 (5th Cir. 1984).

[76] *See Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995); *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990), *cert. denied*, 498 U.S. 908 (1990); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir.1986); *Angel v. City of Fairfield*, 793 F.2d 737, 739 (5th Cir. 1986).

[77] Neither party briefs whether Babinski's paper implicated matters of public concern, which would entitle it to greater constitutional protections than if the paper merely implicated matters of private concern. *Snyder v. Phelps*, 562 U.S. 443, 453 (2011). Additionally, Babinski's paper is not in the record, so the Court cannot independently make that assessment. Because neither party briefs the issue and the Court cannot make the assessment, the Court will assume for the purposes of this *Ruling* that the content of Babinski's paper can be considered a matter of public concern. However, the Court will require Babinski's paper to analyze this issue at future stages of this litigation.

[78] Rec. Doc. No. 1, p. 12.

[79] 393 U.S. 503 (1969).

[80] *Id*. at 506.

the campus during the authorized hours,"[81] unless the speech would "materially and substantially interfere" with schoolwork or discipline or "impinge upon the rights of other students."[82] According to Babinski, his paper did not materially or substantially interfere with schoolwork or discipline or impinge upon the rights of other students, and therefore, Defendants' punishment of Babinski because of his paper was unconstitutional.

Defendants urge the Court to analyze Babinski's paper under *Hazelwood School District v. Kuhlmeier*.[83] In *Hazelwood*, the Supreme Court held that:

> Educators are entitled to exercise greater control over [curricular speech] to assure that participants learn whatever lessons the activity is designed to teach, that readers or listeners are not exposed to material that may be inappropriate for their level of maturity, and that the views of the individual speaker are not erroneously attributed to the school.[84]

If student speech falls within *Hazelwood*, "[e]ducators enjoy far greater latitude to regulate this [] category of expression and do not offend the First Amendment 'so long as their actions are reasonably related to legitimate pedagogical concerns.'"[85]

In *Morgan v. Swanson*, the *en banc* Fifth Circuit recognized that the "critical inquiry in deciding whether speech is 'school-sponsored' under *Hazelwood* is whether it could reasonably be understood to bear the school's imprimatur, which is synonymous with 'sanction,' or 'approval.'"[86] The court continued:

> Relevant considerations include[:] (1) where and when the speech occurred; (2) to whom the speech was directed and whether recipients were a 'captive audience'; (3) whether the speech occurred during an event or activity organized by the school, conducted pursuant to official guidelines, or supervised by school officials; and (4) whether the activities where the

---

[81] *Id*. at 512–13.
[82] *Id.* at 509 (internal citations omitted).
[83] 484 U.S. 260 (1988).
[84] *Id.* at 271.
[85] *Morgan v. Swanson*, 659 F.3d 359, 376 (5th Cir. 2011), cert denied, 567 U.S. 905 (2012) (quoting *Hazel Wood School Dist. v. Kulmeier*, 484 U.S. 260, 273 (1988)).
[86] *Id.*

speech occurred were designed to impart some knowledge or skills to the students.[87]

The Fifth Circuit noted that while *Tinker* established the default rule, "with every subsequent student-speech decision, the Supreme Court has 'expanded the kinds of speech schools can regulate…'". "The rights announced in *Tinker* do not extend to several broad categories of student speech: 'lewd, indecent, or offensive' speech; school-sponsored speech; and speech 'that a reasonable observer would interpret as advocating illegal drug use.'"[88]

Babinski attempts to distinguish *Hazelwood* on its facts. In *Hazelwood*, the principal of a high school deleted two pages of articles from Hazelwood East's newspaper, Spectrum.[89] Spectrum was written and edited by the Journalism II class and subsidized by the Board of Education.[90] The principal excised two pages of the newspaper to prevent the publication of articles on Hazelwood East students' experiences with pregnancy and the impact of divorce on students at the school.[91]

The Supreme Court began its analysis by restating the *Tinker* standard.[92] Then, citing *Bethel School Dist. No. 403 v. Fraser*,[93] which considered a student's lewd speech at a school assembly, the Court noted that it has recognized that "the determination of what manner of speech in the classroom or in school assembly is inappropriate properly rests with the school board, rather than with the federal courts."[94]

---

[87] *Id.* (internal citations omitted).
[88] *Id.* at 374. (internal citations omitted).
[89] *Hazelwood School Dist.*, 484 U.S. at 262.
[90] *Id.*
[91] *Id.* at 263.
[92] *Id.* at 266.
[93] 478 U.S. 675 (1986).
[94] *Hazelwood School Dist.*, 484 U.S. at 267. (internal citations omitted).

The Court continued, "[t]he question whether the First Amendment requires a school to *tolerate* particular student speech—the question that we addressed in *Tinker*—is different from the question whether the First Amendment requires a school *affirmatively to promote* particular student speech."[95] *Hazelwood* presented the latter question which "concerns educators' authority over school-sponsored publications, theatrical productions, and other expressive activities that students, parents, and members of the public might reasonably perceive to bear the imprimatur of the school."[96] In contrast, *Tinker* presented the former question which "addresses educators' ability to silence a student's personal expression that happens to occur on the school premises."[97]

In holding that educators may exercise greater control over school-sponsored speech, the Court cited pedagogical concerns—the student-speaker must learn whatever the activity is designed to teach—and two different content concerns.[98] First, the school must be able to protect listeners and readers from content that may be "inappropriate for their level of maturity…".[99] And second, the school must be able to "disassociate itself'" from speech so that "the views of the individual speaker are not erroneously attributed to the school."[100] Applying these rationales, the Court concluded that a school must be able to refuse to disseminate "student speech…under its auspices," in order to achieve these goals.[101] Accordingly, the Court "conclude[d] that the standard articulated in *Tinker* for determining when a school may punish student expression need not also be the standard

---

[95] *Id.* at 270–71 (emphasis added).
[96] *Id.* at 271.
[97] *Id.*
[98] *Id.*
[99] *Id.*
[100] *Id.*
[101] *Id.* at 271–72.

for determining when a school may refuse to lend its name and resources to the dissemination of student expression."[102]

Defendants ask Court to follow the Second Circuit's application of *Hazelwood* as exemplified by *Collins v. Putt*.[103] The plaintiff, Collins, enrolled in an online class titled "Communications 101" at Charter Oak State College.[104] Putt, the instructor, asked the class to watch a video that depicted a young man conversing with an elderly person and respond to questions about the video.[105] The responses were recorded on an online message board available only to students enrolled in the class, Putt, and college administrators.[106] Collins' post criticized the video itself, rather than responding to the prompt.[107] Putt removed Collins' post, and Collins sued, claiming that Putt's deletion of his post violated the First Amendment.[108]

The Second Circuit stated:

> Collins's blog post bears the hallmarks of school sponsorship. It was made specifically in response to a class assignment, under the supervision of a college faculty member, and on a message board that was provided by the college offering the class. The message board in turn was designed as a pedagogical tool to convey information to class participants and to receive communications from them, particularly, their completed class assignments. The message board bore the college's initials and was accessible only to the class's students, instructor, and the college's administrators…. Under these circumstances, the District Court did not err

---

[102] *Id*. at 272–73. In a footnote, the Court noted, but did not decide, that an educator's censoring of a school-sponsored expressive activities at the college or university level may be entitled to a lesser degree of deference from the courts. *Id*. at n. 7. Subsequent courts have likewise indicated that some of *Hazelwood*'s concerns, such as protecting immature audiences from mature materials, tend to diminish at the university or college level. *Hosty v. Carter*, 412 F.3d 731, 734 (7th Cir. 2005). Indeed, in *Healy v. James*, the Court wrote, "[T]he college classroom with its surrounding environs is peculiarly the marketplace of ideas…" 408 U.S. 169, 180 (1972).
[103] 979 F.3d 128 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 1465, 209 L. Ed. 2d 181 (2021).
[104] *Id*. at 131.
[105] *Id*.
[106] *Id*.
[107] *Id*.
[108] *Id*.

in determining that the *Hazelwood* standard rather than the *Tinker* standard applies.[109]

As to the application of the *Hazelwood* standard, the Second Circuit stated that:

> Putt's removal of Collins's blog post is thus most reasonably understood to ensure that the message board was used for its school-sponsored, pedagogical purpose, i.e., for students to post completed class assignments and for online discussion of those postings to further the communications lessons the assignment was intended to impart, without diverting attention to the non-responsive subject of the quality of classroom materials.[110]

Babinski urges the Court to decline to follow *Collins*, arguing that *Collins* reflects an overly broad interpretation of *Hazelwood*.

Defendants and the *Collins* court are correct that *Hazelwood* has significantly expanded from its genesis as a student newspaper case. Indeed, a majority of the Fifth Circuit, sitting *en banc* in *Morgan v. Swanson* and considering whether a defendant-elementary school principal was entitled to qualified immunity, recognized that "a number of our sister circuits…have treated *Hazelwood* as creating a broad category of speech restrictions entitled to deference from the federal courts."[111] However, a separate majority in *Morgan* clearly indicated that the Fifth Circuit ascribed to a narrow view of *Hazelwood*.

Judge Elrod, writing for the majority as to the part relevant to this case, began by noting that "the *Hazelwood* exception should be construed narrowly. It applies only where the speech is school-sponsored, a determination that turns on whether the views of the individual speaker might be erroneously attributed to the school."[112] Quoting Justice Alito's concurrence in *Morse v. Frederick*[113] Judge Elrod wrote, "*Hazelwood* 'allows a

---

[109] *Id.* at 133–34.
[110] *Id.* at 134.
[111] *Morgan v. Swanson*, 659 F.3d 359, 377 (5th Cir. 2011).
[112] *Id.* at 408–09 (cleaned up).
[113] 551 U.S. 393, 423 (Alito, J., concurring).

school to regulate what is in essence the school's own speech, that is, articles that appear in a publication that is an official school organ.'"[114] Further, "[t]he proposition that schools do not endorse everything that they fail to censor is not complicated.'"[115]

Application of the Fifth Circuit's narrow interpretation of *Hazelwood* yields the conclusion that *Hazelwood* does not apply in the instant case. The Court must consider whether Babinski's paper was curricular, and if so, whether students, parents, and members of the public might reasonably perceive it to bear the imprimatur of the school.

Babinski's paper was curricular. Professor Walsh assigned the paper as the final project in THTR 7923, and Babinski wrote the paper to fulfill that assignment.

However, the court finds that students, parents, and members of the public could not reasonably perceive Babinski's paper to bear the imprimatur of the school. First, Babinski alleges that he requested in the paper that Walsh "share the paper with Professors Fletcher and Sikes, but no one else…".[116] The intended restricted circulation of the paper makes it less likely that anyone would read the paper and therefore would have the opportunity to perceive that the paper bore the school's imprimatur. Additionally, the alleged lack of circulation sharply distinguishes the instant case from the student newspaper at issue in *Hazelwood* and would assuage the *Hazelwood* Court's concern with the dissemination of the challenged material.

Second, there is little risk that Babinski's views could be erroneously attributed to the school. Reasonable people would not assume that a student's submission for an assignment constitutes the school itself "speaking." Were that the case, every student's

---

[114] *Morgan*, 659 F.3d at 409.
[115] *Id.* (quoting *Bd. of Educ. v. Mergens*, 496 U.S. 226, 250 (1990)).
[116] Rec. Doc. No. 1, p. 8.

submission, from the second grader's spelling test to the post-graduate's final paper, would be considered the speech of the school. Third, considering Justice Alito's concurrence, Babinski's paper was not published in an official school organ—it wasn't published at all. Simply put, based on the facts alleged in the *Complaint*, it is unlikely that any other student, parent, teacher, or member of the public would see Babinski's paper and incredulous that one of those hypothetical people would believe that Babinski's paper was the school's speech. As such, the Court applies *Tinker*.

Based on the facts alleged in the *Complaint*, Babinski's paper is entitled to First Amendment protection under *Tinker*. "[S]tudent's speech, which neither interrupt[s] school activities nor intrude[s] in the school affairs or the lives of others, [is] protected by the First Amendment. Only where a student's speech actually causes or reasonably might be projected to cause a substantial disruption of or material interference with school activities may a school impose discipline for student speech."[117] Babinski's paper, pseudo-confidential as it was, did not create a substantial disruption in school activities. Moreover, based on the facts alleged in the *Complaint*, Defendants could not have reasonably projected a substantial disruption or material interference with school activities because Babinski intended that he and Defendants meet to address his concerns privately, rather than address them in the class environment around his peers. As such, on the face of the *Complaint*, Babinski's paper is entitled to First Amendment protection under *Tinker*.

Alternatively, assuming Babinski's paper was curricular speech and *Hazelwood* applies, the Court considers the dual nature of Babinski's paper. First, it was his

---

[117] *Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 265 (5th Cir. 2019) (cleaned up).

completion of a course assignment. Second, it was allegedly an expression of his opinions as to the Program in general and the faculty who taught it. As to the first purpose of his paper, the educator's authority to create, assign, and grade assignments is unquestioned, and courts do not engage in *post hoc* assessments of educator's grading decisions.[118] As has been suggested,[119] an educator's grading decision of a student's paper need not implicate the First Amendment. However, assuming an educator's grading decision does require application of *Hazelwood*, the issuance of a failing grade for a paper that does not conform to the assignment furthers the pedagogical purpose of ensuring that students learn from the assignment.

But Babinski alleges that the content of his paper led to his *de facto* expulsion from the Program.[120] Accepting Defendants' prerogative to grade Babinski's assignments as they deemed appropriate narrows the focus to their actions after the assignment was graded. The question becomes: were Defendants' alleged actions in *de facto* expelling Babinski reasonably related to a legitimate pedagogical purpose?

Babinski has plausibly alleged that the *de facto* expulsion was not reasonably related to a legitimate pedagogical purpose. Defendants' pedagogical purpose must have concerns of potential future disruptions since Babinski's participation in THTR 7923 had come to an end. Defendants' referring Babinski's paper to the LSU Police Department and LSU Office of Student Advocacy and Accountability fell within the pedagogical purpose of ensuring a safe classroom but given that those organizations found "no actionable security issues" and no violations of LSU policies, Defendants' alleged *de facto*

---

[118] *Board of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78 (1978); *Settle v. Dickson Cty. Sch. Bd.*, 53 F.3d 152, 155 (6th Cir. 1995).
[119] *Settle v. Dickson Cty. Sch. Bd.*, 53 F.3d 152, 156 (6th Cir. 1995) (Batchelder, J., concurring).
[120] Rec. Doc. No. 1, p. 12.

expulsion cannot be said to "reasonably relate" to that goal. Further, Babinski alleges that after Walsh, Fletcher, and Sikes refused to teach him in the fall 2019 semester, he completed four more courses "without causing disruption or incident."[121] This allegation, accepted as true, further diminishes the reasonable relation between Babinski's *de facto* expulsion and the concern for classroom safety. As such, assuming *Hazelwood* applies and the veracity of the facts alleged in the *Complaint*, Defendants' *de facto* expulsion of Babinski was not reasonably related to a valid pedagogical interest. Therefore, under *Hazelwood*, Babinski has plausibly alleged that Defendants violated his rights under the First Amendment.

Based on the foregoing, Babinski has also stated a claim for First Amendment retaliation. To state a claim of First Amendment retaliation, a plaintiff must show:

> (1) he was engaged in constitutionally protected activity, (2) the defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct.[122]

As explained above, Babinski has alleged that he was engaged in a constitutionally protected activity under either *Tinker* or *Hazelwood*. Expulsion from a Ph. D. program is injury that would "chill a person of ordinary firmness from continuing to engage" in criticism of faculty. Finally, Babinski has alleged that Defendants *de facto* expelled him because of the contents of his paper. Defendants' *Motion* is denied as to Babinski's First Amendment claims.

---

[121] *Id.* at 11.
[122] *Mills v. City of Bogalusa*, 112 F. Supp. 3d 512, 516 (E.D. La. 2015).

### E. Due Process Claims

Babinski argues that Defendants *de facto* expelled him from the Program without due process. Defendants contend that Babinski does not have a protected property interest in post-graduate education. Babinski rebuts that his admission into the Program created an implied contract between himself and Louisiana State University, such that he had a property interest in his completion of the Program. In other words, Babinski urges that as long as he abided by the Program's regulations and maintained satisfactory academic performance, Defendants were required to allow him to work towards a Ph.D.

"To be entitled to the procedural protections of the Fourteenth Amendment, [Babinski] must demonstrate he was deprived of either a liberty or a property interest."[123] "[P]roperty interests are created, and their dimensions defined, by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."[124]

Although the Fifth Circuit has identified a liberty interest in higher education,[125] the Fifth Circuit has held that there is "no state-created right to graduate-level education" in Louisiana.[126] However, it does not appear that the Fifth Circuit has had occasion to consider Babinski's contract argument. Louisiana courts have implicitly recognized a

---

[123] *Smith v. Davis*, 507 F. App'x 359, 362 (5th Cir. 2013).
[124] *Id.*
[125] *Plummer v. Univ. of Houston*, 860 F.3d 767, 773 (5th Cir. 2017), *as revised* (June 26, 2017) (quoting *Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 158 (5th Cir. 1961)). *Dixon* did not discuss the student's interest in terms of property or liberty interests as it was decided prior to the Supreme Court's decision in *Goss* and its progeny. Importantly, *Plummer* recognized a state created liberty interest found in the *Texas* Constitution.
[126] *Barnes v. Symeonides*, 44 F.3d 1005 (5th Cir. 1995).

contractual relationship between a student and an educational institution,[127] and several federal courts of appeal have applied the implied contract theory urged here in comparable contexts.[128] But even though the "catalogues, bulletins, circulars, and regulations of the institution made available to the matriculant may become part of the contract…," the student must establish an "entitlement to a tangible continuing benefit."[129] "In order to establish this type of entitlement, the student must point to an identifiable contractual promise that the university failed to honor."[130] Babinski has failed to meet this requirement under Fed. R. Civ. P. 12(b)(6).

Babinski has not alleged a contractual promise that the Program failed to honor. He does not allege *specific* disciplinary procedures that were not followed. Nor does he allege that Louisiana State University contractually agreed to allow him to continue towards graduation provided he maintained satisfactory progress and follow the Program's regulations. While Babinski touches upon these issues in his *Opposition*, "it is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss."[131] This axiom also requires dismissal of Babinski's argument that his protected liberty interests were violated because Babinski has not specifically alleged that his "good name, reputation, honor, or integrity" are at stake.[132] Therefore, Defendants' *Motion* is granted as to Babinski's procedural due process claim, subject to leave to amend.

---

[127] *Babcock v. New Orleans Baptist Theological Seminary*, 554 So. 2d 90, 95 (La. Ct. App. 1989), *writ denied*, 558 So. 2d 607 (La. 1990); *Fussell v. Louisiana Bus. Coll. of Monroe, Inc.*, 519 So. 2d 384 (La. Ct. App. 1988); *McKee v. Southfield Sch.*, 613 So. 2d 659, 661 (La. Ct. App. 1993); *Simmons v. Sowela Tech. Inst.*, 470 So. 2d 913 (La. Ct. App.), *writ denied*, 475 So. 2d 1109 (La. 1985).
[128] *See e.g. Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 601 (7th Cir. 2009); *Ikpeazu v. Univ. of Nebraska*, 775 F.2d 250, 253 (8th Cir. 1985).
[129] *Bissessur*, 581 F.3d at 602 (7th Cir. 2009).
[130] *Id.* (cleaned up).
[131] *Carroll v. SGS N. Am. Inc.*, 2018 WL 4001457, at *2 (M.D. La. Aug. 21, 2018).
[132] *Goss*, 419 U.S. at 574 (citing *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971).

Babinski's substantive due process claim also fails. "To state a substantive due process claim, a plaintiff must show that the government's deprivation of a property interest was arbitrary or not reasonably related to a legitimate governmental interest."[133] As discussed above, Babinski has failed to demonstrate a protected property interest. Babinski will have leave to amend. Defendants' *Motion* is granted as to Babinski's substantive due process claim, subject to leave to amend.

### F. Class of One Equal Protection Claim

Babinski asserts a class of one equal protection claim. The Fifth Circuit recently explained:

> Class-of-one equal-protection claims are an application of the principle that the seemingly arbitrary classification of a group or individual by a governmental unit requires a rational basis. To state a class of one claim under the Equal Protection Clause, the plaintiff must allege that: (1) the defendant intentionally treated plaintiff differently from others similarly situated, and (2) the defendant lacked a rational basis for the difference in treatment.[134]

Babinski alleges that "Dean Queen also misled Babinski as to various university procedures in furtherance of the determination that Babinski could not continue in the Program, even though other students were correctly advised of these procedures and allowed to use them when issues with faculty arose."[135] Further, Babinski alleges that "Professors Walsh's, Sikes', Fletcher's, and Sosnowsky's and Dean Queen's actions against Babinski differ considerably from their treatment of other, similarly situated students without sufficient justification, making Babinski a 'class of one' who has suffered discrimination."[136] Babinski's class of one claim fails.

---

[133] *Williams v. Texas Tech. Univ. Health Scis. Ctr.*, 6 F.3d 290, 294 (5th Cir. 1993).
[134] *Martinez v. New Deal Indep. Sch. Dist.*, 802 F. App'x 98, 100 (5th Cir. 2020) (internal citations omitted).
[135] Rec. Doc. No. 1, p. 10.
[136] *Id.* at 16.

As the Fifth Circuit explained in *Rountree v. Dyson*,[137] a plaintiff bringing a class of one equal protection claim who merely "alleges that other similarly situated individuals were treated differently, but [] points to no specific person or persons and provides no specifics as to there violations" has not stated a class of one claim under Fed. R. Civ. P. 12(b)(6).[138] The Fifth Circuit elaborated, "[a]n allegation that others were treated differently, without more, is merely a legal conclusion that we are not required to credit."[139] Babinski has failed to identify specific persons. He has merely stated that "others were treated differently," and therefore he has failed to state a class of one Equal Protection Claim. Babinski's class of one equal protection claim is dismissed, subject to leave to amend.

### G. Conspiracy to Violate Civil Rights Claim

Babinski alleges that Defendants "in various combinations and through correspondence and other overt acts, conspired to violate Babinski's civil rights, including but not limited to those rights described above."[140] Further:

> Shortly before Babinski would return for the fall 2019 semester, and after learning that they lacked the grounds to formally expel Babinski, Professors Walsh, Fletcher, and Sikes collectively decided that they would refuse to teach Babinski any more courses in the Program because of his paper and would refuse to administer his general examinations.[141]

These are the only two allegations in the *Complaint* that bear on Babinski's conspiracy claim.

---

[137] 892 F.3d 681 (5th Cir. 2018).
[138] *Id.* at 685.
[139] *Id.*
[140] Rec. Doc. No. 1, p. 17.
[141] *Id.* at 10.

Defendants argue that Babinski's allegations of conspiracy are conclusory and insufficient under Fed. R. Civ. P. 12(b)(6).[142] Babinski argues that the above allegations are sufficient.[143]

To state a claim for conspiracy to violate civil rights, a "plaintiff must not only allege facts that establish (1) the existence of a conspiracy involving state action, but also (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy."[144]

Babinski has failed to state a claim for conspiracy to violate civil rights. As to his First Amendment claims, he has sufficiently pled a violation of rights to satisfy the second prong, but the same cannot be said for the rest of his claims. Moreover, his allegations of conspiracy are conclusory and entitled to no deference. Defendants' alleged "collective decision" to refuse to teach Babinski is a legal conclusion. Similarly, Defendants' "correspondence and other overt acts" provide the Court no basis to find it plausible that Defendants agreed to do anything or how they did so. Therefore, Babinski's claim for conspiracy to violate civil rights is dismissed, with leave to amend.

## H. Qualified Immunity

Babinski has only properly pled violations of the First Amendment, so the Court need only consider qualified immunity in that context. Public officials are entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated an actual constitutional or federal statutory right that is clearly established under existing law, and (2) if so, the defendant's conduct was objectively unreasonable in light of clearly

---

[142] Rec. Doc. No. 18-1, p. 12–13.
[143] Rec. Doc. No. 22, p. 19–20.
[144] *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019) (internal citations omitted).

66694

established law at the time of that conduct.[145] To survive a motion to dismiss based on qualified immunity, the plaintiff must allege sufficient facts, which, taken as true, show that the defendant violated his constitutional rights which were clearly established at the time of the violation. If the court determines that there was a violation of a right secured by the Constitution, then it must determine whether the defendant could have reasonably thought his actions were consistent with the rights they are alleged to have violated.[146] The protections afforded by the qualified immunity defense turn on the "objective legal reasonableness" of the defendant's conduct examined by reference to clearly established law.[147]

Babinski attempts to shift the onus on Defendants to prove qualified immunity and supply facts that tend to disprove the substance of his claims. At this stage, that is inappropriate. Babinski must point to clearly established law that shows that Defendants could not have reasonably thought that their actions were consistent with the rights they are alleged to have violated.

Babinski's argument that *Tinker* and *Hazelwood* have been settled law for decades is unavailing. Babinski cannot simply point to the constitutional standard and state that, since Defendants allegedly violated his rights under those standards, it was clearly established at the time of his alleged *de facto* expulsion that Defendants were violating his rights. Rather, he must point to analogous cases that demonstrate that it was clearly established law that under facts analogous to those of this case, Defendants violated his rights under the First Amendment. Therefore, Babinski's First Amendment claims against

---

[145] *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011); *Hart v. Tex. Dep't of Criminal Justice*, 106 F. App'x 244, 248 (5th Cir. 2004).
[146] *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).
[147] *Id*. at 639.

Defendants in their individual capacities are dismissed without prejudice. Babinski's First Amendment claims against Sosnowsky in her official capacity are not subject to qualified immunity and thus survive dismissal.

## III.    CONCLUSION

Defendants' *Motion*[148] is granted in part and denied in part, without prejudice. Babinski will have 21 days from the date of this *Ruling* to amend the *Complaint* to cure the deficiencies set forth above. Babinski shall also file a Rule 7(a) *Response* to the qualified immunity defense asserted by the Defendants. Failure to comply with this deadline will result in a dismissal with prejudice as to all claims except the First Amendment claims.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on September 29, 2021.

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[148] Rec. Doc. No. 18.

66694