UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ANDREW BABINSKI                                    *
                                                   *
versus                                             *        No. 3:20-cv-00426-SDD-EWD
                                                   *
TODD QUEEN, in his personal and official           *
capacity as Dean of the College of Music and       *        JUDGE SHELLY D. DICK
Dramatic Arts of Louisiana State University,       *
KRISTIN SOSNOWSKY, in her personal and             *        MAGISTRATE ERIN WILDER-
official capacities as Chair of the School of Theatre *     DOOMES
of Louisiana State University,SHANNON WALSH,*
JOHN FLETCHER, and ALAN SIKES                      *

### **FIRST AMENDED COMPLAINT**

NOW INTO COURT, through undersigned counsel, comes Plaintiff, ANDREW

BABINSKI, who incorporates by reference all allegations and averments of his Original

Complaint, and who now respectfully avers as follows:

### PARTIES

#### 1.

Plaintiff, Andrew Babinski, ("Babinski") is a person of full age of majority and resident of

the Parish of East Baton Rouge, State of Louisiana. Babinski was a student in the Ph.D. program

at the Louisiana State University ("LSU") Department of Theatre, (the "Department"), until he

was prohibited from continuing in the program by defendants herein.

#### 2.

Made defendant herein is Kristin Sosnowsky, ("Professor Sosnowsky") in her personal and

official capacities, a person of full age of majority and, upon information and belief, a resident of

the Parish of East Baton Rouge, State of Louisiana. Professor Sosnowsky is a member of the

faculty in the Department, the Chair of the LSU School of Theatre, and the Executive Associate

Dean of the LSU College of Music and Dramatic Arts and is responsible for Babinski's damages, as alleged more fully herein.

**3.**

Made defendant herein is Shannon Walsh, ("Professor Walsh") in her personal and official capacities, a person of full age of majority and, upon information and belief, a resident of the Parish of East Baton Rouge, State of Louisiana. Professor Walsh is a member of the Ph.D. faculty in the Department and is responsible for Babinski's damages, as alleged more fully herein.

**4.**

Made defendant herein is John Fletcher, ("Professor Fletcher") in his personal and official capacities, a person of full age of majority and, upon information and belief, a resident of the Parish of East Baton Rouge, State of Louisiana. Professor Fletcher is a member of the Ph.D. faculty in the Department and is responsible for Babinski's damages, as alleged more fully herein.

**5.**

Made defendant herein is Alan Sikes, ("Professor Sikes") in his personal and official capacities, a person of full age of majority and, upon information and belief, a resident of the Parish of East Baton Rouge, State of Louisiana. Professor Sikes is a member of the Ph.D. faculty in the Department and is responsible for Babinski's damages, as alleged more fully herein.

**JURISDICTION**

**6.**

This Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. §1331 because the claims alleged herein arise under the constitution and laws of the United States.

**7.**

This Court has personal jurisdiction over all defendants as all are domiciled within the State of Louisiana or because the defendants' employment and discharge of duties within this state make them subject to the jurisdiction of this Court.

**VENUE**

**8.**

Venue is proper within this district pursuant to 28 U.S.C. §1391(b)(1) and (2) because at least one defendant resides within the territorial limits of this judicial district and because all of the events giving rise to the claims asserted herein occurred within this judicial district.

**FACTS**

**9.**

Babinski enrolled in the Department's Theatre Ph.D. program (the "Program") in the fall of 2017. Babinski wanted to earn a Ph.D. so he could teach lecture courses in a university setting, to develop his academic writing skills, and to learn more about theatre history, analysis, and theory.

**10.**

Babinski specifically avoided applying to schools with a primary focus on activist or social justice themes in their Ph.D. curriculum. Because the Department advertised that the Program's formal specialization did not include a social justice element, Babinski applied to the Program and was accepted.

**11.**

Babinski proceeded through the Program as a model student. Babinski's cumulative grade point average after three semesters was 3.942. Moreover, Professor Sosnowsky appointed

Babinski as a graduate assistant starting with Babinski's enrollment in the Program, and Babinski successfully taught three undergraduate level courses, often receiving student ratings higher than the Department's average. Babinski was respected enough that Professor Fletcher appointed Babinski as his teaching assistant in Babinski's second semester in the Program.

## 12.

But as Babinski proceeded through the Program, he found that the advertisements and inducements the Department made to persuade him to enroll in the Program were false. For example, one course Babinski wanted to take, THTR 7913, *Seminar in American Drama 18th Century to the Present*, was not offered at all even though the Department specifically advertised this course as fulfilling a requirement for graduation. Also, the Department advised Babinski that this class was no longer offered only after he asked about it during his fourth semester.

## 13.

Babinski likewise found some of the courses that were offered did not match what the Department had advertised to him and to the public, occasionally being wildly different from what the Department advertised. For example, THTR 7900, *Introduction to Graduate Studies*, is a required course and is advertised by the Department as "research and bibliographic skills for students of theatre history, dramatic literature, theory and criticism." However, the syllabus for the course, and the course itself, concerned "how to apply for grants/fellowships, the inner workings of running a theatre company, and assembling materials to apply for an academic position."

## 14.

Babinski also found that much of the Program's coursework was devoted to social justice and activism themes rather than a significant focus on academic writing and scholarship as

advertised. The Department led Babinski to believe that the Program's specialization was "Theatre History, Dramatic Literature, and Dramatic Theory and Criticism." In fact, after the Department had induced Babinski to enroll in the Program and after Babinski had become fully immersed in the Program, Professor Walsh advised Babinski that the Program's advertised specialization was incorrect.

**15.**

In the spring semester of 2019, Babinski enrolled in THTR 7923, "Gender, Sexuality, and Performance," taught by Professor Walsh. The Department advertised this course as an academic discussion about gender and sexuality in performance, but in practice it was a liberal indoctrination course where opposing opinions and critical discussion were often met with hostility from certain students and Professor Walsh, herself.

**16.**

Babinski attempted to participate in course discussions in good faith by sharing his sincerely held views in class, debating the authors' ethics in the assigned readings and sometimes questioning their conclusions. Babinski's classmates' responses grew increasingly hostile and abusive, and Professor Walsh condoned and actively participated in the mistreatment.

**17.**

Shortly before spring 2019 midterm exams, Babinski met with Professor Walsh to discuss his concerns about his treatment in the course and his final paper topic. Professor Walsh dismissed Babinski's concerns and escalated the pattern of mistreatment, even telling Babinski that he deserved the harm he'd experienced in class.

**18.**

Near the end of the course, Professor Walsh encouraged the class to mislead their future employers. For example, Professor Walsh taught the class that, if they wanted to teach controversial social issues, they should misname those courses in a way that leads their employers to incorrectly believe the course concerns traditional topics. Babinski then realized that the Department's representations and inducements made to him were similarly intended to mislead him and the public as to the true focus of the Program.

**19.**

Feeling he was not being heard by Professor Walsh, and fearing retaliation from the remainder of the Program faculty as well if he brought this dispute to them, Babinski decided to use the course's final paper to reach Professor Walsh. Babinski used "performative writing" to express how he felt discrimination and mistreatment when he expressed his views inside and outside of class.

**20.**

"Performative writing" is a style whereby the writer is trying to perform a concept or idea through language, manner, and form, in addition to its content. It is most often done by liberal, feminist, anti-racist scholars as a means of trying to use words to create a sensation of the very experience they are describing. As a performance makes you "feel something" in an effort to make you understand another person's life, this form of writing seeks to do the same--not through only describing it, but in the process of actually sensorially experiencing something.

**21.**

Babinski learned about performative writing from the teachings of Professor Walsh and others in the Department. Babinski is an experienced, enthusiastic creative writer and an accomplished professional actor who specializes in creating larger-than-life, energetic caricatures. Babinski wrote his performative paper with tremendous passion, creativity, and over-the-top performative style, and most theatre academics would quickly recognize Babinski's paper as performative writing. In fact, Babinski clearly and explicitly stated multiple times in his paper that his writing was performative and exaggerated. When Professors Walsh and Sosnowsky presented Babinski's paper to authorities, though, not only did they not explain performative writing to them, they did not even mention it, instead presenting the paper as completely sincere and unexaggerated.

**22.**

Babinski's performative paper included strong language, expletives, and harsh criticism of various faculty members and peers but contained no threats to anyone, including himself. The performative paper likewise did not include any indication that Babinski would disrupt the Program or the Department's academic activities in any way. The paper did request that Professor Walsh share the paper with Professors Fletcher and Sikes, but no one else, and requested that the three of them meet with Babinski to discuss his concerns about the Program expressed in the performative paper.

**23.**

Upon receiving Babinski's performative paper, Professor Walsh forwarded it to Professor Sosnowsky. Professor Sosnowsky then referred the paper to the LSU Police Department and to the LSU Office of Student Advocacy and Accountability for disciplinary action against Babinski.

**24.**

The LSU Police Department twice found that Babinski's performative paper presented no actionable security issues to anyone. The Office of Student Advocacy and Accountability found no violation of any LSU policies and even refused to issue a "no contact directive" against Babinski toward the faculty members and students mentioned in his paper.

**25.**

Because of his performative paper, Professor Walsh caused Babinski to be placed on academic probation. Because of his performative paper, Professor Sosnowsky refused to permit Babinski to remain a graduate assistant because Babinski fell into academic probation and even communicated to the Office of Student Advocacy and Accountability that she would still refuse to offer Babinski an assistantship if his grade appeal were successful and his academic probation were terminated. Because of Professors Walsh's and Sosnowsky's actions, Babinski was denied his graduate assistantship stipend, his tuition waiver, and his non-resident fee waiver. Professor Sosnowsky also prohibited Babinski from using the Department's facilities for a project, even though she had previously given Babinski permission.

**26.**

Professor Sosnowsky likewise refused to petition the graduate school for a graduate assistantship waiver for Babinski even though, upon information and belief, Professor Sosnowsky regularly made such petitions for students who fell into academic probation for the first time. Indeed, LSU's PS-21 provides that exceptions may be made upon petition to the Dean of the Graduate School, but Professor Sosnowsky refused to compile the necessary documents for such petition. Professor Sosnowsky admitted that Babinski was treated differently from every other

Program student who fell into academic probation for the first time because she arrived at her decision without allowing for a discussion with Babinski.

**27.**

PS-21 likewise states that "the offer of [graduate assistant] appointment, once accepted, becomes a formal contract between the student and appointing unit." Babinski's contract likewise stated:

> Your appointment will be for the 9-month academic period, may be renewed, and is contingent on your being a student in 'good academic and accountability standing' in the Graduate School, a term defined in the General Catalog. A student on probation (academic or disciplinary) is not in good standing.

However, because the defendants violated procedures in the grade appeal process (a process that could have returned Babinski to good standing), discussed *infra*, Babinski was therefore deprived of this specific contractual entitlement by the arbitrary and capricious acts of Professors Sosnowsky and Walsh.

**28.**

In her conversations with Professor Sosnowsky and with the various LSU administrators, Professor Walsh made several false statements about Babinski, including that he was mentally unstable, that he was abusive to other students, and that he'd threatened other students and faculty in his paper. Professor Walsh also described incidents concerning Babinski that never happened and denied other events that did, all in an attempt to disparage Babinski's character and integrity and to support her unreasonable and false claim that Babinski threatened a substantial disruption to the educational environment. These statements and actions directly harmed Babinski's reputation and good name, both protected liberty interests.

**29.**

Professors Walsh, Sosnowsky, and Fletcher likewise withheld certain mitigating information in their communications with administrators, the Dean of the college, other faculty members, and the Office of Student Advocacy and Accountability in an effort to harm Babinski or to diminish his reputation and to support their false claims that Babinski was unstable and incapable of continuing in the Program. Professors Sosnowsky and Walsh also shared Babinski's paper and educational records with others without permission including, on information and belief, sharing some of the contents of Babinski's paper with other students. These statements and actions directly harmed Babinski's reputation and good name, both protected liberty interests.

**30.**

Upon information and belief, Professors Walsh, Sosnowsky, and Fletcher continue to share Babinski's paper or disparaging information about him with others both within and without the Department without Babinski's permission in an effort to harm Babinski's reputation, integrity, ability to continue in the Ph.D. Program, and ability to transfer schools to complete his Ph.D. elsewhere. These actions also violate the Family Educational Rights and Privacy Act (20 U.S.C. § 1232g).

**31.**

Professor Walsh assigned Babinski a failing grade for THTR 7923, which caused Babinski's grade point average to drop below 3.0 and causing Babinski to fall into academic probation. Babinski attempted to petition for a grade appeal, but the process was mired in defects caused by, upon information and belief, Professors Walsh and Sosnowsky. For example, the LSU General Catalog under "regulations" requires that, as a first step in a grade appeal, "the student and the faculty member must have a discussion and attempt to arrive at a solution." Professor

Walsh refused to meet with or correspond with Babinski and the defendants did not provide a substitute, so this procedure was never followed. Similarly, the next step requires a meeting with the department chair, student, and professor within 14 days. No meeting occurred, as Professor Sosnowsky instead solicited a single e-mailed statement from Babinski and Professor Walsh, from which she e-mailed them her ruling.

**32.**

Babinski attempted over the summer to communicate with Professors Walsh, Fletcher, and Sikes, but they refused to respond. Shortly before Babinski would return for the fall 2019 semester, and after learning that they lacked the grounds to formally expel Babinski, Professors Walsh, Fletcher, and Sikes, upon information and belief, collectively decided that they would refuse to teach Babinski any more courses in the Program because of his paper and would refuse to administer his general examinations. Professors Walsh, Fletcher, and Sikes make up three-fourths of the Program's faculty.

**33.**

Upon information and belief, all defendants and several other parties met to determine Babinski's academic fate on or about ten days prior to the beginning of the fall 2019 semester. Babinski was not allowed to attend this meeting nor was he permitted the opportunity to be heard by the assembled officials, except for a statement that he had sent before becoming aware of the meeting that was only allowed to be summarized by one of the attendees. Upon information and belief, it was at this meeting that the defendants collectively decided they would refuse to teach Babinski and refuse to permit him to continue in the Program. The defendants and assembled parties conducted this meeting and decided on discipline wholly outside the regulations of the LSU Catalog on disciplinary and academic proceedings.

**34.**

A week before the beginning of the fall 2019 semester, Todd Queen, at the time Dean of the College of Music and Dramatic Arts, ("Dean Queen"), falsely advised Babinski that, because of Professors Walsh's, Fletcher's, and Sikes' refusal to teach him, there was no way for Babinski to continue in the Program. Professor Sosnowsky was present at this meeting and subscribed to these false statements. Dean Queen also misled Babinski as to various university procedures in furtherance of the determination that Babinski could not continue in the Program, even though other students were correctly advised of these procedures and allowed to use them when issues with faculty arose. Professor Sosnowsky and Dean Queen advised they had not looked into alternatives for Babinski to complete the program and told Babinski that they fully expected him to withdraw from the program after receiving this information.

**35.**

Specifically, Dean Queen and Professor Sosnowsky advised Babinski that he would not be able to assemble a dissertation committee because Professors Walsh, Fletcher, and Sikes refused to participate. This was in direct contradiction to the LSU General Catalog, which provides in pertinent part:

> At least one-half of the graduate faculty on doctoral committees must be full-time tenured or tenure-track faculty at LSU. A minimum of two of those faculty members must be from the student's major department and at least one of whom must be a full member of the LSU graduate faculty. The remaining members may be from the major department or may be from outside the department if pertinent to the student's area of concentration, with the proviso that at least one of the remaining members must be a full member of the graduate faculty.

Babinski could have very well assembled a dissertation committee not involving Professors Walsh, Fletcher, or Sikes. The Graduate School currently lists eleven other theatre professors who are

members of the LSU graduate faculty, with five being full members. But Dean Queen and Professor Sosnowsky specifically precluded Babinski from this otherwise permitted course of action.

**36.**

Additionally, upon information and belief, two months after Dean Queen and Professor Sosnowsky advised Babinski he could not assemble a dissertation committee, another Program student, S.C., asked Professor Fletcher if she could assemble a committee with a graduate, non-Program theatre professor (an option that was denied Babinski). Professor Fletcher advised S.C. that this was an acceptable practice.

**37.**

Additionally, upon information and belief, the LSU Ombudsperson advised Babinski, Professor Sosnowsky, and Dean Queen that she was specifically aware of a situation where a professor refused to teach a student even though the professor's course was required for graduation. LSU accommodated this student by allowing them to receive credit for the course through independent study. Babinski was specifically deprived of this option by Dean Queen and Professor Sosnowsky.

**38.**

Even though Dean Queen and Professor Sosnowsky falsely advised Babinski there was no way for him to proceed, Babinski continued in the Program for the full fall 2019 semester. Babinski took one course in the Program and three additional courses for his required minor concentration, completing all four courses without causing disruption or other incident. Throughout the semester, Babinski attempted to quell Professors Walsh's, Fletcher's, and Sikes' concerns and resolve their

refusal to teach him. He also attempted to meet again with Dean Queen and Professor Sosnowsky, but was denied this as well. The faculty refused to reconsider their positions even after Babinski demonstrated that he was not a disruption to the school environment and was stable and capable enough to complete a higher-than-average semester courseload.

**39.**

At the end of that fall 2019 semester, Babinski had only three courses remaining in the Program before achieving the "milestone" of completing his coursework, a benchmark that leads Ph.D. students to certain professional benefits and opportunities. Had the Defendants permitted Babinski to complete his coursework, he would have then sat for his general exams, successful completion of which would result in Babinski becoming a Ph.D. "candidate" and constitutes another "milestone" that entitles Ph.D. students to even greater benefits and opportunities. Professors Walsh, Fletcher, Sikes, and Sosnowsky and Dean Queen prevented Babinski from reaching these milestones and therefore deprived him of these professional benefits and opportunities. Facing continued pressure from Defendants, Babinski transferred to the department of philosophy, where he recently received a second master's degree.

**40.**

Finally, the defendants were aware that they could not prevent Babinski from continuing in the Program. On July 22, 2019, in an email from Professor Sosnowsky to Professors Walsh and Fletcher discussing the request for a no-contact order against Babinski, Professor Sosnowsky relayed information she had received from Tracy Blanchard of the Student Advocacy and Accountability Office:

> I also spoke with Tracy regarding Andy's continuation in the program. We are not able to prevent him from continuing in the program should he be able to pay his tuition.

Despite Babinski having paid his tuition, the defendants nevertheless prevented Babinski from continuing in the Program.

## COUNT 1
### VIOLATION OF FIRST AMENDMENT RIGHT TO FREEDOM OF SPEECH
### 42 U.S.C. § 1983

**41.**

Babinski incorporates by reference paragraphs 1 through 40.

**42.**

Babinski's expressed views, in and out of class and in his performative paper, constitute protected speech under the Free Speech Clause of the First Amendment to the United States Constitution.

**43.**

Professors Walsh's, Sikes', and Fletcher's decision to refuse to teach Babinski or administer general exams, and Professor Sosnowsky's refusal to permit Babinski to continue in the Program, constitute a *de facto* expulsion from the Program resulting from Babinski's protected speech.

**44.**

Professors Walsh, Sikes, and Fletcher, and Professor Sosnowsky are therefore liable to Babinski under 42 U.S.C. § 1983 for violating, under color of state law, Babinski's right to free speech when Babinski was *de facto* expelled from the Program because of his performative paper and his Program participation in and out of class.

## COUNT 2
### VIOLATION OF FIRST AMENDMENT RIGHT TO FREEDOM FROM RETALIATION
### 42 U.S.C. § 1983

**45.**

Babinski incorporates by reference paragraphs 1 through 44.

**46.**

Babinski's expressed views, in and out of class and in his performative paper, constitute protected speech under the Free Speech Clause of the First Amendment to the United States Constitution, and Babinski is entitled to freedom from retaliation for his protected speech.

**47.**

Professors Walsh's, Sikes', and Fletcher's decision to refuse to teach Babinski or administer general exams, Professor Sosnowsky's refusal to permit Babinski to continue in the Program, Professor Sosnowsky's refusal to allow Babinski to remain a graduate assistant, Professor Sosnowsky's revoking of permission for Babinski to use Department facilities and resources, Babinski's academic probation and impediments to Babinski's attempts to rectify his probation through the grade appeal process, and the defendants' continued disparagement of Babinski's character and good name to others all constitute retaliation against Babinski resulting from Babinski's protected speech.

**48.**

Professors Walsh, Sikes, Fletcher, and Sosnowsky are therefore liable to Babinski under 42 U.S.C. § 1983 for violating, under color of state law, Babinski's right to be free from retaliation for his protected speech when the acts described above were taken against Babinski because of his performative paper and his Program participation in and out of class.

**COUNT 3**
**VIOLATION OF FOURTEENTH AMENDMENT RIGHT TO PROCEDURAL DUE PROCESS**
**42 U.S.C. § 1983**

**49.**

Babinski incorporates by reference paragraphs 1 through 48.

**50.**

As a student at a public postsecondary institution, Babinski is entitled to procedural due process prior to being deprived of life, liberty, or property in accordance with the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

**51.**

The right to maintain enrollment and continue through an academic program toward graduation is a vested property right for purposes of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Likewise, Babinski had a specific contractual entitlement to continue in and renew his graduate assistantship. Babinski also has a protected liberty interest in his good name, reputation, and integrity, which has been infringed upon and tarnished by the defendants' actions in sharing Babinski's paper and *de facto* expelling him from the Program by refusing to teach him and refusing to make alternative arrangements for him.

**52.**

Professors Walsh's, Sikes', and Fletcher's decision to refuse to teach Babinski or administer general exams, and Professor Sosnowsky's refusal to permit Babinski to continue in the Program, amounted to a *de facto* expulsion, and were effected without sufficient notice to Babinski or an opportunity for Babinski to be heard to protect these interests. This has resulted in an infringement against these property rights and liberty interests by the defendants' actions.

**53.**

Professors Walsh, Sikes, Fletcher, and Sosnowsky likewise specifically deprived Babinski of participating in numerous procedures required by the LSU Catalog, including but not limited to assembly of a dissertation committee, meetings to discuss grade appeals, and the entire disciplinary process leading to expulsion.

**54.**

Professors Walsh, Sikes, Fletcher, and Sosnowsky are therefore liable to Babinski under 42 U.S.C. § 1983 for violating, under color of state law, Babinski's right to procedural due process when Babinski was *de facto* expelled from the Program because of his performative paper and his Program participation in and out of class.

**COUNT 5**
**VIOLATION OF FOURTEENTH AMENDMENT RIGHT TO EQUAL PROTECTION**
**42 U.S.C. § 1983**

**55.**

Babinski incorporates by reference paragraphs 1 through 54.

**56.**

As a student at a public postsecondary institution, Babinski is entitled to equal protection under the law accordance with the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

**57.**

Professors Walsh's, Sikes', Fletcher's, and Sosnowsky's actions against Babinski differ considerably from their treatment of other, similarly situated students without sufficient justification, making Babinski a "class of one" who has suffered discrimination. Specifically,

refusal to permit Babinski to assemble a dissertation committee or make other arrangements for receiving course credit and depriving Babinski of mandatory disciplinary and academic procedures, while allowing other students these rights, violates Babinski's equal protection rights.

**58.**

Professors Walsh, Sikes, Fletcher, and Sosnowsky are therefore liable to Babinski under 42 U.S.C. § 1983 for violating, under color of state law, Babinski's right to equal protection when punitive actions were taken against Babinski and not against other students similarly situated and when Babinski was not permitted to utilize various university policies that were available to other students.

### COUNT 6
### CONSPIRACY TO VIOLATE CIVIL RIGHTS
### 42 U.S.C. § 1983

**59.**

Babinski incorporates by reference paragraphs 1 through 58.

**60.**

Upon information and belief, Professors Walsh, Sikes, Fletcher, and Sosnowsky, in various combinations and through correspondence and other overt acts, conspired to violate Babinski's civil rights, including but not limited to those rights described above.

**61.**

Upon information and belief, Professors Walsh, Sikes, Fletcher, and Sosnowsky, in their meeting with other parties described above in ¶ 33 collectively decided and conspired to refuse to teach Babinski, refuse to permit him the alternatives to which he was entitled, and refuse to allow him to continue in the Program.

**62.**

Professors Walsh, Sikes, Fletcher, and Sosnowsky are therefore liable to Babinski under 42 U.S.C. § 1983 for engaging in a conspiracy to violate, under color of state law, Babinski's civil rights including, but not limited to, Babinski's rights to freedom of speech, due process, and equal protection.

**DAMAGES**

**63.**

As a direct result of the Defendants' actions described above, Babinski has suffered damage in the following respects:

    a.   Economic damages,
    b.   Tuition and fees,
    c.   Loss of earning capacity,
    d.   Mental anguish and emotional damage,
    e.   Damage to reputation,
    f.   Attorney's fees and
    g.   Other measures and elements of damages that may be proven at trial.

**DEMAND FOR PERMANENT INJUNCTION**

**64.**

Babinski incorporates by reference paragraphs 1 through 63.

**65.**

Babinski further demands this Court enter a permanent injunction against all defendants, in their official capacities, mandating Babinski's reinstatement to the Program and mandating that all barriers to Babinski's continuation in the Program toward receiving the degree of Doctor of Philosophy in Theatre (Ph.D.) be eliminated.

**66.**

Babinski further demands this Court enter a permanent injunction against Professors Sosnowsky, Walsh, and Fletcher, enjoining them from further disseminating information about this matter, including Babinski's performative paper and educational records, and enjoining them from further disparaging Babinski to other persons.

**67.**

Babinski's *de facto* expulsion from the Program because of his protected speech, and without due process of law, constitutes a continuing violation of Babinski's constitutional rights by officials acting under color of state law.

**68.**

Continued dissemination of information about this matter, including Babinski's performative paper and false information about his mental state, academic progress, and conduct in class and with other students, will continue to cause harm to Babinski in his ability to secure or continue in professional opportunities associated with his work in the Program and elsewhere.

**69.**

In addition to the damages demanded above, this Court can vindicate Babinski's constitutional and personal rights by requiring all defendants to cease their continuing violation of Babinski's rights and return him to the Program in good standing, providing Babinski a clear and unobstructed path to obtaining the Doctor of Philosophy in Theatre (Ph.D.) degree as long as Babinski complies with the generally applicable Program requirements for all students. This Court can also vindicate Babinski's rights by enjoining the defendants from interfering with Babinski's

academic and professional progress through their dissemination of false and misleading information about Babinski and further publication of his performative paper.

**WHEREFORE**, premises considered, Plaintiff, ANDREW BABINSKI, prays for judgment in his favor and against Defendants, KRISTIN SOSNOWSKY, SHANNON WALSH, JOHN FLETCHER, and ALAN SIKES in their personal and official capacities, in such amounts as are reasonable within the premises, for the injunctive relief prayed for and for all other equitable relief, and, in addition, for whatever penalties, attorney's fees, and costs as allowed by law, together with judicial interest thereon from date of judicial demand until paid.

Respectfully Submitted:

_____
EVAN J. BERGERON (#33725)
**Winston Bergeron, LLP**
1700 Josephine Street
New Orleans, LA 70113
Telephone: 504-577-2500
Facsimile: 504-577-2562
evan@winstonbergeron.com
*Counsel for Plaintiff, Andrew Babinski*

## CERTIFICATE OF ELECTRONIC FILING

I hereby certify that on November 3, 2021, a copy of the forgoing First Amended Complaint was filed electronically with the Clerk of Court using the CM/ECF system.

All counsel will be served through the CM/ECF system. There are no non-CM/ECF participants.

_____
Evan J. Bergeron

22