UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ANDREW BABINSKI | * | |
| | * | |
| versus | * | No. 3:20-cv-00426-SDD-EWD |
| | * | |
| TODD QUEEN, in his personal and official | * | |
| capacity as Dean of the College of Music and | * | JUDGE SHELLY D. DICK |
| Dramatic Arts of Louisiana State University, | * | |
| KRISTIN SOSNOWSKY, in her personal and | * | MAGISTRATE ERIN WILDER- |
| official capacities as Chair of the School of Theatre | * | DOOMES |
| of Louisiana State University, SHANNON WALSH, | * | |
| JOHN FLETCHER, and ALAN SIKES | * | |

**RULE 7(A) RESPONSE TO**
**AFFIRMATIVE DEFENSE OF QUALIFIED IMMUNITY**

NOW INTO COURT, through undersigned counsel, comes Plaintiff, ANDREW BABINSKI, ("Babinski") who in response to the affirmative defense of qualified immunity raised by Defendants, now respectfully avers as follows. Because Babinski's claims under the Due Process Clause, the Equal Protection Clause, and conspiracy to violate civil rights have been dismissed with leave to amend, Babinski will only address his Free Speech Clause and freedom from retaliation claims in this Response:

1.

As a factual matter, the defendants knew they were not permitted to impede Babinski's progress in the Theatre Ph.D. Program as long as Babinski paid tuition. On July 22, 2019, in an email from Professor Sosnowsky to Professors Walsh and Fletcher discussing the request for a no-contact order against Babinski, Professor Sosnowsky relayed information she had received from Tracy Blanchard of the Student Advocacy and Accountability Office:

1

> I also spoke with Tracy regarding Andy's continuation in the program. We are not able to prevent him from continuing in the program should he be able to pay his tuition.

Despite Babinski having paid his tuition, the defendants nevertheless prevented Babinski from continuing in the Program. This alone is a basis to deny qualified immunity to the defendants at this stage.

**2.**

Defeating qualified immunity requires a two-part analysis: (1) whether a constitutional right was violated, and (2) whether that right was clearly established at the time of the alleged violation. *Sims v. City of Madisonville*, 894 F.3d 632, 638 (5th Cir. 2018). Babinski meets both prongs.

**3.**

Qualified immunity is not absolute. The Supreme Court recognizes that the doctrine should only apply to those government officials who "perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). On the other hand, a government official who abuses her office is rightly subject to an action for damages, which is often the only avenue to vindicate an injured person's rights. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982)). The Supreme Court cautions against requiring strict rigidity in factual similarities between prior cases and the case under consideration. *See Hope v. Pelzer*, 536 U.S. 730, 739 & n. 9 (2002).

**4.**

Babinski's right to be free from adverse action for his speech on a college campus is clearly established by applicable law, to wit:

**5.**

In *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969), the Supreme Court established the rule of decision in this case: that student speech cannot be restricted unless it causes an actual or reasonably projected substantial disruption to the campus learning environment. *Id.* at 509. *Tinker* assumes that its pronouncements apply to "the supervised and ordained discussion which take place in the classroom" and goes on to specify that "conduct by the student, *in class or out of it*, which for any reason . . . materially disrupts classwork or involves substantial disorder or invasion of the rights of others is, of course, not immunized by the constitutional guarantee of freedom of speech." *Tinker*, 393 U.S. at 513 (emphasis added).

**6.**

In *Papish v. Board of Curators of the University of Missouri*, 410 U.S. 667 (1973), the Supreme Court held that a graduate student expelled for speech disseminated on campus must be reinstated. The student had circulated a newspaper containing indecent speech and was therefore expelled for violations of the student code of conduct. The Court stated that "the First Amendment leaves no room for the operation of a dual standard in the academic community with respect to the content of speech" and that expelling the student could not be "justified as a nondiscriminatory application of reasonable rules governing conduct". Even Chief Justice Burger, dissenting in *Papish*, recognized that "[s]tudents are, of course, free to criticize the university, *its faculty*, or the Government in vigorous, or even harsh, terms." *Papish*, 410 U.S. at 672 (Burger, C.J., dissenting) (emphasis added).

**7.**

In *Oliver v. Arnold*, 3 F.4th 152 (5th Cir. 2021), the Fifth Circuit recognized the firm establishment "that a government official violates the First Amendment by retaliating against a

3

person for exercising First Amendment rights—that is, by taking adverse actions that are substantially motivated against the plaintiffs' exercise of constitutionally protected conduct that cause the plaintiff an injury that would chill a person of ordinary firmness from continuing to engage in that protected activity." *Id.* at 160 (internal quotations and brackets omitted). That case upheld the summary judgment denial of qualified immunity for a public school teacher who retaliated against a student for refusing to participate in a course assignment. Finding that the court did not have jurisdiction to resolve the factual dispute, the court dismissed the appeal.

### 8.

In *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252 (11th Cir. 2004), the Eleventh Circuit reversed qualified immunity for school officials who punished a student when he raised his fist in silence during the school's daily pledge of allegiance. The court specifically found that the act was student speech and that no substantial disruption occurred as a result of the student's actions, so the student's rights were violated. *Id.* at 1276. Further, the court used only the *Tinker-Burnside* standard, discussed, *supra*, at ¶ 5, to find that the applicable standard of law was clearly established. *Id.* at 1278 ("we find that, as of May 16, 2000, the Tinker-Burnside standard was clearly established and sufficiently specific as to give the defendants 'fair warning' that their conduct was constitutionally prohibited."). The court noted that government officials are not "free of the responsibility to put forth at least some mental effort in applying a reasonably well-defined doctrinal test to a particular situation." *Id.*

### 9.

Here, the Complaint specifically alleges that there was no substantial disruption to the learning environment. Further, defendants have neither pleaded nor established that a substantial disruption occurred. As this Court noted in its Ruling (Rec. Doc. 24), Babinski's paper was

4

intended to be kept confidential and to generate a discussion with the defendants alone rather than to be addressed in the classroom environment in front of other students. As a result, the first and second prongs of Babinski's burden to defeat qualified immunity are established.

**WHEREFORE**, premises considered, Plaintiff, ANDREW BABINSKI, prays for judgment in his favor and against Defendants, KRISTIN SOSNOWSKY, SHANNON WALSH, JOHN FLETCHER, and ALAN SIKES in their personal and official capacities, in such amounts as are reasonable within the premises, for the injunctive relief prayed for and for all other equitable relief, and, in addition, for whatever penalties, attorney's fees, and costs as allowed by law, together with judicial interest thereon from date of judicial demand until paid.

Respectfully Submitted:

_____
EVAN J. BERGERON (#33725)
**Winston Bergeron, LLP**
1700 Josephine Street
New Orleans, LA 70113
Telephone: 504-841-9395
evan@winstonbergeron.com
*Counsel for Plaintiff, Andrew Babinski*

### CERTIFICATE OF ELECTRONIC FILING

I hereby certify that on November 3, 2021, a copy of the forgoing First Amended Complaint was filed electronically with the Clerk of Court using the CM/ECF system.

All counsel will be served through the CM/ECF system. There are no non-CM/ECF participants.

_____
Evan J. Bergeron