# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

ANDREW BABINSKI                                    CIVIL ACTION

VERSUS                                             20-426-SDD-EWD

TODD QUEEN, ET AL.

## <u>RULING</u>

This matter is before the Court on the *Motion to Dismiss*[1] filed by defendants,
Kristin Sosnowsky ("Sosnowsky"), Shannon Walsh ("Walsh"), John Fletcher ("Fletcher"),
and Alan Sikes ("Sikes") (collectively "Defendants"). Plaintiff Andrew Babinski ("Babinski")
filed an *Opposition*,[2] to which Defendants filed a *Reply*.[3] For the following reasons,
Defendants' *Motion* shall be granted in part and denied in part.

## I.    BACKGROUND

### A.  Plaintiff's Allegations

This is a free speech case. Babinski was a student in the Louisiana State University
("LSU") School of Theatre Ph.D. program ("the Program").[4] Sosnowsky is alleged to be
the Chair of the LSU School of Theatre as well as a faculty member.[5] She is sued in her
official and individual capacities.[6] Walsh, Fletcher, and Sikes are alleged to be faculty

---

[1] Rec. Doc. No. 32.
[2] Rec. Doc. No. 38.
[3] Rec. Doc. No. 39.
[4] Rec. Doc. No. 28, p. 1–2.
[5] *Id.* at 2.
[6] *Id.*

members of the School of Theater, and they are sued in their official and individual capacities.[7]

Babinski enrolled in the Program in 2017, and Sosnowsky appointed him as a graduate assistant when he enrolled.[8] Fletcher appointed Babinski to be his teaching assistant in Babinski's second semester.[9] In the spring semester of 2019, Babinski enrolled in Walsh's course "Gender, Sexuality, and Performance."[10] Babinski alleges that the Program advertised the course as an "academic discussion about gender and sexuality in performance," but in reality it was a "liberal indoctrination course where opposing opinions and critical discussion were often met with hostility from certain students and Professor Walsh, herself."[11] Babinski voiced unpopular opinions in class, and he alleges that Walsh and his classmates rewarded him with abuse and mistreatment.[12] Babinski attempted to discuss his concerns around midterms with Walsh, but Walsh allegedly dismissed his "concerns and escalated the pattern of mistreatment, even telling Babinski that he deserved the harm he'd experienced in class."[13]

Babinski used the course's final paper to express his concerns about the "Gender, Sexuality, and Performance" course and the Program as a whole.[14] He alleges he used "performative writing" to express that he felt mistreated and discriminated against when he expressed his views inside and outside of class.[15] Babinski allegedly learned about

---

[7] *Id.* at 2–3.
[8] *Id.* at 3–4.
[9] *Id.* at 4.
[10] *Id.* at 5.
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.* at 6.
[15] *Id.*

performative writing from Walsh and others on the faculty.[16] According to Babinski, performative writing is:

> [A] style whereby the writer is trying to perform a concept or idea through language, manner, and form, in addition to its content. It is most often done by liberal, feminist, anti-racist scholars as a means of trying to use words to create a sensation of the very experience they are describing. As a performance makes you "feel something" in an effort to make you understand another person's life, this form of writing seeks to do the same—not through only describing it, but in the process of actually sensorially experiencing something.[17]

Babinski's final paper allegedly included expletives and harsh criticism of faculty members and peers—but no threats.[18] It purportedly included the disclaimer that "his writing was performative and exaggerated."[19] In the paper, Babinski asked that Walsh share the paper with Fletcher and Sikes and requested that the three of them meet to discuss Babinski's concerns about the Program.[20] Walsh took it a step further.

Walsh forwarded the paper to Sosnowsky who then forwarded it to the LSU Police Department ("LSUPD") and the LSU Office of Student Advocacy and Accountability.[21] The LSUPD allegedly found that the paper presented no actionable security issues, and the Office of Student Advocacy and Accountability allegedly found no violation of LSU policies and refused to issue a "no contact directive."[22] Babinski alleges that the Program's faculty took his discipline into their own hands.

Walsh allegedly failed Babinski for the course, causing him to fall into academic probation, and Sosnowsky revoked his graduate assistantship because he was placed

---

[16] *Id*. at 7.
[17] *Id*. at 6.
[18] *Id*. at 7.
[19] *Id*.
[20] *Id*.
[21] *Id*.
[22] *Id*. at 8.

on academic probation.[23] As a result, Babinski lost his graduate assistantship stipend, his tuition waiver, and his non-resident fee waiver.[24] Babinski alleges that he attempted to file a grade appeal.[25] Babinski alleges that, per LSU regulations,  the first step in that process is "the student and faculty member must have a discussion and attempt to arrive at a solution."[26] He alleges that this, and other grade appeal procedures, were not followed because Walsh and Sosnowsky refused to meet with him in person.[27]  According to Babinski, Sosnowsky refused to "petition the graduate school for a graduate assistantship waiver for Babinski, even though, upon information and belief, Professor Sosnowsky regularly made such petitions for students who fell into academic probation for the first time."[28] Babinski allegedly sought to make amends over the summer.

According to Babinski, his entreaties to Defendants over the summer were met with silence.[29] Defendants allegedly "collectively" decided that they would refuse to teach, and administer exams to, Babinski.[30] This decision was made at a meeting ten days before the beginning of the fall 2019 semester, and Babinski was not allowed to attend the meeting.[31] Instead, one of the attendees summarized a statement Babinski had provided.[32] Babinski alleges that this meeting did not conform to LSU policies regarding disciplinary and academic proceedings.[33] Todd Queen, then-dean of the LSU College of Music and Dramatic Arts, advised Babinski that given the Defendants' refusals to teach

---

[23] *Id.* at 8, 10.
[24] *Id.* at 8.
[25] *Id.*
[26] *Id.* at 10.
[27] *Id.* at 10–11.
[28] *Id.* at 8.
[29] *Id.* at 11.
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.*

him, Babinski could not continue in the Program.[34] "Dean Queen allegedly misled Babinski as to various university procedures in furtherance of the determination that Babinski could not continue in the Program, even though other students were correctly advised of these procedures and allowed to use them when issues with faculty arose."[35] Sosnowsky was present for this meeting and allegedly subscribed to these false statements.[36]

Specifically, Babinski alleges that Queen and Sosnowsky inaccurately told Babinski that he would not be able to form a dissertation committee because of Defendants' refusal to teach him.[37] Babinski alleges that this was not true, citing a portion of the LSU General Catalog.[38] Further, Babinski alleges that two months after he was informed he could not assemble a dissertation committee, Fletcher informed another student, identified as "S.C.," that she could assemble a committee with a graduate, "non-Program theatre professor."[39]

Additionally, Babinski alleges that the LSU Ombudsperson advised Babinski, Sosnowsky, and Queen that she was aware of a situation where "a professor refused to teach a student even though the professor's course was required for graduation. LSU

---

[34] *Id.* at 12.
[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] *Id.* The relevant portion of the General Catalog provides:
   At least one-half of the graduate faculty on doctoral committees must be full-time tenured or tenure-track faculty at LSU. A minimum of two of those faculty members must be from the student's major departmentand at least one of whom must be a full member of the LSU graduate faculty. The remaining members may be from the major department or may be from outside the department if pertinent to the student's area of concentration, with the proviso that at least one of the remaining members must be a full member of the faculty.
[39] *Id.* at 13.

accommodated this student by allowing them to receive credit for the course through independent study."[40] Queen and Sosnowsky did not give Babinski that opportunity.

Babinski alleges that Sosnowsky sent Walsh and Fletcher the following email in July 2019, relaying information received from Tracy Blanchard of the Student Advocacy and Accountability Office: "I also spoke with Tracy regarding Andy's continuation in the [P]rogram. We are not able to prevent him from continuing in the [P]rogram should he be able to pay his tuition."[41]

Babinski continued in the Program through the fall 2019 semester.[42] He took one course within the Program and three additional courses for his minor concentration.[43] He allegedly completed the courses without incident.[44] Meanwhile, Babinski attempted to resolve the situation with Defendants, but they refused to reconsider their positions.[45] At the end of the fall 2019 semester, Babinski had only three courses remaining in the Program in order to reach the "milestone" of completing his coursework which would have led him to "certain professional benefits and opportunities."[46] Babinski transferred to the department of philosophy and sued Defendants.[47]

Babinski brings five constitutional claims. First, Babinski contends that his speech in and outside of class and in his paper constitutes protected speech.[48] He argues that Defendants' "decision to refuse to teach Babinski or administer general exams, and Professor Sosnowsky's refusal to permit Babinski to continue in the Program, constitute

---

[40] *Id*.
[41] *Id*. at 15.
[42] *Id*. at 13.
[43] *Id*.
[44] *Id*.
[45] *Id*. at 13–14.
[46] *Id*. at 14.
[47] *Id*.
[48] *Id*. at 15.

a *de facto* expulsion from the Program resulting from Babinski's protected speech."[49] Second, Babinski argues that Defendants' actions after he submitted his paper violated his right to be free from retaliation for his protected speech.[50] Third, Babinski asserts that he was denied procedural due process prior to his expulsion in violation of the Fourteenth Amendment.[51] Fourth, Babinski asserts a class of one equal protection claim, arguing that the Defendants' actions toward Babinski differed considerably from their treatment of other, similarly situated students without sufficient justification.[52] Fifth, Babinski alleges that Defendants conspired to violate his civil rights.[53]

Babinski seeks damages as well as injunctive relief. As to the requested injunctive relief, Babinski asks the Court to issue a permanent injunction mandating that Sosnowsky reinstate Babinski in the Program and remove all impediments to his completion thereof.[54] He also asks the Court to enjoin Defendants from disseminating further information about this matter, including his paper, and from further disparaging Babinski to other persons.[55]

### B.  Procedural History

The Court granted in part and denied in part Defendants' first *Motion to Dismiss.*[56] The Court found that Babinski had adequately pled First Amendment claims, subject to the caveat that neither party had briefed whether Babinski's paper implicated a matter of public concern—which the Court explicitly stated would require analysis of Babinski's

---

[49] *Id.*
[50] *Id.* at 16.
[51] *Id.* at 17.
[52] *Id.* at 18.
[53] *Id.* at 19.
[54] *Id.* at 20.
[55] *Id.* at 21.
[56] Rec. Doc. No. 24.

paper itself.[57] However, the Court held that Babinski had failed to overcome Defendants' assertion of qualified immunity and ordered him to file a Rule 7(a) response.[58] Babinski complied,[59] and Defendants filed a *Reply*[60] addressing his *Response.* The Court did not dismiss Babinski's First Amendment claims as to Sosnowsky in her official capacity.[61] The Court dismissed Babinski's other claims without prejudice and granted leave to amend. Babinski filed a *First Amended Complaint*.[62]

## II.    LAW AND ANALYSIS

### A.  Babinski's Rule 7(a) Response

To defeat qualified immunity, Babinski must allege that: (1) his constitutional rights were violated, and (2) the right that was violated was clearly established at the time of the violation.[63] Babinski offers two arguments as to why qualified immunity should be denied. First, he asserts that, based on the email quoted above, Defendants knew they could not impede Babinski's progress in the Program as long as he continued to pay tuition.[64] Second, he cites several Supreme Court and Fifth Circuit cases for the proposition that it was clearly established law that Defendants could not *de facto* expel Babinski.

The email cannot carry the day for Babinski as to his First Amendment claims. The referenced email arguably put Defendants on notice that LSU policy prohibited them from *de facto* expelling Babinski. However, a violation of LSU policy is not equivalent to a violation of Babinski's rights under the First Amendment. Moreover, LSU policy cannot

---

[57] *Id*. at 12, n. 77, 21–22. Once again, neither party raises the issue, and Defendants do not move to dismiss Babinski's First Amendment claims.
[58] *Id*. at 26–28.
[59] Rec. Doc. No. 29.
[60] Rec. Doc. No. 39.
[61] Rec. Doc. No. 24, p. 28.
[62] Rec. Doc. No. 28.
[63] *Sims v. City of Madisonville*, 894 F.3d 632, 638 (5th Cir. 2018).
[64] Rec. Doc. No. 29, p. 1–2.

serve as clearly established law that Defendants' *de facto* expulsion violated Babinski's rights under the First Amendment.

The cases Babinski cites are also insufficient. In its prior *Ruling*, the Court summarized the parties' arguments as to which First Amendment standard should apply to Babinski's paper.[65] In sum, Babinski urged the Court to apply the standard articulated in *Tinker v. Des Moines Independent School District*,[66] while Defendants advocated for the more stringent standard provided in *Hazelwood School District v. Kuhlmeier*.[67] The Court concluded, after substantial analysis, that *Tinker* applied. The Court concluded in the alternative that if *Hazelwood* applied, Babinski's paper would still be protected speech as alleged. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law."[68] At the time of the alleged violation of Babinski's First Amendment rights, the law was not clearly established. As noted above, it was debatable whether *Tinker* or *Hazelwood* applied to his speech. The Court cannot state that the law was clearly established when the threshold question of which standard to apply was at issue. Moreover, neither *Tinker*, which involved students in a public high school wearing black armbands in protest of the Vietnam War, nor *Hazelwood*, which involved the free speech rights of public high school students who authored the school newspaper, are sufficiently factually similar to the instant case. Defendants are entitled to qualified immunity as to Babinski's First Amendment claims. The Court turns to the instant *Motion to Dismiss*.

---

[65] Rec. Doc. No. 24, p. 12–18.
[66] 393 U.S. 503 (1996).
[67] 484 U.S. 260 (1988).
[68] *Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 131 S. Ct. 2074, 2085, 179 L. Ed. 2d 1149 (2011).

**B.  Rule 12(b)(6) Motion to Dismiss Analysis**

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[69] The Court may consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"[70] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[71]

In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[72] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[73] However, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged."[74] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[75] "Furthermore, while the court must accept well-

---

[69] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).
[70] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equitieis, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)).
[71] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).
[72] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and brackets omitted) [hereinafter *Twombly*].
[73] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted) [hereinafter *Iqbal*].
[74] *Id.*
[75] *Id.*

pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[76] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[77]

Defendants move to dismiss: (1) Babinski's request that Defendants be enjoined from continuing to share Babinski's paper and other disparaging information about him; (2) Babinski's due process claims; (3) Babinski's equal protection claim; and (4) Babinski's conspiracy to violate civil rights claims.

Babinski alleges that Walsh, Sosnowsky, and Fletcher shared and continue to share Babinski's paper and disparaging information about him. As Defendants note, the only allegation that bears on whether Walsh, Sosnowsky, and Fletcher continue to do the complained-of actions is:

> Upon information and belief, Professors Walsh, Sosnowsky, and Fletcher continue to share Babinski's paper or disparaging information about him with others both within and without the Department without Babinski's permission in an effort to harm Babinski's reputation, integrity, ability to continue in [the Program] and ability to transfer schools to complete his Ph.D. elsewhere.[78]

Babinski's allegations that Walsh, Sosnowsky, and Fletcher distributed the paper and disparaged him several years ago when the facts pertinent to this case were taking shape does not make it plausible that they continue to do so now. Moreover, while the Fifth Circuit allows pleading on information and belief to satisfy Rule 12(b)(6), "the complaint must set forth the factual basis for such belief."[79] The *First Amended Complaint*

---

[76] *Taha v. William Marsh Rice Univ.*, 2012 WL 1576099, at *2 (S.D. Tex. 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).
[77] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).
[78] Rec. Doc. No. 28, p. 10.
[79] *U.S. ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 329 (5th Cir. 2003) (internal citations omitted).

fails to do so. As such, this request for injunctive relief is dismissed without prejudice, should re-urging for this relief become appropriate.

### C. Due Process Claims

"To be entitled to the procedural protections of the Fourteenth Amendment, [Babinski] must demonstrate he was deprived of either a liberty or a property interest."[80] "[P]roperty interests are created, and their dimensions defined, by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."[81] Babinski asserts violations of both his property and liberty interests.

The Fifth Circuit has held that there is "no state-created right to graduate-level education" in Louisiana.[82] But Babinski urges that the various property interests he identifies were created by contract. Louisiana courts have implicitly recognized a contractual relationship between a student and an educational institution,[83] and several federal courts of appeal have applied the contract theory urged here in comparable contexts.[84] But even though the "catalogues, bulletins, circulars, and regulations of the institution made available to the matriculant may become part of the contract…," the student must establish an "entitlement to a tangible continuing benefit."[85] "In order to

---

[80] *Smith v. Davis*, 507 F. App'x 359, 362 (5th Cir. 2013).
[81] *Id.*
[82] *Barnes v. Symeonides*, 44 F.3d 1005 (5th Cir. 1995).
[83] *Babcock v. New Orleans Baptist Theological Seminary*, 554 So. 2d 90, 95 (La. Ct. App. 1989), *writ denied*, 558 So. 2d 607 (La. 1990); *Fussell v. Louisiana Bus. Coll. of Monroe, Inc.*, 519 So. 2d 384 (La. Ct. App. 1988); *McKee v. Southfield Sch.*, 613 So. 2d 659, 661 (La. Ct. App. 1993); *Simmons v. Sowela Tech. Inst.*, 470 So. 2d 913 (La. Ct. App.), *writ denied*, 475 So. 2d 1109 (La. 1985).
[84] *See e.g. Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 601 (7th Cir. 2009); *Ikpeazu v. Univ. of Nebraska*, 775 F.2d 250, 253 (8th Cir. 1985).
[85] *Bissessur*, 581 F.3d at 602 (7th Cir. 2009).

establish this type of entitlement, the student must point to an identifiable contractual promise that the university failed to honor."[86]

The Court begins with Babinski's property interest argument. Babinski asserts that Defendants violated his procedural due process rights in three ways: (1) Defendants failed to follow the mandatory procedures for a grade appeal; (2) Defendants stripped him of his graduate assistantship in violation of LSU policies; and (3) Defendants deprived him of his entitlement to continued enrollment.[87] Defendants counter that: (1) they followed the procedures for a grade appeal; (2) Babinski's entitlement to his assistantship evaporated when he was placed on academic probation; and (3) Babinski has no protected property interest in maintaining enrollment in a particular academic program.[88]

Babinski has adequately pled that Walsh and Sosnowsky failed to follow the procedures for a grade appeal. Babinski alleges that:

> [T]he LSU General Catalog under "regulations" requires that, as a first step in a grade appeal, "the student and the faculty member must have a discussion and attempt to arrive at a solution." Professor Walsh refused to meet with or correspond with Babinski and the [D]efendants did not provide a substitute, so this procedure was never followed. Similarly, the next step requires a meeting with the department chair, student, and professor within 14 days. No meeting occurred, as Professor Sosnowsky instead solicited a single e-mailed statement from Babinski and Professor Walsh, from which she e-mailed them her ruling.

Defendants argue that the procedures that occurred satisfied the LSU grade appeal procedure, citing from other provisions of the General Catalog. The Court will not consider Defendants' factual contentions at the motion to dismiss stage.[89] Therefore,

---

[86] *Id.* (cleaned up).
[87] Rec. Doc. No. 38, p. 4–6.
[88] Rec. Doc. No. 32-1, p. 5–7, 10.
[89] Moreover, even if the Court were to consider Defendants' contention that the "discussion" between the student and faculty member can permissibly occur via email, the result would be the same. First, Babinski

Babinski has adequately stated a procedural due process claim against Walsh and Sosnowsky as it relates to their alleged failure to follow the grade appeal process. Babinski does not allege that Sikes and Fletcher were involved in this process, and so they are not implicated in this claim.

Babinski's argument that Defendants stripped him of his graduate assistantship in violation of LSU policies fails. Babinski alleges that LSU rule PS-21 provides:

> [T]he offer of [graduate assistant] appointment, once accepted, becomes a binding contract between the student and the appointing unit….. Your appointment will be for the 9-month academic period, may be renewed, and is contingent on our being a student in "good academic and accountability standing" in the Graduate School, a term defined in the General Catalog. A student on probation (academic or disciplinary) is not in good standing.

Essentially, Babinski argues that, had Sosnowsky and Walsh correctly followed the grade appeal procedure, he would not have received a failing grade and therefore would not have lost his graduate assistantship. This claim fails because it rests on speculation and conjecture that the grade appeal process, if properly followed, would have culminated in a result that removed him from academic probation. Speculation and conjecture fail to move the needle from possible to plausible.

Finally, the Court turns to the core of Babinski's property interest procedural due process claim: Defendants deprived him of an alleged property interest in continued enrollment. Defendants cite several cases in support of their argument that there is no state-created right to higher education.[90] However, as noted above, Babinski can

---

does not allege that there were emails exchanged between him and Walsh as part of the first step in the process. Second, Sosnowsky's acceptance of one email from Babinski and Walsh with no further input, as alleged, is arguably not a "discussion."

[90] *Smith v. Davis*, 507 F. App'x 359 (5th Cir. 2013); *Sonya D. Aryndar b/n/f Freya Arundary v. DeKalb County School District*, 620 F.2d 493 (5th Cir. 1980); *Barnes v. Symeonides*, 44 F.3d 1005 (5th Cir. 1995).

adequately state his claim if he points to a contractual promise that Defendants failed to honor.

Babinski redirects the Court to the July 2019 email from Sosnowsky to Walsh and Fletcher:

> I also spoke with Tracy [(of the Student Advocacy and Accountability Office)] regarding [Babinski's] continuation in the program. We are not able to prevent him from continuing in the program should he be able to pay tuition.[91]

Babinski asserts that "[t]his admission provides the necessary evidence of an existing property or contractual interest that could not be deprived absent due process."[92] Defendants counter that "the excerpt [of the email] provided makes it clear that the purpose of Professor Sosnowsky's email was to relay to her colleagues that authorities did not conclude [that Babinski] posed an active threat to the faculty."[93]

The Court concludes that Babinski has adequately alleged that Defendants violated his right to procedural due process by denying him the continued enrollment to which he was allegedly entitled. At the 12(b)(6) stage, the Court must draw reasonable inferences in favor of the plaintiff. From the email, the Court may infer that LSU policy, as articulated by the Student Advocacy and Accountability Office, prevented Defendants from stopping Babinski's continuation in the Program. In other words, the Court may infer that, after Babinski submitted his paper and received the failing grade, he still had an entitlement to continued enrollment as long as he continued to pay tuition. This suffices to allege a contractual or property interest. Defendants' alleged *de facto* expulsion of Babinski constitutes an infringement upon that interest because he was not provided a

---

[91] Rec. Doc. No. 28, p. 14–15.
[92] Rec. Doc. No. 38, p. 6.
[93] Rec. Doc. No. 39, p. 2–3.

hearing prior to his *de facto* expulsion,[94] so this claim is properly pled. The Court turns to Babinski's liberty interest argument.

The Supreme Court has stated that "[w]here a person's good name, reputation, honor or integrity is at stake because of what the government is doing to him,"[95] the minimal requirements of the [Due Process] Clause must be satisfied."[96] The Fifth Circuit, in interpreting applicable Supreme Court precedent in the context of a discharged public employee, has required a showing of stigma-plus. Although it does not appear that the Fifth Circuit has applied the stigma-plus doctrine to a liberty interest claim by an expelled student, the Court finds that the same principles apply in the instant context because Babinski alleges that the government has deprived him of a liberty interest.

Under the stigma-plus doctrine, a plaintiff must allege "a stigma plus an infringement of some other interest."[97] "Concern about the impact of the plaintiff's [*de facto* expulsion] on his or her general reputation is not, standing alone, sufficient to give rise to the required liberty interest."[98] On the contrary, "a constitutionally protected liberty interest is implicated only if a [student] is [expelled] in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other…opportunities."[99]

Babinski alleges that Sosnowsky made false claims about him to "various LSU administrators" that harmed his reputation, including "that he was mentally unstable, that he was abusive to other students, and that he'd threatened other students and faculty in

---

[94] *Goss v. Lopez*, 419 U.S. 565 (1975).
[95] *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S. Ct. 507, 510, 27 L. Ed. 2d 515 (1971).
[96] *Goss v. Lopez*, 419 U.S. 565, 574 (1975).
[97] *Tebo v. Tebo*, 550 F.3d 492, 503 (5th Cir. 2008).
[98] *Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000).
[99] *Id.*

his paper."[100] Further, Babinski alleges that Walsh, Sosnowsky and Fletcher withheld mitigating information in their communications with LSU administrators and the Office of Student Advocacy and Accountability.[101] He alleges that Sosnowsky and Walsh shared his education records and paper with other students.[102] He avers that Walsh, Sosnowsky, and Fletcher continue to share his paper with others both inside and outside the Program.[103] In sum, Babinski alleges that his "protected liberty interest in his good name, reputation, and integrity…has been infringed upon and tarnished by the [D]efendants' actions in sharing Babinski's paper and *de facto* expelling him from the Program by refusing to teach him and refusing to make alternative arrangements for him."[104] Notably, Defendants do not address Babinski's liberty interest theory of the procedural due process claim.

Babinski has adequately stated a claim for a violation of his liberty interest without due process as to Sosnowsky—but not Walsh, Fletcher, or Sikes. He alleges that Sosnowsky defamed him to LSU administrators and that the defamation contributed to his being unable to continue in the Program. This allegation is sufficient to state  a plausible claim for infringement of a liberty interest. However, the allegation that Walsh, Sosnowsky, and Fletcher withheld mitigating information is not sufficient as to Walsh and Fletcher because Babinski does not allege that Walsh and Fletcher provided false information that needed to be corrected. In other words, the Court will not impose upon Walsh and Fletcher a duty to correct the misstatements of others. Finally, the allegation

---

[100] Rec. Doc. No. 28, p. 9.
[101] *Id*. at 10.
[102] *Id*.
[103] *Id*.
[104] *Id*. at 17.

that Sosnowsky, Walsh, and Fletcher continue to share Babinski's paper is conclusory. Moreover, even if the Court credited this allegation, Defendants' sharing of Babinski's paper is not in and of itself defamatory because Babinski admittedly wrote the paper. This claim survives as to Sosnowsky, but not the other Defendants.

Babinski's substantive due process claim fails to the extent he has alleged one. Babinski does not assert a violation of his substantive due process rights as a separate count in the *Amended Complaint*.[105] He also fails to adequately oppose Defendants' *Motion* as to that claim as he provides no argument. Defendants' *Motion* is granted as to Babinski's substantive due process claim, which is dismissed with prejudice.

### D.  Class of One Equal Protection Claim

Babinski asserts a class of one equal protection claim. The Fifth Circuit recently explained:

> Class-of-one equal-protection claims are an application of the principle that the seemingly arbitrary classification of a group or individual by a governmental unit requires a rational basis. To state a class of one claim under the Equal Protection Clause, the plaintiff must allege that: (1) the defendant intentionally treated plaintiff differently from others similarly situated, and (2) the defendant lacked a rational basis for the difference in treatment.[106]

As the Fifth Circuit explained in *Rountree v. Dyson*,[107] a plaintiff bringing a class of one equal protection claim who merely "alleges that other similarly situated individuals were treated differently, but [] points to no specific person or persons and provides no specifics as to their violations" has not stated a class of one claim under Fed. R. Civ. P.

---

[105] Rec. Doc. No. 28.
[106] *Martinez v. New Deal Indep. Sch. Dist.*, 802 F. App'x 98, 100 (5th Cir. 2020) (internal citations omitted).
[107] 892 F.3d 681 (5th Cir. 2018).

12(b)(6).[108] The Fifth Circuit elaborated, "[a]n allegation that others were treated differently, without more, is merely a legal conclusion that we are not required to credit."[109]

The Court applied *Rountree* in its prior *Ruling* and held that Babinski had failed to allege that a specific person was treated differently. The amendments to his *Complaint* compel a different result on this *Motion*. Babinski now alleges that:

> [U]pon information and belief, two months after Dean Queen and Professor Sosnowsky advised Babinski he could not assemble a dissertation committee, another Program student, S.C., asked Professor Fletcher if she could assemble a committee with a graduate, non-Program theatre professor (an option that was denied Babinski). Professor Fletcher advised S.C. that this was an acceptable practice.[110]

Further:

> [U]pon information and belief, the LSU Ombudsperson advised Babinski, Professor Sosnowsky, and Dean Queen that she was specifically aware of a situation where a professor refused to teach a student even though the professor's course was required for graduation. LSU accommodated this student by allowing them to receive credit for the course and through independent study. Babinski was specifically deprived of this option by Dean Queen and Professor Sosnowsky.

These allegations are sufficient to plead the first prong of a class of one claim as to Fletcher and Sosnowsky. While both are pled on information and belief, the second allegation provides that Babinski learned this knowledge firsthand, so the basis for his belief is provided.[111] Additionally, the second allegation identifies that there is a discrete individual who received differing treatment, rather than a conclusory allegation that "others" received different treatment. The first allegation does not contain the basis for the belief, but the identification by initials of a similarly situated individual lends credence

---

[108] *Id.* at 685.
[109] *Id.*
[110] Rec. Doc. No. 28, p. 13.
[111] *U.S. ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 329 (5th Cir. 2003) (internal citations omitted).

to the belief. Babinski has sufficiently identified specific individuals who were allegedly treated differently than him to satisfy his burden at the 12(b)(6) stage. Moreover, those students were similarly situated because they, like Babinski, needed to use the LSU procedures which he was not allowed to use. The Court turns to the second prong of the class of one claim: Babinski must allege that Fletcher and Sosnowsky lacked a rational basis for that differing treatment.

At this stage, the Court must draw reasonable inferences in favor of Babinski, and he has sufficiently alleged that Fletcher and Sosnowsky lacked a rational basis for the differing treatment. Babinski generally alleges that Defendants disliked his paper and took steps to prevent his continuation in the Program because of its content. He alleges, in the form of the email from the Student Advocacy and Accountability Office, that Sosnowsky, Walsh, and Fletcher knew that they could not prevent Babinski from continuing in the Program so long as he paid his tuition.[112] He also alleges that Sosnowsky and Fletcher's actions were in violation of LSU policy.[113] Babinski has adequately alleged a class of one claim as to Sosnowsky and Fletcher.

Babinski has not alleged a class of one claim against Sikes and Walsh. He does not allege that Sikes or Walsh treated him differently than any other specific student, so he cannot satisfy the first prong. The class of one claim against Sikes and Walsh is dismissed.

### E.  Conspiracy to Violate Civil Rights Claim

---

[112] Rec. Doc. No. 28, p. 14–15.
[113] *Id.* at 11–13.

To state a claim for conspiracy to violate civil rights, a "plaintiff must not only allege facts that establish (1) the existence of a conspiracy involving state action, but also (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy."[114]

Babinski alleges that in the summer of 2019 after he submitted the paper, he attempted to communicate with Walsh, Fletcher, and Sikes, but they refused to respond.[115] He alleges that Defendants had a meeting ten days before the start of the fall 2019 semester where they agreed to refuse to teach Babinski.[116] The alleged meeting and the content of the discussions are pled on information and belief.[117] The Court will credit Babinski's allegation that his continued enrollment was the topic of conversation at the meeting because Babinski alleges that Sosnowsky, Walsh, and Fletcher, exchanged an email in late July 2019 wherein Sosnowsky told Fletcher and Walsh that Defendants could not prevent Babinski from continuing in the Program as long as he could pay tuition.[118]

Babinski has adequately pled a conspiracy to violate civil rights claim. Babinski alleges a conspiracy by Fletcher, Sikes, Walsh, and Sosnowsky to prevent his continued enrollment in the Program. Babinski has adequately pled a First Amendment claim, a class of one claim, and a procedural due process claim. Therefore, he has adequately pled a conspiracy to violate civil rights claim, and the underlying constitutional claims are different theories of his one conspiracy to violate civil rights claim.

## F.  Qualified Immunity

---

[114] *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019) (internal citations omitted).
[115] Rec. Doc. No. 28, p. 11.
[116] *Id*. at 11.
[117] Babinski adequately asserts this allegation because the *First Amended Complaint* implies that Babinski became aware of the meeting after it occurred.
[118] *Id*. at 14–15.

Babinski concedes that qualified immunity applies to his equal protection and conspiracy claims.[119] The Court concluded above that qualified immunity applies to his First Amendment claims. Thus, the Court only analyzes qualified immunity in the context of his procedural due process claims.[120]

To defeat qualified immunity, Babinski must allege that: (1) his constitutional rights were violated, and (2) the right that was violated was clearly established at the time of the violation.[121] Babinski cites four cases in support of his argument that qualified immunity is inapplicable; three are cases from Louisiana appellate courts, which are not binding Fifth Circuit or Supreme Court precedent.[122] Babinski also cites *Goss v. Lopez*.[123]

In *Goss*, the Supreme Court held that Ohio high school students who were suspended for ten days were entitled to due process in the form of a hearing before, or reasonably after, they received suspensions.[124] The Court began by finding that Ohio statutes created a right to public education for the students.[125] The Court held that this right to public education is a property interest protected by the Due Process Clause.[126] The Court also found that students had a liberty interest in their good name and reputation which was also implicated when the school suspended them without due process.[127] Of note here, the school officials argued that the Due Process Clause "comes into play only

---

[119] Rec. Doc. No. 38, p. 11.
[120] Qualified immunity does not extend to claims for injunctive relief. *Morgan v. Swanson*, 659 F.3d 359, 365, n. 3 (5th Cir. 2011). Thus, Babinski's request for an injunction requiring his reinstatement into the Program is still viable.
[121] *Sims v. City of Madisonville*, 894 F.3d 632, 638 (5th Cir. 2018).
[122] *Keller v. Fleming*, 952 F.3d 216, 225 (5th Cir. 2020) (cleaned up).
[123] 419 U.S. 565 (U.S. 1975).
[124] *Id*. at 584.
[125] *Id*. at 574. "Having chosen to extend the right to an education to people of appellees' class generally, Ohio may not withdraw that right on grounds of misconduct absent, fundamentally fair procedures to determine whether the misconduct has occurred." *Id*.
[126] *Id*.
[127] *Id*. at 576.

when the State subjects a student to a severe detriment or grievous loss," and a ten day suspension did not reach that high bar.[128] The Court rejected that argument stating, "[t]he Court's view has been that as long as a property deprivation is not de minimis, the gravity is irrelevant to the question whether account must be taken of the Due Process Clause."[129] Having found that due process applies, the Court held that, at a minimum, a student facing a ten day suspension is entitled to oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story."[130] The Court also clarified that it had addressed solely short suspensions, and "[l]onger suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures."[131]

The parties debate whether *Goss* suffices as clearly established law in this case. Babinski essentially argues that *Goss* requires notice and an opportunity to be heard before a suspension is imposed, so, *a fortiori*, *Goss* requires a notice and an opportunity to be heard before a *de facto* expulsion is imposed[132] Babinski avers that Defendants did not provide him notice and a hearing, so they violated the clearly established law in *Goss*.[133]

Defendants argue that *Goss* is inapplicable because Babinski was never suspended by LSU.[134] Rather, "[h]e simply received a failing grade in THTR 7923 for submitting his paper late and not in accordance with the instructions."[135] Further, citing

---

[128] *Id*. at 575.
[129] *Id*. at 576.
[130] *Id*. at 581.
[131] *Id*. at 584.
[132] Rec. Doc. No. 38, p. 12.
[133] *Id*. at 12–13.
[134] Rec. Doc. No. 39, p. 4.
[135] *Id*.

the *First Amended Complaint*, Defendants assert that "Babinski was afforded due process through an appeal of the grade on his paper, through the LSUPD investigation, the office of Student Advocacy and Accountability investigation, and communications with LSU faculty members."[136] Moreover, Defendants argue that Babinski was able to pursue another degree.[137]

Defendants' characterization of the allegations in the *First Amended Complaint* is disingenuous. Babinski alleges that he "attempted to petition for a grade appeal, but the process was mired in defects…" and did not follow LSU policy.[138] Likewise, he alleges that the LSUPD and Office of Student Advocacy and Accountability investigations led to the conclusions that Babinski's paper "presented no actionable security issues to anyone" and that "no violation of any LSU policies" occurred.[139] As pled, these investigations support the allegation that discipline was inappropriate. Finally, Babinski alleges that, while there was some communication between him and Defendants, they refused to communicate with him in the months leading up to the fall 2019 semester; critically, he also alleges that he was not allowed to attend a meeting at which Defendants decided that they would refuse to teach him.[140] Next, the Court considers whether Defendants are entitled to qualified immunity for Babinski's procedural due process claims.

In *Mullenix v. Luna*, the Supreme Court stated the principles relevant to the clearly established inquiry:

> The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. A

---

[136] *Id*. at 4–5 (citing Rec. Doc. No. 28, p. 7–10).
[137] *Id*. at 5.
[138] Rec. Doc. No. 28, p. 10–11.
[139] *Id*. at 8.
[140] *Id*. at 11.

clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.

We have repeatedly told courts not to define clearly established law at a high level of generality. The dispositive question is whether the violative nature of particular conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.[141]

The Supreme Court also provided further instruction on the degree of specificity required. A general statement of the law is not sufficient; rather, it must be clearly established that the state actor's actions were unconstitutional in the specific factual scenario that the state actor faced.[142]

According to the *First Amendment Complaint*, the factual scenario is as follows. Babinski, a post-graduate student, submitted a paper that earned him a failing grade and disturbed Defendants. Defendants reported his paper to the LSUPD and Office of Student Accountability and Advocacy; both of those organizations found that the paper was not actionable. Further, a representative of the latter office informed Sosnowsky that she could not prevent Babinski from continuing in the Program, and Sosnowsky relayed that message to Fletcher and Sikes. However, Defendants refused to teach Babinski and denied him access to grade appeal procedures and other procedures that he could have used to continue in the Program. In sum, Defendants made it impossible for Babinski to continue in the Program, and critically, Babinski alleges that their intent was to prevent

---

[141] *Mullenix v. Luna*, 577 U.S. 7, 12–14, 136 S. Ct. 305, 309, 193 L. Ed. 2d 255 (2015).
[142] *Id*.

his continuation in the Program.[143] Defendants allegedly *de facto* expelled Babinski from the Program without providing him a notice and an opportunity to be heard.

In 2017, the Fifth Circuit stated that "due process requires notice and some opportunity for hearing before a student at a tax-supported college is expelled for misconduct."[144] This rule, along with the holding in *Goss* makes the right to pre-expulsion notice and opportunity to be heard clearly established.

Although Babinski was an LSU post-graduate student, there is no discernable basis for applying a different rule than that applied to LSU undergraduate students. Babinski, as a post-graduate student enrolled in LSU, was subject to LSU's rules and procedures, including the LSU General Catalog—much like an undergraduate student.[145] There is no reasonable distinction between his property and liberty interest in his continued enrollment as a post-graduate student and that of an undergraduate student. Likewise, it is irrelevant that Babinski failed a course. He was placed on academic probation as a result of his failing the course; and, although his academic failure merited an academic punishment, Defendants cannot and do not reasonably argue that they *de facto* expelled Babinski for academic reasons.

Additionally, it is not relevant that Defendants did not formally expel Babinski or that he completed a different program within LSU. Defendants reported Babinski's actions to the Office of Student Advocacy and Accountability, but the Office allegedly stated that there had been no violation of LSU policies. This fact, accepted as true, implies that Defendants knew that formal processes were necessary, but shifted to a *de facto*

---

[143] Rec. Doc. No. 28, p. 14–15.
[144] *Plummer v. Univ. of Houston*, 860 F.3d 767, 773 (5th Cir. 2017), as revised (June 26, 2017).
[145] Rec. Doc. No. 28, p. 12.

expulsion strategy once the formal LSU disciplinary process resulted in no punishment. The Court will not reward Defendants for their creativity in doling out procedurally deficient punishments. Under the facts of this case, Defendants knew or should have known that it would be unconstitutional for them to force Babinski out of the Program without sufficient process, so qualified immunity is inappropriate as to the procedural due process claims.

### III.    CONCLUSION

With the exception of the procedural due process claims, all of Babinski's claims against Defendants in their individual capacities are dismissed on the basis of qualified immunity, with prejudice. Likewise, the request for an injunction to prevent Defendants from continuing to share Babinski's paper and/or disparaging information about him is dismissed as to all Defendants in both their official and individual capacities, without prejudice to re-urging should renewal of this requested relief become appropriate. Babinski's substantive due process claims against all Defendants in their official and individual capacities are dismissed with prejudice.

Babinski adequately pled a property interest theory procedural due process claim against all Defendants in their individual capacities, and Defendants are not entitled to qualified immunity as pled. As to Sosnowsky only, he adequately pled a liberty interest theory procedural due process claim against her in her individual capacity, and she is not entitled to qualified immunity as pled.

Babinski adequately pled the First Amendment claims and conspiracy to violate civil rights claim against all Defendants in their official capacities. He adequately pled a class of one claim as to Sosnowsky and Fletcher in their official capacities, but not Walsh and Sikes.

66694

Unless otherwise noted, all claims that are not properly pled are dismissed with prejudice. Defendants' *Motion*[146] is granted in part and denied in part.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>August 17, 2022</u>.

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[146] Rec. Doc. No. 32.