**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

ANDREW BABINSKI                                              CIVIL ACTION NO.

VERSUS                                                              20-426-SDD-EWD

TODD QUEEN, ET AL.

**WRITTEN REASONS FOR DECEMBER 23, 2025 ORDER**

On December 23, 2025, this Court issued and Order[1] denying the Motion to Compel ("Motion"),[2] filed by Andrew Babinski ("Plaintiff"). The Order provided that more detailed written reasons would follow, which are below.

## I.    BACKGROUND

The Motion seeks an order compelling Kristin Sosnowsky, Shannon Walsh, John Fletcher, and Alan Sikes (together "Defendants") to appear for a second round of depositions to answer questions regarding a meeting that took place on August 16, 2019, at which Defendants and general counsel for Louisiana State University ("LSU") were present (the "Meeting"). Plaintiff contends that Defendants admit that they attended this Meeting, and the evidence shows they discussed Plaintiff.[3] During the first round of depositions, Plaintiff wanted to question Defendants regarding the Meeting, including whether Plaintiff's academic situation was discussed and whether a determination was made prohibiting Plaintiff from completing his Ph.D. program—the central issue underlying his claims.[4] Plaintiff contends that this information is relevant and proportional to the needs of the case.[5] However, Plaintiff asserts that defense counsel objected to and/or

---

[1] R. Doc. 127.

[2] R. Doc. 108.

[3] R. Doc. 108-1, pp. 6-7 (citations omitted).

[4] R. Doc. 108-1, pp. 2-3.

[5] R. Doc. 108-1, pp. 6-7.

instructed Defendants not to answer questions regarding the Meeting on the grounds that the information sought was protected from disclosure by the attorney-client privilege.[6]

Plaintiff argues that the crime-fraud exception to the attorney-client privilege defeats the privilege: "Under the crime-fraud exception to the attorney-client privilege, the privilege can be overcome where communication or work product is intended to further continuing or future criminal or fraudulent activity…."[7] Plaintiff also argues that Defendants were engaged in a conspiracy to deprive, and actually deprived, Plaintiff of his civil rights under color of law in violation of 18 U.S.C. § 241 ("Section 241")[8] and 18 U.S.C. § 242 ("Section 242").[9] To show a violation of Section 241, Plaintiff says he must show that Defendants had an intent to deprive Plaintiff of his rights through a conspiracy. Plaintiff contends that Defendants' intent is shown by the refusal of three Defendants to teach Plaintiff and support his enrollment in the Ph.D. program, and Sosnowsky's testimony that she and the faculty determined that Plaintiff did not have a path to continued enrollment.[10] Plaintiff argues that these allegations show a conspiracy to interfere with Plaintiff's rights, and "[a]s a result of defendants' retaliatory actions in response to Mr. Babinski's exercise of his free speech rights, he was unconstitutionally disallowed from completing the Ph.D. program and deprived of his Fourteenth Amendment Due Process and Equal

---

[6] R. Doc. 108-1, pp. 2-3, citing R. Doc. 108-2, pp. 6-7 (Sosnowsky deposition transcript); R. Doc. 108-3, p. 2 (Sikes deposition transcript); and R. Doc. 108-4, p. 2 (Walsh deposition transcript).

[7] R. Doc. 108-1, p. 4, citing *United States v. Carr*, 83 F.4th 267, 276 (5th Cir. 2023).

[8] R. Doc. 108-1, pp. 1, 4 and *see* 18 U.S.C. § 241 which provides, in pertinent part: "If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same…They shall be fined under this title or imprisoned not more than ten years, or both…."

[9] R. Doc. 108-1, pp. 1, 5 and *see* 18 U.S.C. § 242, which provides, in pertinent part: "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both…."

[10] R. Doc. 108-1, pp. 7-8 (citations omitted).

Protection rights. This equates to a criminal violation of 18 U.S.C. § 241."[11] Similarly, to establish a violation of Section 242, Plaintiff must show that Defendants' willful conduct, under color of law, deprived him of a federally secured right. Plaintiff asserts that, as LSU officers, Defendants acted under color of law when they refused to teach and support Plaintiff, as purportedly discussed during the Meeting, in retaliation for Plaintiff's protected speech and in violation of Plaintiff's due process rights.  Plaintiff argues that the refusal resulted in an actual violation of Plaintiff's rights, *i.e.*, a *de facto* expulsion.[12] Plaintiff also argues that the presence of Dr. Jane Cassidy, a representative of LSU Academic Affairs, destroyed the attorney-client privilege because she was not involved in the issues related to Plaintiff and was not acting as an agent of Defendants or their counsel; rather, she was a neutral observer.[13]

Defendants oppose the Motion, contending that the purpose of the Meeting was for Defendants to obtain legal advice from LSU's general counsel regarding resolution of any potential legal issues arising out of Plaintiff's situation, which is protected by the attorney-client privilege.[14] Defendants contend that Plaintiff cannot satisfy the three-step analysis required to show that the crime-fraud exception applies, namely: a prima facie showing that "that the attorney-client relationship was intended to further criminal or fraudulent activity,' including 'evidence of an intent to deceive;"[15] a showing "that the client intended to further a crime during the attorney-client representation;"[16] and finally, a demonstration that "the privileged information bears a

---

[11] R. Doc. 108-1, p. 8.

[12] R. Doc. 108-1, pp. 8-10.

[13] R. Doc. 108-1, pp. 6, 10.

[14] R. Doc. 115, pp. 8-9, citing *Upjohn. v. United States*, 449 U.S. 383, 389 (1981) (other citations omitted).

[15] R. Doc. 115, p. 10, citing *InPwr Inc. v. Olson Restoration LLC,* No. 21-821, 2022 WL 2286182, at *3 (W.D. La. June 23, 2022) (internal citations omitted).

[16] R. Doc. 115, p. 10, citing *Southern Scrap Material Co. v. Fleming,* No. 01-2554, 2003 WL 21474479, at *2 (E.D. La. June 18, 2003) (other citations omitted).

relationship to the alleged crime or fraud."[17] As to Plaintiff's prima facie case, Defendants contend that Plaintiff's allegations of Section 241 and 242 violations, which require proof of specific intent to violate constitutional rights, are conclusory and lack factual support. Defendants assert that Plaintiff has shown no evidence of criminal intent, or a relationship between the testimony and the alleged criminal conduct.[18] As to Dr. Cassidy's presence during the Meeting, Defendants allege that the privilege is not waived when third parties are present for the facilitation of legal advice, and the privilege also protects "communications between corporate employees in which prior advice received is being transmitted to those who have a need to know in the scope of their corporate responsibilities." Here, all attendees were LSU employees represented by LSU's general counsel and they collectively participated in the Meeting to receive legal advice.[19]

Defendants alternatively argue that, if the Court finds that the attorney-client privilege does not apply, Plaintiff's request for depositions should still be denied. Plaintiff had knowledge of the Meeting before he filed his First Amended Complaint on November 3, 2021.[20] Further, Plaintiff took no action to resolve Defendant's objection to the line of questioning after the first round of depositions beginning in January 2025, and/or before the June 30, 2025 discovery deadline,[21] and thus Plaintiff waived his right to reconvene the depositions.[22] Defendants contend that Plaintiff's request to re-depose all four deponents poses an undue burden because Defendants are LSU professors with administrative duties in addition to teaching; they have already complied with extensive discovery requests and lengthy depositions; and, the expense outweighs the benefit

---

[17] R. Doc. 115, p. 10, citing *Ward v. Succession of Freeman,* 854 F.2d 780, 790 (5th Cir. 1988).

[18] R. Doc. 115, p. 11.

[19] R. Doc. 115, pp. 12-13, citing *In re Vioxx Prods. Liab. Litig.,* 501 F. Supp. 2d 789, 796 (E.D. La. 2007) (other citations omitted).

[20] R. Doc. 28.

[21] R. Doc. 105.  Plaintiff filed the Motion on the discovery deadline.

[22] R. Doc. 115, pp. 1, 13.

because Plaintiff could have addressed this issue much earlier and did not. Defendants, therefore, contend that a second round of depositions is an unnecessary, avoidable expense.[23]

In reply,[24] Plaintiff newly asserts that he also desires to re-depose Tracy Blanchard, who was deposed after the Motion was filed (and after the discovery deadline, by agreement of the parties), and who was similarly instructed not to answer questions regarding the Meeting.[25] Plaintiff argues that it is Defendants' burden to establish that the privilege applies, and Defendants have not shown that the purpose of the Meeting was for the purpose of providing legal advice.[26] Plaintiff contends that Defendants' characterization of the Meeting is not sufficient to establish that the privilege applies. Plaintiff also argues that legal advice was not the sole purpose of the Meeting and there were discussions regarding Plaintiff that did not involve counsel and legal advice.[27] Plaintiff reiterates his belief that, even if the privilege does apply, the crime-fraud exception defeats it. Plaintiff argues that he only needs to make a prima facie showing that criminal activity was intended to be furthered by the attorney-client relationship, and Defendants testified that they discussed Plaintiff and refused to teach him and support him in the Ph.D. program, which is in derogation of their duties and shows that they intended to violate Plaintiff's rights.[28] Plaintiff also alleges that even if the purpose of the Meeting was to obtain legal advice, the advice "could only have been made in furtherance of the continued deprivation of [Plaintiff's] rights," and therefore, in furtherance of criminal activity. Plaintiff denies that Dr. Cassidy holds the same legal

---

[23] R. Doc. 115, pp. 14-15.  Defendants also argue that the Court has already found that they lacked notice of a violation of "clearly established rights," and thus the depositions are not warranted in light of their qualified immunity defense, which prohibits invasive discovery. *Id.*

[24] R. Doc. 118.

[25] R. Doc. 118, p. 2.

[26] R. Doc. 118, pp. 2-3.

[27] R. Doc. 118, pp. 4-5.

[28] Plaintiff asserts that qualified immunity, which requires a much higher showing, does not overcome the crime-fraud exception. R. Doc. 118, pp. 6-7.

interests as Defendants and her role in the Meeting was a neutral observer. Plaintiff asserts that the depositions are relevant and proportional; the information sought is solely under Defendants' control; the depositions would not place an undue burden on Defendants; and, there is time before trial to hold them.[29]

In their Sur-Reply,[30] Defendants argue that Plaintiff's attempt to re-depose Blanchard  is improper because it was raised for the first time in reply, and untimely because the request was made after the discovery deadline passed and well after Plaintiff was aware of the privilege issue following Sosnowsky and Walsh's January 2025 depositions.[31] Defendants reiterate that a second deposition of Blanchard, a non-party, is not warranted for the same reasons asserted as to Defendants, *i.e.*, it would be unduly burdensome, disproportionate to the needs of the case, and violative of qualified immunity principles.[32] Defendants additionally assert that Plaintiff has not shown good cause under Fed. R. Civ. P. Rule 16(b) to extend the discovery deadline because Plaintiff was aware of the Meeting before he filed his First Amended Complaint in November 2021 and following the January 2025 depositions when the objection was first lodged, yet Plaintiff failed to address the issue in the remaining depositions. According to Defendants, Plaintiff has not shown good cause for his lack of diligence.[33]

---

[29] R. Doc. 118, pp. 8-9.

[30] R. Docs. 120-21. Acknowledging that the request for Blanchard's deposition was newly raised, Plaintiff did not object to a sur-reply. *See* R. Doc. 118, p. 2, n. 3.

[31] R. Doc. 121, pp. 1-3, citing *Glenn v. Copeland's of New Orleans, LLC,* No. 24-2917, 2025 WL 553683, at *4 (E.D. La. Feb. 19, 2025) (all other citations omitted). Defendants also note that Plaintiff did not seek leave to extend the discovery deadline before it expired. *Id.* at p. 6.  Defendants state that, while they agreed to Blanchard's deposition after the discovery deadline, they did so to accommodate the witness's schedule, and their agreement did not reopen discovery for other purposes. They also assert that their agreement to permit Blanchard's deposition should not be used to "bootstrap" a demand for another deposition well after the close of discovery.  *Id.* at p. 7.

[32] R. Doc. 121, pp. 3-4.

[33] R. Doc. 121, pp. 5-6, citing the Rule 16(b) factors, including the explanation for the untimely conduct (other citations omitted).

Following the briefing, on December 1, 2025, the Court issued an Order, finding that Defendants failed to adequately establish that the entirety of the Meeting was protected from disclosure based on attorney-client privilege, notwithstanding Plaintiff's crime-fraud exception and waiver arguments.[34] This was because Defendants did not provide any information outside of defense counsel's general statements in the deposition objections or in the Motion papers to establish what the purpose of the Meeting was, who called the Meeting, or what the role of LSU's counsel was at the Meeting.[35] Adopting the majority approach applied to deficient privilege logs to Defendants' deficient assertion of privilege over the Meeting,[36] Defendants were permitted to supplement their privilege arguments with additional information to support their argument that the communications made during the Meeting were attorney-client privileged.[37]

On December 15, 2025,[38] Defendants filed their supplemental opposition to Plaintiff's Motion to Compel, attaching the affidavit of Deputy General Counsel for LSU, Carlton (Trey) Jones, III ("Jones"), wherein they stated that the Meeting was convened at the request of the College of Music and Dramatic Arts. Jones met with LSU employees and faculty members, including Defendants, Cassidy, and Blanchard, in a private setting and the purpose of the Meeting

---

[34] R. Doc. 123.

[35] R. Doc. 123 (discussing and applying the holdings of *United States v. Hamdan,* No. 19-60, 2021 WL 1931626, at *4-5 (E.D. La. May 13, 2021) ("Defendants' bare allegations, asserted over all of the communications made during the Meeting in question, are insufficient to meet their burden of proving the communications are protected by the attorney-client privilege. Defendants fail to provide any information, through detailed affidavits or other evidence, regarding the Meeting, including when it occurred or what was discussed and by whom…."'"The Fifth Circuit has held that the mere presence of an attorney is not sufficient to insulate a Meeting from discovery, as '[t]he privilege protects only those communications made for the purpose of obtaining legal advice.'")(citations omitted).

[36] "[T]he majority approach by courts, when confronted by a privilege log that is technically deficient and that does not appear to have been prepared in bad faith, is to allow the party who submitted the log a short opportunity to amend the log prior to imposing the drastic remedy of waiver." *Cashman Equipment Corp. v. Rozel Operating Co*., No. 08-363, 2009 WL 2487984, at * 2 (M.D. La. Aug. 11, 2009) (collecting cases).  In permitting supplementation, this Court held that, as it was undisputed that LSU's general counsel was present for the Meeting, it was possible that Defendants could establish the attorney-client privilege with more information. R. Doc. 123.

[37] R. Doc. 123, pp. 3-4.

[38] Defendants sought and were granted additional time to supplement, with no objection from Plaintiff. R. Docs. 124, 125.

was "to seek legal advice from [Jones] regarding [Plaintiff's] recent conduct and their concerns about legal and safety issues for faculty and students…."[39] Jones avers that the purpose of the Meeting was for him, in his role as LSU's general counsel, to gather relevant information in order to provide legal advice to LSU's employees and faculty through their attorney-client relationship.[40] According to Jones,

> During the Meeting, the LSU employees and faculty members described their specific interactions with [Plaintiff], and related their concerns regarding safety and sought my legal advice on a range of issues, including but not limited to:
> - application of relevant policies and laws;
> - legal rights and responsibilities of LSU's employees, faculty, and students;
> - potential liability and risk management concerns, including issues related to campus safety; and
> - legal compliance.[41]

Jones states that he listened to the facts, asked questions, and provided legal advice "to ensure compliance with policies and laws, protection of the legal rights and responsibilities of LSU's employees, faculty and students and to minimize any potential liability including the risk of litigation".[42] Jones further attests that the communications during the Meeting were treated as confidential, and to his knowledge, have not been disclosed to any third parties outside of those with a need to know who are employed by LSU, as well as defense counsel.[43] Jones states that he did not provide, and was not asked to provide, advice on taking any action against any student in order to facilitate a crime or fraud.[44] Defendants contend that Jones' affidavit establishes each element required for the communications at the Meeting to be protected by the attorney-client

---

[39] R. Doc. 126, pp. 1-2 and R. Doc. 126-1.

[40] R. Doc, 126-1, pp. 1-2.

[41] R. Doc. 126-1, p. 2, ¶ 9.

[42] R. Doc. 126-1, p. 2, ¶ 10.

[43] R. Doc. 126-1, p. 3, ¶ 12.

[44] R. Doc. 126-1, p. 3, ¶ 13.

privilege, to-wit: the communications were between client and Jones, in his role as counsel; all communications at the Meeting were confidential; all communications were kept confidential; and, the communications were made for the purpose of obtaining/providing legal advice.[45] Defendants lastly contend that Plaintiff has not made a prima facie showing that the crime-fraud exception applies; in particular, Plaintiff has presented no evidence that the Meeting was held in furtherance of a conspiracy to violate Plaintiff's civil rights. Rather, Defendants assert that Jones' affidavit establishes that no one sought advice from him to violate the rights of any student, and the advice sought and received was how to proceed lawfully.[46]

On December 23, 2025, the Motion was denied, as Defendants adequately established that the information communicated during the Meeting met the requirements for protection as attorney-client privileged communications, and no exceptions to the privilege applied.[47] These written reasons to further explain the basis for the December 23, 2025 Order follow.

## II.    LAW AND ANALYSIS

Under the Federal Rules of Civil Procedure, parties may obtain discovery regarding any nonprivileged matter that is relevant to a claim or defense[48] and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery

---

[45] R. Doc. 126, pp. 2-4, citing R. Doc. 126-1 and *Swoboda v. Manders*, No. 14-19, 2016 WL 2930962, at \*3 (M.D. La. May 19, 2016).

[46] R. Doc. 126, p. 4.

[47] R. Doc. 127.

[48] *Crosby v. Louisiana Health Service and Indem. Co.,* 647 F.3d 258, 262 (5th Cir. 2011) ("Generally, the scope of discovery is broad and permits the discovery of 'any nonprivileged matter that is relevant to any party's claim or defense.'"), citing Rule 26(b)(1) and *Wyatt v. Kaplan,* 686 F.2d 276, 283 (5th Cir. 1982).

outweighs its likely benefit.[49] Rule 37(a)(3)(B)(i) permits a party to move for an order to compel an answer when a deponent fails to answer a question asked under Rule 30, which governs oral depositions.[50]

"For a motion to compel, '[t]he moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence.'"[51] "Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad or unduly burdensome or oppressive, and thus should not be permitted."[52]

"The attorney-client privilege limits the normally broad disclosure requirements of Federal Rule of Civil Procedure 26…."[53] "A party invoking the attorney-client privilege to defeat a discovery request must establish: (1) that there was a communication between client and counsel; (2) the communication was intended to be confidential; (3) the communication was, in fact, kept confidential; and (4) the communication was made for the purpose of obtaining or providing legal

---

[49] Rule 26(b)(1). "'Information within this scope of discovery need not be admissible in evidence to be discoverable.' Fed. R. Civ. P. 26(b)(1). A determination of relevancy is tied to applicable substantive law and then weighed against the six proportionality factors. Any information sought that is not relevant to a party's claim or defense is not discoverable, regardless of proportionality." *Firefighters' Retirement System v. Citco Grp. Ltd.,* No. 13-373, 2018 WL 276941, at *4 (M.D. La. Jan. 3, 2018).

[50] Rule 37(a)(3)(B)(i) provides, in pertinent part: "A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if: (i) a deponent fails to answer a question asked under Rule 30 or 31…." *See also* Rule 37(a)(3)(C), which provides: "When taking an oral deposition, the party asking a question may complete or adjourn the examination before moving for an order."

[51] *Firefighters' Retirement System,* 2018 WL 276941, at *4, citing *Mirror Worlds Technologies, LLC v. Apple Inc.*, Case No. 13-419, 2016 WL 4265758, at *1 (E.D. Tex. Mar. 17, 2016) (quoting *SSL Servs., LLC v. Citrix Systems, Inc.*, No. 2-08-cv-158, 2010 WL 547478, at *2 (E.D. Tex. Feb. 10, 2010)).

[52] *Firefighters' Retirement System*, 2018 WL 276941, at *4, citing *Mirror Worlds Technologies, LLC,* 2016 WL 4265758 at *1.

[53] *Equal Employment Opportunity Commission v. BDO USA, L.L.P.,* 876 F.3d 690, 695 (5th Cir. 2017) (citation omitted).

10

advice."[54] "Under both Louisiana law and federal common law, which are materially similar, the attorney-client privilege protects confidential communications between the client or a representative of the client and the client's lawyer or a representative of the lawyer...."[55] The burden of establishing that communications are subject to the attorney-client privilege lies with the party asserting the privilege.[56] "Determining the applicability of the privilege is a 'highly fact-specific' inquiry, and the party asserting the privilege bears the burden of proof."[57] "A general allegation of privilege is insufficient to meet this burden."[58]

Here, Defendants have asserted that the information sought to be compelled regarding the Meeting is protected by the attorney-client privilege. Through Jones's affidavit, which is uncontested by Plaintiff, Defendants have sustained their burden of showing that the privilege applies. As to the first and fourth factors, Jones attested that he attended the Meeting in his role as LSU's general counsel to meet with LSU faculty and staff, including Defendants, Cassidy, and Blanchard, for the purpose of providing legal advice regarding their questions and concerns about Plaintiff's situation. This included legal advice regarding application of, and compliance with, policies and laws, their legal rights and responsibilities, as well as those of the students, and potential liability and risk management. Jones stated that he provided legal advice to the Meeting attendees to ensure compliance with policies and laws, to protect the LSU employees' and students' legal rights and responsibilities, and to minimize any potential liability, including the

---

[54] *Swoboda,* 2016 WL 2930962 at *4, citing *Bross v. Chevron USA, Inc.*, No. 06-1523, 2009 WL 854446, at *3 (W.D. La. March 25, 2009) (citing *U.S. v. Construction Products Research, Inc.*, 73 F.3d 464, 473-74 (2d Cir. 1996)).

[55] *Benson v. Rosenthal*, No. 15-782, 2016 WL 1046126, at *5 (E.D. La. March 16, 2016), citing La. Code. Evid. art. 506(B).

[56] *Hodges, Grant & Kaufman v. U.S. Government, Dept. of the Treasury, I.R.S.,* 768 F.2d 719, 721 (5th Cir. 1985).

[57] *BDO USA, LLP*, 876 F.3d at 695, quoting *Stoffels v. SBC Communications, Inc.,* 263 F.R.D. 406, 411 (W.D. Tex. 2009).

[58] *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 473 (N.D. Tex. 2004), citing *Nutmeg Insur. Co. v. Atwell, Vogel & Sterling, A Div. of Equifax Services, Inc.*, 120 F.R.D. 504, 510 (W.D. La. 1988) (other citation omitted).

11

risk of litigation, arising out of Plaintiff's conduct.[59] As to the second and third factors, Jones attested that the attendees were all LSU employees and faculty members; the Meeting was held for the purpose of providing confidential legal advice; the communications were made in confidence; and, to his knowledge, the communications at the Meeting have been treated as confidential and not disclosed to any third parties, except to those persons with a need to know, who are employed by LSU, as well as defense counsel.[60]

The foregoing statements, unchallenged by Plaintiff, sufficiently establish that the communications made at the Meeting are protected by the attorney-client privilege. Plaintiff has not established that Cassidy's presence at the meeting amounted to a waiver of the privilege, as Cassidy was a representative of LSU's Department of Academic Affairs. Contrary to Plaintiff's unsupported representation that Cassidy was not involved in the matter, Sosnowsky testified that she and Queen "contacted Academic Affairs to investigate the implications of" the faculty members' decision not to serve on Plaintiff's dissertation committee or administer his general exam.[61] Finally, the crime-fraud exception, which only applies in rare circumstances,[62] does not vitiate the privilege here. Plaintiff relies primarily on allegations from his pleadings that the purpose of the Meeting was to deprive Plaintiff of his constitutional rights. This is not sufficient evidence to show that the exception applies.[63] Plaintiff certainly has not made a showing that any defendant intended to further a crime during the attorney-client representation that occurred at the

---

[59] R. Doc. 126-1, pp. 1-3, ¶¶ 6-7, 9-10, 14.

[60] *Id.* at ¶¶ 8, 11-12.

[61] R. Doc. 108-2, p. 3. Walsh also testified that Academic Affairs advised the defendants not to respond to email correspondence from Plaintiff. R. Doc. 108-4, p. 2.

[62] *Raymond v. Unum Group*, No. 20-352, 2022 WL 10208218, *5 (M.D. La. Oct. 17, 2022), citing, *e.g.*, *Covey v. Colonial Pipeline Co.*, Nos. 18-1121; 19-923; 19-1507, 336 F.R.D. 514 (N.D. Ala. Aug. 4, 2020) (citing *Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1335 (11th Cir. 2018)).

[63] *In re Grand Jury Subpoena*, 419 F.3d 329, 336 (5th Cir. 2005) ("Allegations in pleadings are not evidence and are not sufficient to make a prima facie showing that the crime-fraud exception applies.").

Meeting, which is one of the elements of a prima facie showing.[64] To the contrary, Defendants' testimony and legal counsel's affidavit appear to establish that the purpose of the Meeting was to make sure Defendants' actions with regard to Plaintiff complied with the law.[65]

Accordingly, Plaintiff's request to re-depose Defendants and Blanchard[66] regarding the communications made at the Meeting is barred by the attorney-client privilege, and no exception applies, resulting in denial of the Motion to Compel,[67] filed by Plaintiff Andrew Babinski.

Signed in Baton Rouge, Louisiana, on April 7, 2026.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[64] *Southern Scrap Material Co.,* 2003 WL 21474479, at *2 (other citations omitted).

[65] *Id.* at ¶¶ 13-14. The unchallenged affidavit from LSU's legal counsel states that he was not asked to provide, nor did he provide, any advice on taking actions against any student that would facilitate a crime or fraud; rather, the purpose of the Meeting was to ensure compliance with the law.

[66] Furthermore, and as argued by Defendants, the request to re-depose Blanchard was also subject to denial because the request was newly raised by Plaintiff in reply and after the discovery deadline had passed. *See, e.g., Glenn,* 2025 WL 553683, at *4 (holding that a party cannot request new relief, or raise a new issue, in a reply memorandum)(citations omitted).

[67] R. Doc. 108.