**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

ANDREW BABINSKI                                                    CIVIL ACTION

VERSUS                                                                    20-426-SDD-EWD

TODD QUEEN, ET AL.

<u>**RULING**</u>

This matter is before the Court on two motions. Defendants, Kristin Sosnowsky ("Sosnowsky"), Shannon Walsh ("Walsh"), John Fletcher ("Fletcher"), and Alan Sikes ("Sikes") (collectively, "Defendants"), move for summary judgment seeking dismissal of all remaining claims in this case.[1] Plaintiff, Andrew Babinski ("Babinski"), filed an Opposition,[2] and Defendants filed a Reply.[3] Babinski moves for partial summary judgment.[4] Defendants filed an Opposition,[5] and Babinski filed a Reply.[6] For the reasons that follow, Defendants' Motion will be granted, and Babinski's Motion will be denied.

I.    **BACKGROUND**

A. **Facts**

Babinski was a student in the Louisiana State University ("LSU") School of Theatre Ph.D. program (the "Program").[7] During the relevant time, Kristin Sosnowsky was the

---

[1] Rec. Doc. 130.
[2] Rec. Doc. 139.
[3] Rec. Doc. 141.
[4] Rec. Doc. 134.
[5] Rec. Doc. 140.
[6] Rec. Doc. 142.
[7] Rec. Docs. 130-2 & 139-1, ¶ 3.

Chair of the LSU Department of Theatre.[8] Shannon Walsh, John Fletcher, and Alan Sikes were members of the School of Theater faculty.[9]

In the Spring 2019 semester, Babinski enrolled in THTR 7923, "Gender, Sexuality, and Performance," a course taught by Walsh.[10] According to the course syllabus, a substantial portion of a students' grade in THTR 7923 was to be based on an "Extensively Peer Reviewed Final Paper."[11]

Babinski's paper (the "Final Paper") was submitted late and exceeded the page limit by over one hundred pages.[12] Babinski acknowledges in his operative Complaint that the Final Paper "included strong language, expletives, and harsh criticism of various faculty members and peers[.]"[13] He also admitted in the Final Paper itself that it was "too unwieldy" and had a "massive, unruly scope and form."[14] A few highlights of the 152-page Final Paper include the following:

- Babinski accuses Walsh of "characteristically us[ing] [her] power to belittle, demean, diminish, devalue, and delegitimize my deep-seated values." He says this equates to Walsh teaching him to "dehumanize" himself.[15]

- Babinski states that Walsh, Fletcher, and Sikes have "belittled me for speaking and acting on my voice when you don't see it's [sic] importance[.]"[16]

- Babinski says the Program is "killing" him: "I cannot stay here. In very real ways it is killing me (the way dehumanizing someone kills the human in them).

---

[8] *Id.* at ¶ 2.
[9] *Id.* at ¶ 1.
[10] *Id.* at ¶ 4.
[11] *Id.* at ¶ 5.
[12] *Id.* at ¶¶ 6, 7.
[13] Rec. Doc. 101, ¶ 22.
[14] Rec. Doc. 130-8, pp. 13–14.
[15] *Id.* at pp. 2–3.
[16] *Id.* at p. 2.

However, for reasons I will not further dehumanize myself to go into, the life that awaits me without attaining a PhD will kill me even more surely, if more slowly. My life was cancer, and getting a PhD was safe, even beneficial treatment for it. But it has become clear to me that you [Walsh] and John [Fletcher] have unnecessarily use [sic] power (mostly though your ignorance of what you are doing, what my points are, why I feel they are important, why they ARE important, and my lived experience, but also because you don't really value other people beyond how they align with your values) to turn that safe, even beneficial treatment into chemotherarpy [sic], which is not safe or beneficial, but actually is more fatal that the cancer. … Right now satying [sic] here under your power is a Chemo I am willing to undertake, although I may not be able to handle it, and this paper is a Hail Mary pass, a SCREAM TO BE HEARD so you hcan [sic] turn down the unnecessary and self-serving Chemo."[17]

- Babinski repeatedly accuses Walsh of "activism" and "indoctrination": "…if you [Walsh] feel activism and indoctrination are move [sic] important that [sic] scholarship and education, that's your right, but then GET THE HELL OUT OF TEACHING PHD CLASSES IN THEATRE[.]"[18]

- Babinski states that he has "scores of notes" about Walsh that he has been writing for months "online, on scraps, on sheets of paper […]" He continues: "[W]hen I started bringing my laptop to your class it wasn't just to help me avoid eye contact with people it was because my hand was cramping up writing so

---

[17] *Id.* at p. 3.
[18] *Id.* at p. 5.

many notes during class of all the awful, hypocrictial [sic], bullying things you say an [sic] do but I could just type them[.]"[19]

- Babinski accuses Walsh of dismissing a conservative student's comments in class regarding an article she assigned the class to read, and asks, "WHAT THEY [sic] FUCK IS WRONG WITH YOU!?!"[20]

- Babinski asks, in the "thousand times" he has seen Walsh and Fletcher, "in how many of them have I pulled back and punched you in the face? Every time? Most of the time? A lot of the time? Some of the time? A few times? Once? How many times would it take before my saying, 'But you've seen I'm capable of not punching you in the face. In fact, I don't punch you in the face of the times I see you,' became meaningless? One?" Babinski compares Walsh's and Fletcher's in-class behavior to "being punched in the face," and accuses Walsh and Fletcher of doing so "far more often than once."[21]

- Babinski refers to another student in the class as Walsh's "sanctioned bully," a "Raging Homosexual Female Woman Jewish PhD Student."[22]

- Babinski repeatedly refers to Fletcher as "DR JOHN FLETCHER, HOMOSEXUAL PHD."[23]

- Babinski asserts that Fletcher "tells me I'm not upset at a lack of scholarly ethics or the damage they cane [sic] do, despite my saying so, I'm really only fighting because I'm annoyed. (Fuck you.)"[24]

---

[19] *Id.* at p. 41.
[20] *Id.* at p. 63.
[21] *Id.* at pp. 105–106.
[22] *Id.* at p. 119.
[23] *Id.* at pp. 106, 129, 130.
[24] *Id.* at p. 135.

- Babinkski notes that "this is just what I could spew in two days; it is nowhere NEAR out of my system, and even if I got it 'all' out, it's back again, like spit saliva."[25] Toward the end of the Final Paper, Babinski says: "I've got a LOT more to say, and my life has been building to this."[26]

- Babinski notes multiple times that he is "being performative," explaining that "all of this [sic] negative things I'm saying here I don't mean, I'm exaggerating to be performative."[27] Babinski asserts that since the Final Paper is "performative," "it can't be held against me, since you have both taught me that you don't give a shit about pain or damage don't [sic] when you say either of these things apply."[28]

Babinski received a failing grade on the Final Paper and was placed on academic probation.[29]

In her deposition, Walsh testified that she "felt attacked" by the Final Paper.[30] She also testified that she "felt really concerned for [Babinski]" because the Final Paper was "so far outside the realm of anything I had received from him[.]"[31] In Walsh's opinion, the "personal attacks" in the Final Paper did not constitute a legitimate attempt at "performative writing" as Babinski suggested.[32]

Walsh sent the Final Paper to Sosnowksy. Sosnowsky testified that she "had concerns for people's safety" due to the "desperation" and "extreme amount of hostility

---

[25] *Id.* at p. 12.
[26] *Id.* at p. 148.
[27] *Id.* at p. 64.
[28] *Id.* at p. 128.
[29] Rec. Docs. 130-2 & 139-1, ¶¶ 13, 14.
[30] Rec. Doc. 134-5, p. 11.
[31] *Id.* Additionally, Walsh assembled an extensive list of specific excerpts of the Final Paper that were especially concerning to her. Rec. Doc. 134-16, pp. 4–13.
[32] Rec. Doc. 141-5, p. 2.

reflected in the paper towards faculty and students[.]"[33] She stated the Final Paper "indicated a level of hostility from the student that might disrupt the School of Theatre" such that she was "concerned about the safety of the entire student population."[34]

Walsh also shared the Final Paper with Fletcher and Sikes. Fletcher testified that he felt unsafe and wanted to "avoid campus whenever possible" after reading the Final Paper.[35] In a May 2019 email, Fletcher tells Sosnowsky that he was "shocked" to see Babinski on campus.[36] Fletcher adds:

> I feel immediately, physically threatened when he's in my workspace. This isn't, "Meeting him could be awkward." This is, "I'm in danger because this person has expressed extreme rage toward me personally while evincing psychotic disconnection from reality." This situation is incompatible with me being able to do my job. I do not wish to be in the building if he is there.[37]

Sikes testified that he found several parts of the Final Paper "concerning," "alarming," and "threatening."[38] Sikes indicated concern for Babinski's mental health and potential for self-harm, as well as the safety of other students mentioned in the Final Paper.[39]

Sosnowsky referred the Final Paper to the LSU Police Department ("LSU PD") and the LSU Office of Student Advocacy and Accountability ("LSU OSAA"); according to Sosnowsky's deposition testimony, she did this for "academic and safety" reasons.[40] After reviewing the Final Paper and speaking to Babinski via telephone, the LSU PD concluded that "Babinski was upset with his professors and fellow classmates but made no threats

---

[33] Rec. Doc. 130-10, pp. 5–6.
[34] *Id.* at p. 6.
[35] Rec. Doc. 141-6, p. 4.
[36] *Id.* at p. 6.
[37] *Id.*
[38] Rec. Doc. 134-6, pp. 5–6.
[39] *Id.*
[40] Rec. Docs. 130-2 & 139-1, ¶ 12; Rec. Doc. 139-3, p. 2.

of self-harm or threats to harm others."[41] Similarly, the LSU OSAA found no misconduct and closed Babinski's disciplinary file without action.[42]

Fletcher further testified that after reading the Final Paper, he decided that he would not teach Babinski or serve on his dissertation committee.[43] Sikes provided testimony to the same effect, stating that he "wouldn't work with [Babinski] in any collegial, professional capacity."[44] Walsh testified that she probably would not have served on Babinski's dissertation committee if he had asked her after the Final Paper, but she did not refuse to teach Babinski and would teach him if he were to return to the Program.[45]

Babinski appealed the failing grade using LSU's appeal procedures.[46] Additionally, on August 23, 2019, Babinski wrote an email to Sosnowsky and Todd Queen, then-dean of the LSU College of Music and Dramatic Arts.[47] In the email, Babinski states that he will not try to "force" Walsh, Fletcher, or Sikes to teach him, writing:

> Just as Alan [Sikes] (and Shannon [Walsh] and John [Fletcher]) refuse to teach me, I am telling you here, in writing, that I refuse to try to force Alan [Sikes] (or Shannon [Walsh] or John [Fletcher]) to teach me against his fear of his physical safety regarding me, in any capacity, including (but not limited to) in person, through e-mail, through Skype, through independent study, or through a third party. I believe I have a right to take his class and possibly a right to try to force you to make him teach it (or perhaps to penalize him for refusing to), but I refuse to act on that right. I am not saying I am waiving that right, only that I refuse to act on that right, and I don't see my refusal changing under any circumstances. I am telling you this in another attempt to alleviate the fear in Alan [Sikes] (and Shannon [Walsh] and John [Fletcher]) that I will appear physically in his class, or that I will try to force him to teach me it in any capacity. I also don't want the other students in the class to suffer from it being postponed or even canceled, or from Alan [Sikes] teaching it from any more fear that can be reasonably avoided. I ask you to communicate this to Alan [Sikes] and Shannon [Walsh] and John

---

[41] Rec. Docs. 134-2 & 140-1, ¶ 20; Rec. Doc. 134-13, p. 4.
[42] Rec. Docs. 134-2 & 140-1, ¶ 19.
[43] Rec. Doc. 130-17, p. 9.
[44] Rec. Doc. 142-3, pp. 17–18.
[45] Rec. Doc. 134-5, p. 14.
[46] Rec. Docs. 134-2 & 140-1, ¶ 35.
[47] Rec. Doc. 141-3.

[Fletcher], and I hope that they (or you) will trust in my sincerity in this regard. At the very least, you now have it in writing from me, to hold against me if I later give evidence contradicting it.[48]

Babinski goes on in the email to request that Sosnowsky and Queen employ "reasonably great effort" into investigating potential ways that Babinski could take a particular class "in light of [Sikes'] refusing to teach me."[49] Babinski suggests possibilities such as "independent studies" or taking a similar course at a "sister university[ ]."[50] Babinski explains that "upon receiving such information, regardless of what I [sic] is, I feel there is a greater than 90% chance that I will withdraw from his class within a few days of receiving that information."[51] He reiterates that he does not want to force Sikes to teach him "if he refuses on the grounds of fear for his physical safety."[52] Babinski also says that if he were to withdraw from Sikes' class, the chances of Babinski withdrawing from the Program altogether would "likewise be over 90%."[53] Babinski continues: "That's a greater than 81% percent chance I'd resign from the program once you provide me with the above stipulated information, regardless of what it ends up being, contingent on its being arrived at through reasonably great effort at discovering and communicating to me all options, regardless of how realistic or practical you may see any of them."[54] The final paragraph of Babinski's email reads as follows:

> I end, though, with again what I feel to be the most important information: please convey to Alan [Sikes] (and Shannon [Walsh] and John [Fletcher]) that I refuse to come to his class or to try to force him to teach me it in any manner. I say this to alleviate his fear of me (which I believe to be well-founded, despite my certitude of my posing absolutely no physical threat to him) and to minimize further disruption of the class regarding Alan and the

---

[48] *Id.* at p. 1.
[49] *Id.* at p. 2.
[50] *Id.*
[51] *Id.*
[52] *Id.*
[53] *Id.*
[54] *Id.* at p. 3.

other students currently enrolled and who may enroll in it in the near future.[55]

Queen responded to Babinski's email the same day. The body of the response email reads as follows, in full:

> In response to your August 23, 2019 email, we have analyzed various possibilities to allow you to continue in the PhD program in the School of Theater. As you note in your communications, your interactions with the faculty have created a situation where the PhD faculty in the School of Theatre are unable to continue to support your candidacy in the doctoral program. We have considered the options you presented and other possibilities for you to advance toward a PhD in Theater at LSU. Unfortunately, the outcome remains the same — there is no viable path for you to continue in or graduate from this program.
>
> Your choice to remain enrolled in other courses this semester does not alter the outcome. We appreciate your decision to not appear for Dr. Sykes' [sic] class on Monday and we expect you to complete the withdrawal process as soon as possible.[56]

Sosnowsky denied Babinski's grade appeal on August 30, 2019.[57] Sosnowsky found the failing grade justified because the Final Paper did not comply with the requirements of the assignment as stated in the course syllabus.[58] She also noted that the Final Paper was submitted several days after the deadline.[59]

Notwithstanding the email from Queen and Sosnowsky and the denial of the grade appeal, Babinski continued paying tuition and remained enrolled in the Program.[60] Babinski was never formally dismissed, expelled, or subjected to any academic dismissal or disciplinary proceeding that would bar his continued enrollment.[61] He completed a full

---

[55] *Id.*
[56] *Id.* at p. 4.
[57] Rec. Doc. 140-7, p. 3.
[58] *Id.*
[59] *Id.*
[60] Rec. Doc. 139-1, p. 5, ¶ 2; Rec. Doc. 141-1, ¶ 2.
[61] Rec. Doc. 139-1, p. 5, ¶¶ 2, 4; Rec. Doc. 141-1, ¶¶ 2, 4.

course load in the Fall 2019 semester.[62] After completion of the Fall 2019 semester, Babinski transferred to LSU's Philosophy Department by submitting a Request for Change of Department in December 2019.[63] Babinski graduated with a master's degree in philosophy in August 2021.[64]

### B. Babinski's Operative Complaint and the Parties' Instant Motions

Babinski enumerates the following claims in his operative Complaint, brought pursuant to § 1983 against Defendants in their official capacities:

- Violation of First Amendment Right to Freedom of Speech;[65]

- Violation of First Amendment Right to Freedom from Retaliation;[66]

- Violation of Fourteenth Amendment Right to Procedural Due Process;[67]

- Violation of Fourteenth Amendment Right to Equal Protection;[68]

- Conspiracy to Violate Civil Rights.[69]

Babinski seeks a permanent injunction "mandating Babinski's reinstatement to the Program and mandating that all barriers to Babinski's continuation in the Program toward receiving the degree of Doctor of Philosophy in Theatre (Ph.D.) be eliminated."[70] Babinski additionally seeks a declaratory judgment that Defendants violated his civil rights.[71]

---

[62] Rec. Docs. 130-2 & 139-1, ¶ 15; Rec. Doc. 101, ¶ 34.
[63] Rec. Doc. 130-5.
[64] Rec. Docs. 130-2 & 139-1, ¶ 18.
[65] Rec. Doc. 101, ¶¶ 38–40.
[66] *Id.* at ¶¶ 41–44.
[67] *Id.* at ¶¶ 45–50.
[68] *Id.* at ¶¶ 51–54.
[69] *Id.* at ¶¶ 55–58.
[70] *Id.* at ¶ 60.
[71] *Id.* at ¶ 64.

Defendants seek summary dismissal of all of Babinski's remaining claims. Babinski's Motion seeks summary judgment on the freedom of speech, retaliation, and procedural due process claims.

## II.    LAW AND ANALYSIS

### A.  Summary Judgment Standard

In reviewing a motion for summary judgment, the Court will grant the motion if (1) there is no genuine issue of material fact, and (2) the mover is entitled to judgment as a matter of law.[72] This determination is made "in the light most favorable to the opposing party."[73] "When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues on which the movant bears the burden of proof at trial."[74] If the moving party satisfies its burden, "the non-movant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial."[75] However, the non-moving party's burden "'is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"[76]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[77] All reasonable factual

---

[72] FED. R. CIV. P. 56(a).

[73] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); 6 V. MOORE, FEDERAL PRACTICE 56.15(3) (2d ed. 1966)).

[74] *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 333–34 (1986)).

[75] *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49 (1986)).

[76] *Willis v. Roche Biomedical Lab., Inc.,* 61 F.3d 313, 315 (5th Cir. 1995) (quoting *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994)).

[77] *Pylant v. Hartford Life and Accident Ins. Co.*, 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson*, 477 U.S. at 248)).

inferences are drawn in favor of the nonmoving party.[78] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[79] "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment."[80]

## B. Declaratory Judgment

Babinski seeks "a declaratory judgment declaring that the defendants have violated Babinski's civil rights" as alleged in the operative Complaint.[81] Under the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[82] Courts engage in a three-step inquiry when considering a declaratory judgment action. First, the court asks "whether an 'actual controversy' exists between the parties to the action."[83] Second, the court asks whether it has the authority to grant declaratory relief.[84] Third, the court considers "how to exercise its broad discretion to decide or dismiss a declaratory judgment action."[85]

### 1. Actual Controversy

Defendants argue that Babinski cannot establish an actual controversy to support

---

[78] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

[79] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998)).

[80] *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994).

[81] Rec. Doc. 101, ¶ 64.

[82] 28 U.S.C. § 2201(a).

[83] *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000) (citing *Rowan Companies, Inc. v. Griffin*, 876 F.2d 26, 27–28 (5th Cir. 1989)).

[84] *Id.* (citing *Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 776 (5th Cir. 1993)).

[85] *Id.* (citing *Travelers Ins. Co.*, 996 F.2d at 778).

his request for a declaratory judgment.[86] Although Defendants do not expressly frame it as such, this involves a determination of whether the claim is justiciable; in other words, it is a question of subject matter jurisdiction.[87] As the Fifth Circuit has put it, "[a] declaratory judgment action is ripe for adjudication only where an 'actual controversy' exists."[88] Additionally, it has been noted that "[t]he 'actual controversy' required under [the Declaratory Judgment Act] 'is identical to the meaning of "case or controversy" for the purposes of Article III.'"[89] Because of its jurisdictional nature, the Court must consider the "actual controversy" requirement before proceeding to the merits of the individual constitutional claims.[90]

A declaratory plaintiff must demonstrate that there is "a substantial and continuing controversy between two adverse parties."[91] Further, "the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury."[92] The plaintiff must show "actual present harm" or "a substantial likelihood that he will suffer injury in the future."[93] Declaratory relief cannot remedy past wrongs; thus, if alleging a past injury, a declaratory

---

[86] Rec. Doc. 130-1, pp. 5–7.

[87] *Orix*, 212 F.3d at 895; *Texas v. West Publ'g. Co.,* 882 F.2d 171, 175 (5th Cir. 1989) ("The district court lacks subject matter jurisdiction to issue a declaratory judgment unless an 'actual controversy' exists[.]").

[88] *Id.* at 896 (quoting 28 U.S.C. § 2201(a)) (citing *West Publ'g. Co.,* 882 F.2d at 175).

[89] *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) (quoting *Lawson v. Callahan,* 111 F.3d 403, 405 (5th Cir.1997)). *See also Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods, (HAVEN)*, 915 F.2d 167, 170 (5th Cir. 1990) (citing *Foster v. Center Tp. of LaPorte County*, 798 F.2d 237, 249 (7th Cir.1986) ("actual controversy" language "merely recognizes that the case or controversy requirement of Art. III of the Constitution applies in the declaratory judgment context.").

[90] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (jurisdiction must be established as a threshold matter).

[91] *Bauer*, 341 F.3d at 358 (citing *Emory v. Peeler,* 756 F.2d 1547, 1551–52 (11th Cir.1985)).

[92] *Id.*

[93] *Id.* (citing *Peoples Rights Org. v. City of Columbus,* 152 F.3d 522, 527 (6th Cir.1998); *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *Cone Corp. v. Florida Dep't of Transp.,* 921 F.2d 1190, 1205 (11th Cir.1991)).

plaintiff must also demonstrate "a continuing injury or threatened future injury."[94]

Defendants argue that Babinski's voluntary transfer to the Philosophy department, rather than any conduct by Defendants, was the reason that Babinski did not complete the Program.[95] They argue that the alleged refusals to teach or serve on Babinski's dissertation committee were merely "hypothetical barriers" to completing the Program.[96] Defendants thus conclude Babinski is not suffering any continuing harm because Defendants did not remove him from the Program in the first place.[97]

Babinski argues the Defendants "forced" his departure from the Program.[98] He points to the email from Queen which stated that there was "no viable path" for Babinski to continue in the Program, arguing that the email "was not tentative or advisory; it conveyed finality."[99] He also avers that Fletcher, Walsh, and Sikes "made a final, unchangeable decision not to participate in [Babinski's] advancement [in the Program] because of the content of his paper."[100] Babinski argues that although there were viable paths to completing the Program, Sosnowksy and Queen failed to explain these paths to him, instead telling him that there was no way he could continue and requesting that he withdraw.[101] Babinski further complains that he "remains barred from completing the Theatre Ph.D. Program and would be required to reapply absent court intervention."[102]

It is undisputed that Babinski was not formally expelled, and the failing grade on

---

[94] *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) (citing *Steel Co.*, 523 U.S. at 103; *Lyons*, 461 U.S. at 105).
[95] Rec. Doc. 130-1, pp. 6–7.
[96] *Id.*
[97] *Id.*
[98] Rec. Doc. 139, pp. 7–8.
[99] *Id.*
[100] *Id.* at p. 8.
[101] *Id.*
[102] *Id.* at p. 9.

the Final Paper would not have resulted in his removal from the Program.[103] Babinski's case rests upon the theory that he was, in his words, "de facto" or "constructively" expelled from the Program. To support that theory, he mainly relies on two things: 1) the August 2019 email from Queen, and 2) Defendants' alleged refusals to participate in Babinski's progress.

The Court is not persuaded by the argument that Queen's email was tantamount to an expulsion. First, Queen's email was in response to an email from Babinski where Babinski repeatedly stated that he "refused" to try to take any class taught by Walsh, Fletcher, or Sikes.[104] Babinski recognized Defendants' "fear" for their "physical safety" due to the Final Paper.[105] Babinski went as far as to say that such fears were "well-founded."[106] He further made clear his existing intent to withdraw from the Program, writing that the odds of his withdrawal were "greater than 90%."[107] He requested that Sosnowsky and Queen examine available paths for completion of his coursework, but repeatedly reiterated that he would most likely withdraw from the Program *even if* Sosnowsky and Queen offered him options toward obtaining his degree.[108]

Moreover, and perhaps more importantly, Babinski completed a full course load in the Fall 2019 semester—*after* Queen's email that purportedly effected his expulsion.[109] Babinski testified that he was "moving forward in the [P]rogram" through the Fall 2019 term.[110] He did not transfer out of the Program until December 2019. Critically, there is

---

[103] Rec. Doc. 139-1, p. 5, ¶ 4; Rec. Doc. 141-1, ¶ 4.
[104] Rec. Doc. 141-3, p. 1.
[105] *Id.*
[106] *Id.* at p. 3.
[107] *Id.* at pp. 2–3.
[108] *Id.*
[109] Rec. Docs. 130-2 & 139-1, ¶ 15; Rec. Doc. 101, ¶ 34.
[110] Rec. Doc. 134-3, p. 7.

no evidence of anything Defendants did during or after the Fall 2019 semester to further oust Babinski from the Program.

Babinski also argues that Defendants prevented his continuation in the Program by refusing to serve on his dissertation committee. A student needs four faculty members to assemble a dissertation committee.[111] The chair of the committee must be one of the four members of the Theatre Ph.D. faculty.[112] Three of those four members were Walsh, Sikes, and Fletcher. Fletcher and Sikes testified that they would have refused to serve on Babinski's dissertation committee, if asked, after reading the Final Paper.[113] Walsh testified that based on the content of the Final Paper, she assumed Babinski would not ask her to serve on his committee, but that she probably would have declined if he did ask.[114] However, the Court notes the absence of evidence that Babinski ever actually requested any of the Defendants to serve on his dissertation committee. In fact, Babinski testified that he never attempted to assemble a full committee at all.[115] The fourth faculty member who could have served as the chair of Babinski's dissertation committee was Dr. Femi Euba.[116] There is no evidence that Babinski ever asked Dr. Euba to serve on his committee, nor any evidence that Dr. Euba would have had any reason or intention to refuse.[117] Thus, even if Walsh, Fletcher, and Sikes all were asked and refused (which evidently did not happen), Babinski still could have assembled a committee.[118] For these

---

[111] Rec. Doc. 134-5, p. 5.

[112] *Id.*

[113] Rec. Doc. 130-17, pp. 9–10; Rec. Doc. 142-3, pp. 17–18.

[114] Rec. Doc. 134-5, p. 14.

[115] Rec. Doc. 141-4, p. 2.

[116] Rec. Doc. 134-7, p. 9.

[117] During his deposition, Babinski testified that he "do[esn't] believe" he ever spoke to Dr. Euba about serving on his dissertation committee. Rec. Doc. 141-4, pp. 2–3.

[118] Babinski expressly acknowledges as much in his briefing (*see, e.g.*, Rec. Doc. 139, p. 22; Rec. Doc. 134-1, p. 21) and in his operative Complaint (Rec. Doc. 101, ¶ 31: "Babinski could have very well assembled a dissertation committee not involving Professors Walsh, Fletcher, or Sikes.").

reasons, Babinski's argument with respect to the dissertation committee is unpersuasive.

Babinski further argues he was forced out of the Program because Defendants refused to teach him. Fletcher and Sikes testified that they were unwilling to teach Babinski after reading the Final Paper.[119] However, Walsh testified that she never decided that she would refuse to teach Babinski, and that she would allow him in her class if, hypothetically, he returned to the Program.[120]

Sosnowsky testified that Sikes indicated his refusal to teach one particular class for which Babinski had registered.[121] She testified that Queen requested Babinski not to attend that class, and Babinski agreed not to attend.[122] There is no indication in the briefing or cited evidence regarding whether this class was required for graduation. Aside from this, the evidence reflects that Babinski never actually signed up for any other course where any Defendant refused to admit him to the class. Fletcher testified that teaching Babinski "was not on the table" after the Final Paper,[123] and Sikes testified that he would not allow Babinski in his class if, hypothetically, he were to return to the Program.[124] But there has been no showing of a concrete refusal after an effort by Babinski to take a particular class, other than one class taught by Sikes which Babinski agreed not to attend. Instead, the evidence reflects that Babinski transferred to a different program without ever being formally expelled or attempting to show up to a class where he was refused entry.

The Court finds that Babinski advances conflicting theories. On the one hand, he argues that Defendants' refusals with respect to teaching him and serving on his

---

[119] Rec. Doc. 130-17, p. 9; Rec. Doc. 142-3, pp. 17–18.
[120] Rec. Doc. 134-5, p. 14.
[121] Rec. Doc. 134-4, p. 13.
[122] *Id.*
[123] Rec. Doc. 130-17, p. 9. The Court also notes Fletcher's testimony indicating that Babinski did not need to take any of Fletcher's classes to move forward in the Program. *Id.* at p. 6.
[124] Rec. Doc. 142-3, p. 18.

dissertation committee made it impossible to continue in the Program. But he simultaneously argues that viable paths existed toward graduation, and that Queen's and Sosnowsky's failure to guide him to those paths was what "effectively" or "constructively" caused him to be expelled.

Furthermore, the Court finds the fact that Babinski would need to reapply to the Program if he wanted to return to be unsurprising due to his departure. Babinski has not reapplied; therefore, any argument regarding the expected result of a hypothetical reapplication is purely speculative. As the Fifth Circuit explains, "[d]eclaratory judgments cannot be used to seek an opinion advising what the law would be on a hypothetical set of facts."[125] Without more, the requirement of reapplication does not constitute an ongoing injury sufficient to create an actual controversy appropriate for declaratory relief, especially where the evidence shows that Babinski voluntarily transferred out of the Program instead of enrolling in the remaining courses necessary for graduation.

For these reasons, Babinski has failed to establish an actual controversy as required by the Declaratory Judgment Act. Accordingly, Babinski's claim for declaratory relief will be dismissed.

### C. Permanent Injunction

To obtain injunctive relief, Babinski must establish: "(1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest."[126]

---

[125] *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009).

[126] *VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006) (citing *Dresser–Rand, Co. v. Virtual Automation, Inc.,* 361 F.3d 831, 847–48 (5th Cir. 2004) (citing, in turn, *Amoco Prod. Co. v. Village of Gambell,* 480 U.S. 531, 546 n. 12 (1987)).

Like declarative relief, injunctions are forward-looking remedies, and they "may issue 'only if *future* injury is "certainly impending.""127 To show a continuing irreparable injury, a plaintiff "must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm."128

The Court finds that Babinski has not established any nonspeculative impending irreparable injury. Babinski argues that he "remains barred" from completing the Program and receiving his Ph.D. due to the Defendants' conduct.129 However, the only evidence he points to is deposition testimony by Sosnowsky indicating that Babinski would have to reapply if he wanted to return to the Program.130 As discussed above, the possibility that Babinski's admission would be denied in the event he attempted to reapply, which he has not done, is insufficient to establish a certainly impending irreparable injury.

Due to Babinski's failure to show a certainly impending irreparable injury, the claim for injunctive relief will be dismissed.

\* \* \*

The current record does not evince a substantial, nonspeculative likelihood that Babinski will suffer injury in the future. For this reason, the Court lacks subject matter jurisdiction to grant the prospective relief that Babinski demands.131 Accordingly, this action will be dismissed with prejudice.

---

127 *Donaldsonville Glass & Body Works, Inc. v. City of Gonzales*, No. 22-817-SDD-RLB, 2025 WL 1432705, at \*4 (M.D. La. May 19, 2025) (emphasis in original) (quoting *Sierra Club v. US Army Corps of Engineers*, 482 F.Supp,3d 543, 556-57 (W.D. Tex. 2020) (quoting, in turn, *Aransas Project v. Shaw*, 775 F.3d 641, 664 (5th Cir. 2014)).
128 *Id.* (quoting *Sierra Club v. United States Army Corps of Engineers*, 990 F. Supp. 2d 9, 39 (D.D.C. 2013) (quoting, in turn, *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).
129 Rec. Doc. 139, p. 9.
130 Rec. Doc. 134-4, pp. 11, 23–24.
131 *Bauer*, 341 F.3d at 357–358; *Stringer*, 942 F.3d at 720–721; *Lyons*, 461 U.S. at 101–105.

## III.      CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment[132] is GRANTED, and Babinski's Motion for Partial Summary Judgment[133] is DENIED. This matter is hereby dismissed with prejudice. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this __12th__ day of _____May_____, 2026.

_____

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[132] Rec. Doc. 130.
[133] Rec. Doc. 134.